Kenneth F. Baum (SBN 250719)
kbaum@goldmanismail.com
Goldman Ismail Tomaselli
Brennan & Baum LLP
100 Wilshire Boulevard, Suite 1760
Santa Monica, CA 90401
Telephone: (310) 576-6900
Facsimile: (312) 881-5191

(Additional counsel listed in signature block)

*Attorney for Defendant*
*MLB Advanced Media, L.P.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ERIC WONG, et al.,

Plaintiffs,

v.

MLB ADVANCED MEDIA, L.P., et al.,

Defendants.

Case No. 3:24-cv-00779-LB

*Assigned to Magistrate Judge Laurel Beeler*

**DEFENDANT MLB ADVANCED MEDIA L.P.'S NOTICE OF MOTION AND MOTION TO TRANSFER, TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING, AND TO STRIKE CLASS ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 19, 2024
Time: 9:30 a.m. PT
Courtroom: B, 15th Floor, San Francisco
Judge: Hon. Laurel Beeler

*(Filed concurrently with Declaration of Alan E. Littmann and [Proposed] Order)*

Complaint Filed: February 8, 2024
Amended Complaint Filed: April 18, 2024

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iv

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 5

A. Plaintiffs bring class-action claims against MLBAM under the VPPA and California law challenging data disclosures allegedly made to Meta. ..... 5

B. Plaintiffs do not allege that they purchased or rented videos from MLBAM or subscribed to an MLBAM digital product providing expanded video access. ..... 6

C. Plaintiffs agreed to MLBAM's Terms of Use, which includes a New York forum-selection clause, a New York choice-of-law clause, and a class-action waiver. ..... 7

III. ARGUMENT ..... 9

A. The Court should transfer this case to the Southern District of New York. ..... 9

1. Plaintiffs agreed to the forum-selection clause in MLBAM's TOU, which applies to the claims here. ..... 11

2. The forum-selection clause in MLBAM's TOU is enforceable. ..... 13

3. Based on the enforceable forum-selection clause in MLBAM's TOU, this case should be transferred to the Southern District of New York. ..... 15

B. Alternatively, the Court should dismiss this case. ..... 17

1. Plaintiffs' VPPA claim should be dismissed for failure to state a claim and lack of standing. ..... 18

a. Plaintiffs are not "consumers" under the VPPA. ..... 18

b. Plaintiffs fail to plausibly allege any disclosures related to them. ..... 20

2. Plaintiffs' California claims should be dismissed because New York law applies and because they do not plausibly plead them. ..... 22

a. Plaintiffs' California claims fail because they bring them under California law despite agreeing that New York law applies. ....23

b. Plaintiffs' California claims fail because they do not plead key elements of these claims. ....25

C. The Court should strike Plaintiffs' class allegations....28

1. Under New York law, Plaintiffs' class waiver is enforceable and requires striking their class allegations. ....29

2. The class-action waiver also applies under California law....31

IV. CONCLUSION....32

# TABLE OF AUTHORITIES

## Cases

*Alex v. NFL Enters. LLC*,
2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) .......... 19

*Arcell v. Google LLC*,
2024 WL 3738422 (N.D. Cal. Aug. 9, 2024) .......... 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 18, 20

*Aston-Martin v. WarnerMedia Direct, LLC*,
2024 WL 3516811 (E.D. Tenn. July 24, 2024) .......... 11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) .......... 10, 15, 17

*Brack v. Omni Loan Co.*,
164 Cal. App. 4th 1312 (Cal. Ct. App. 2008) .......... 24

*Bromlow v. D&M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) .......... 16

*Brooks v. WarnerMedia Direct LLC*,
No. 2:23-CV-07579-GW-(MRWx), ECF No. 55 (C.D. Cal. Sept. 12, 2023) .......... 11

*Brown v. Learfield Comms., LLC*,
No. 1:23-CV-00374-DAE, ECF No. 67 (W.D. Tex. June 27, 2024) .......... 19

*Camilo v. Uber Techs., Inc.*,
2018 WL 2464507 (S.D.N.Y. May 31, 2018) .......... 29, 30

*Carroll v. Chick-fil-A, Inc.*,
2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 19

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) .......... 19

*Castellanos v. Raymours Furniture Co.*,
291 F. Supp. 3d 294 (E.D.N.Y. 2018) .......... 29, 30

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) .......... 22

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
412 F. Supp. 2d 1059 (E.D. Cal. 2006) .......... 24

*Cooper v. Slice Techs., Inc.*,
2017 WL 4071373 (N.D. Cal. Sept. 14, 2017) .......... 11, 14

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) .......... 11

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) .......... 18

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 17

*Dimaggio v. Stoever*,
2020 WL 2568733 (C.D. Cal. Jan. 14, 2020) .......... 17

*Discover Bank v. Sup. Ct.*,
36 Cal. 4th 148 (Cal. 2005) .......... 31, 32

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 28

*Edwards v. Learfield Commc'ns, LLC.*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023) .......... 19

*Emilio v. Sprint Spectrum L.P.*,
68 F. Supp. 3d 509 (S.D.N.Y. 2014) .......... 30

*Gamayo v. Match.com LLC*,
2011 WL 3739542 (N.D. Cal. Aug. 24, 2011) .......... 12, 13

*Gardener v. MeTV*,
681 F. Supp. 3d 864 (N.D. Ill. 2023) .......... 19

*Gardner v. MeTV*,
2024 WL 779728 (N.D. Ill. Feb. 15, 2024) .......... 19

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) .......... 16

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) .......... 19

*Gomez v. Great-W. Life & Annuity Ins. Co.*,
638 F. Supp. 3d 1156 (S.D. Cal. 2022) .......... 24

*Gottschalk v. City & Cnty. of San Francisco*,
964 F. Supp. 2d 1147 (N.D. Cal. 2013) .......... 18

*Handoush v. Lease Fin.Grp., LLC*,
41 Cal. App. 5th 729 (2019) .......... 14, 15

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
635 F. Supp. 3d 238 (S.D.N.Y. 2022) ........ 30

*Heather v. Healthline Media Inc.*,
No. 3:22-CV-05059-JD, ECF No. 76 (N.D. Cal. June 7, 2024) ........ 19

*Heather v. Healthline Media, Inc.*,
2023 WL 8788760 (N.D. Cal. Dec. 19, 2023) ........ 19

*Hunthausen v. Spine Media, LLC*,
678 F. Supp. 3d 1228 (S.D. Cal. 2023) ........ 19

*In re County of Orange*,
784 F.3d 520 (9th Cir. 2015) ........ 14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 26

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) ........ 26, 28

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 27

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 1

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 25

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
398 F. Supp. 3d 549 (N.D. Cal. 2019) ........ 20

*J. G. v. Rustic Pathways, LLC*,
2024 WL 1975472 (N.D. Cal. May 2, 2024) ........ 13

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) ........ 19

*Jeong v. Nexo Cap. Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) ........ 31

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 12

*Kleiner v. Spinal Kinetics, Inc.*,
2016 WL 1565544 (N.D. Cal. Apr. 19, 2016) ........ 16

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........ 7

*Kuzenski v. Uproxx LLC*,
2023 WL 8251590 (C.D. Cal. Nov. 27, 2023) .......... 19, 20

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .......... 28

*Lamb v. Forbes Media LLC*,
2023 WL 6318033 (S.D.N.Y. Sept. 28, 2023) .......... 19

*Lentini v. Kelly Servs., Inc.*,
2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) .......... 15

*Lightfoot v. MoneyonMobile, Inc.*,
2019 WL 2476624 (N.D. Cal. June 13, 2019) .......... 13, 14, 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 18, 22

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......... 13

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) .......... 19

*Martin v. Meredith Corp.*,
2023 WL 4013900 (2d Cir. May 24, 2023) .......... 26

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .......... 25, 26

*McCausland v. Gray Media Grp., Inc.*,
2024 WL 1374765 (S.D.N.Y. Mar. 31, 2024),
*judgment entered,* 2024 WL 2109302 (S.D.N.Y. Apr. 16, 2024) .......... 19

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 25

*Mendoza v. Caesars Ent., Inc.*,
2024 WL 2316544 (D.N.J. May 22, 2024) .......... 19

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 11, 12

*Ministers & Missionaries Ben. Bd. v. Snow*,
45 N.E.3d 917(N.Y. 2015) .......... 23

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......... 29

*Nedlloyd Lines B.V. v. Super. Ct.*,
834 P.2d 1148 (Cal. 1992) .......... 24

*Nielsen v. Thornell*,
101 F.4th 1164 (9th Cir. 2024),
*as amended* (July 8, 2024) .......... 20, 21

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 11, 12

*Omstead v. Dell, Inc.*,
533 F. Supp. 2d 1012 (N.D. Cal. 2008) .......... 31, 32

*Ponomarenko v. Shapiro*,
287 F. Supp. 3d 816 (N.D. Cal. 2018) .......... 10, 15

*Preiser v. Newkirk*,
422 U.S. 395 (1975) .......... 21

*Randles v. Nationstar Mortg., LLC*,
2024 WL 1855720 (E.D. Cal. Apr. 26, 2024) .......... 15

*Ranieri v. Bell Atl. Mobile*,
304 A.D.2d 353 (N.Y. App. Div. 2003) .......... 29

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) .......... 30

*Rodriguez v. JP Boden Servs. Inc.*,
2024 WL 559228 (S.D. Cal. Feb. 12, 2024) .......... 19

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) .......... 28

*Rosal v. First Fed. Bank of California*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) .......... 18

*Salazar v. Paramount Glob.*,
683 F. Supp. 3d 727 (M.D. Tenn. 2023) .......... 19

*Sciacca v. Apple, Inc.*,
362 F. Supp. 3d 787 (N.D. Cal. 2019) .......... 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) .......... 32

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 22

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ........................................ 10, 13, 15

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........................................ 25

*Suski v. Marden-Kane., Inc.*,
2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ........................................ 31

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
83 F. Supp. 3d 855 (N.D. Cal. 2015) ........................................ 14

*Terwilliger v. Terwilliger*,
206 F.3d 240 (2d Cir. 2000) ........................................ 23

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................ 31, 32

*TradeComet.com LLC v. Goo*gle, Inc.,
693 F. Supp. 3d 370 (S.D.N.Y. 2010) ........................................ 12

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
88 F. Supp. 3d 1156 (S.D. Cal. 2015) ........................................ 24

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) ........................................ 15

*U1it4Less, Inc. v. FedEx Corp.*,
2015 WL 3916247 (S.D.N.Y. June 25, 2015) ........................................ 29

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................ 7

*Wainwright v. Melaleuca, Inc.*,
844 F. App'x 958 (9th Cir. 2021) ........................................ 24

*Walnut Producers of California v. Diamond Foods, Inc.*,
187 Cal.App.4th 634 (2010) ........................................ 31

*Walsh v. Cal. Cinema Invs. LLC*,
2024 WL 3593569 (C.D. Cal. July 29, 2024) ........................................ 25

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ........................................ 27, 32

*Willis Re Inc. v. Herriott*,
550 F. Supp. 3d 68 (S.D.N.Y. 2021) ........................................ 23

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................ 25, 26

*Zheng v. Live Auctioneers LLC*,
2021 WL 2043562 (S.D.N.Y. May 21, 2021) ........ 13

**Statutes**

18 U.S.C. § 2710 ........ passim
28 U.S.C. § 1331 ........ 17
28 U.S.C. § 1404(a) ........ passim
Cal. Civ. Code § 1761(d) ........ 27
Cal. Civ. Code § 1770(a)(19) ........ 6, 27
Cal. Civ. Code § 1799.3(a) ........ 4, 6, 24, 25
Cal. Penal Code § 631(a) ........ 26
California Invasion of Privacy Act ........ 4, 25, 26
California Unfair Competition Law ........ 4, 26
Consumer Legal Remedies Act ........ 4, 27, 28
U.S. Const. art. III § 2 ........ 20, 22

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 3, 18, 22
Fed. R. Civ. P. 12(b)(6) ........ 3, 18, 20, 23
Fed. R. Civ. P. 12(f) ........ passim
Fed. R. Civ. P. 23 ........ 5, 30, 31

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Thursday, December 19, 2024, at 9:30 a.m., in Courtroom B, 15th Floor of the San Francisco Courthouse located at 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Laurel Beeler, Defendant MLB Advanced Media, L.P. ("MLBAM") will respectfully move for an order granting this motion.

MLBAM requests an order transferring this case to the Southern District of New York under 28 U.S.C. § 1404(a). Alternatively, MLBAM requests an order dismissing with prejudice this case brought by Plaintiffs Eric Wong, Teri Smith, Christopher Fletcher, James Shannon, Kevin Adler, Sam Fleischer, Anthony Bobeck, Sam Abbassi, and Archie Santos Diaz (collectively, "Plaintiffs") under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Alternatively, MLBAM requests an order striking Plaintiffs' class allegations from their Complaint under Federal Rules of Civil Procedure 12(f) and 23.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, any reply memorandum, the pleadings, any matter of which the Court may take judicial notice, and any evidence or argument presented before or at the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This putative class action is one of many recent lawsuits trying to extend a 1988 statute addressing intentional leaks of videotape-viewing information, the Video Privacy Protection Act ("VPPA"), far beyond its intended scope. The VPPA prohibits "video tape service provider[s]" who deliver "prerecorded video cassette tapes or similar audio visual materials" from "knowingly" disclosing "personally identifiable information" that "identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. §§ 2710 (a), (b)(1). The VPPA is a "quite narrow" statute passed before the age of the internet in response to a prominent news story: an exposé published by the *Washington City Paper* after a store clerk leaked a list of 146 films rented by Supreme Court nominee Robert Bork. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278–79, 284 (3d Cir. 2016). In this case, Plaintiffs try to stretch the VPPA to implicate MLBAM's

alleged use of common website software code. Plaintiffs also assert claims under California state law that are based on this same alleged use of software code.

Courts across the country have dismissed similar claims for failing to plead key elements. Courts have also enforced binding clauses in contracts between the parties that apply to VPPA and similar privacy claims, including transferring cases based on forum-selection clauses. The result here should be no different.

The first problem with this lawsuit is that it belongs in the Southern District of New York. Plaintiffs affirm in the Complaint that MLBAM's Terms of Use ("TOU") applies to their claims. That TOU contains a forum-selection clause requiring VPPA and other privacy-related claims like Plaintiffs' to be brought in the courts of New York County. When presented with a binding and applicable forum-selection clause like this one, courts transfer cases to the parties' preselected venue under 28 U.S.C. § 1404(a) unless a plaintiff shows that extraordinary circumstances prevent transfer. Plaintiffs cannot meet that burden here. Indeed, MLBAM is already litigating another nationwide VPPA class action in the Southern District of New York brought by a California resident who invoked MLBAM's forum-selection clause in support of his choice of venue. (*See* Littmann Decl. Ex. A, 2/26/24 Class Action Compl. ¶¶ 9–12, *Henry v. MLB Advanced Media, L.P.*, No. 1:24-CV-01446-GHW-GWG (S.D.N.Y.) ("*Henry*"), ECF No. 1.) California has no more interest in presiding over Plaintiffs' nationwide VPPA class than any other state, and it certainly lacks sufficient interest to override the parties' choice of forum in New York.

In the Complaint, Plaintiffs resist the forum selection clause by citing California public-policy concerns about jury-trial and class-action waivers like those in MLBAM's TOU. Plaintiffs' argument is to no avail, however, because these issues should be decided by the transferee court, not this Court. Federal courts are fully capable of applying the laws of other states, and courts have therefore long made clear that unless an argument relates to venue policy specifically—which Plaintiffs' does not—the transferee court should decide choice of law and then decide whether a policy argument like Plaintiffs' has merit. Plaintiffs' argument thus does not prevent transfer to the parties' chosen forum: the Southern District of New York.

/ / /

Alternatively, if it does not transfer this case, the Court should dismiss Plaintiffs' individual VPPA and California state-law claims under Rules 12(b)(6) and 12(b)(1) and strike their class claims.

Plaintiffs' VPPA claim fails as a matter of law for two reasons. ***First***, Plaintiffs are not "consumers" under the VPPA. The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It in turn defines a "video tape service provider" as someone who delivers "prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). Courts across the country, including in this District, have read these two definitions together to mean that plaintiffs must rent, purchase, or subscribe to receive "prerecorded . . . audio visual" "goods or services" ***in particular*** from a defendant—not a defendant's goods or services more generally—to qualify as "consumers." *Id.* § 2710(a)(1), (4). Plaintiffs here do not allege that they rented or purchased prerecorded audio-visual materials from MLBAM. Nor do their allegations support that they subscribed to receive such materials. Instead, Plaintiffs merely allege that they registered for accounts on MLBAM's website MLB.com. Courts have made clear that website registrations like Plaintiffs' do not make them consumers under the VPPA unless those registrations enable expanded access to prerecorded videos. Plaintiffs nowhere allege that their website registrations on MLB.com provided such access (nor can they, because they do not). Plaintiffs are thus not consumers protected by the VPPA, and they fail to state a VPPA claim under Rule 12(b)(6).

***Second***, Plaintiffs do not plausibly allege that MLBAM disclosed their data in a way that violates the VPPA. Although Plaintiffs' Complaint alleges a broad theory of how MLBAM ***might*** violate the VPPA based on its use of routine software tools, they provide no factual allegations showing that MLBAM ever disclosed any of their data in particular. They thus have no basis for their individual VPPA claim, and that claim fails under Rule 12(b)(6). Instead, their Complaint amounts to a request for an advisory opinion on MLBAM's use of a routine software tool on its website. And because Plaintiffs fail to include any facts showing an actionable disclosure, they lack standing to bring their VPPA claim, requiring dismissal under Rule 12(b)(1).

Plaintiffs' California claims fare no better. To begin, if this Court reaches choice of law, it should find that Plaintiffs cannot bring California claims at all because they agreed in the TOU that

New York law would govern disputes between the parties. But even if Plaintiffs could bring their claims under California law, they would still fail because Plaintiffs do not plead their threshold elements:

- Plaintiffs cannot state a claim under Cal. Civ. Code § 1799.3 ("§ 1799.3"), California's version of the VPPA, because that statute prohibits the disclosure of "sales or rental information," and Plaintiffs do not allege making any purchases or rentals from MLBAM. This claim also fails because, as with their VPPA claim, Plaintiffs include no factual allegations to show that MLBAM disclosed their data in particular as they must to meet federal pleading requirements and to have standing.
- Plaintiffs' California Invasion of Privacy Act ("CIPA") claim fails because the transmission of bare data like Plaintiffs challenge here is not a statutorily protected "contents" of "communication" for CIPA purposes.
- Plaintiffs' California Unfair Competition Law ("UCL") claim fails because courts have made clear that hypothetical "losses" associated with data disclosures are not cognizable under the UCL, and Plaintiffs here allege no facts showing non-hypothetical economic losses.
- Plaintiffs' Consumer Legal Remedies Act ("CLRA") claim fails for several reasons. To begin, this claim merely recites the elements of the statute without any factual support whatsoever, which fails to meet federal pleading standards. The CLRA also requires plaintiffs to allege a purchase of goods or services to qualify as "consumers," and Plaintiffs do not allege facts supporting that they made purchases from MLBAM. Further, as with their UCL claim, Plaintiffs fail to allege facts showing economic losses as required to state a CLRA claim. And Plaintiffs fail to allege any misrepresentation related to a transaction with MLBAM as they must to state a CLRA claim.

Finally, even if Plaintiffs had adequately pleaded their individual claims, their class claims should be stricken because they agreed to a binding and enforceable class-action waiver in MLBAM's TOU. That waiver covers claims based on the use of any MLBAM digital property, which includes MLB.com. Plaintiffs admittedly base all their claims on their use of MLB.com, so the waiver unambiguously applies to their claims. And New York law, which applies based on the TOU,

uniformly holds that class-action waivers like this one are lawful and enforceable. Even if California law applied, and it does not, the waiver would still be enforceable. California courts decline to enforce class-action waivers only in limited circumstances, such as where the defendant engaged in a pattern of misconduct to cheat plaintiffs out of very small amounts of money. Plaintiffs do not and cannot plausibly allege that MLBAM did so here. Because the binding class-action waiver to which Plaintiffs agreed prevents them from bringing their putative class claims, the Court should strike their class allegations under Rules 12(f) and 23.

In sum, the Court should transfer this case to the Southern District of New York. Alternatively, the Court should dismiss Plaintiffs' individual claims and strike Plaintiffs' class claims.

## II. BACKGROUND

### A. Plaintiffs bring class-action claims against MLBAM under the VPPA and California law challenging data disclosures allegedly made to Meta.

Plaintiffs bring putative class-action claims alleging that MLBAM violated the VPPA and California laws by using software code on MLB.com to disclose certain data to Meta without permission. (Am. Class Action Compl. ("Compl.") ¶¶ 1–3, ECF No. 12.) Plaintiffs purport to bring their VPPA claim on behalf of "[a]ll persons in the United States who (1) have a Facebook account, (2) subscribed to mlb.com, and (3) requested or obtained specific video materials or services from mlb.com." (*Id.* ¶ 130.) Plaintiffs, who all claim to be California residents (*id.* ¶¶ 5–13), also "seek to represent a subclass consisting of Class members who reside in the State of California." (*Id.* ¶ 131.)

Plaintiffs claim that MLBAM violated the VPPA through its alleged use of a tool called the Facebook Pixel, or "Meta Pixel," on MLB.com. (*Id.* ¶ 30.) Plaintiffs claim that when a user "request[s] or obtain[s] specific video materials or services" from MLB.com, two types of information are disclosed to Meta "via the Pixel": (1) information about the "specific video materials" the user viewed; and (2) the user's Facebook ID ("FID"), a unique numeric identifier associated with a particular Facebook account. (*See, e.g.*, *id.* ¶¶ 27, 46.)

But Plaintiffs omit key details. For example, they provide no facts to show that MLBAM made any disclosures about them in particular. Instead, they each make the identical allegation that

at some unspecified time, MLBAM "simultaneously disclosed" their "FID" and unidentified "video materials or services" they "requested or obtained." (*Id.* ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126.)

Plaintiffs also bring California state-law claims on behalf of a California sub-class under § 1799.3, CIPA, UCL, and CLRA based on the same theory of data transmission. (*See id.* ¶¶ 158–96.) Just as with their VPPA claim, Plaintiffs do not describe any information about the specific alleged transmissions of their own data that they challenge in these claims. (*See id.*) Instead, for their § 1799.3 and CIPA claims, Plaintiffs make only generalized allegations regarding the nature of the Facebook Pixel. (*Id.* ¶¶ 161, 171.) For their UCL claim, Plaintiffs allege only that MLBAM "repeatedly share[ed] its subscribers' personal information with Meta without consent" and that Plaintiffs were injured because they "paid more in subscription fees" than they would have had they known about the purported disclosures. (*Id.* ¶¶ 182, 185, 188.) Plaintiffs do not, however, allege facts to show that they paid anything at all for any particular MLBAM subscription or provide any other supporting facts about these supposed "subscription fees." (*See id.*)

Finally, Plaintiffs' CLRA claim does no more than recite elements of the statute. Plaintiffs allege that MLBAM "pass[ed] off goods or services as those of another"; "misrepresent[ed] the source, sponsorship, approval, or certification of MLB's goods or services"; "misrepresent[ed] the affiliation, connection, or association with, or certification by[] another"; "represent[ed] that its Website and Product have characteristics and benefits [they do] not have"; "advertis[ed] its Website and Product with the intent not to sell it as advertised"; "represent[ed] that a transaction confers or involved rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"; and "insert[ed] unconscionable terms into its contract." (*Id.* ¶ 195 (quoting Cal. Civ. Code § 1770(a)(1), (2), (3), (5), (9), (19) and quoting *id.* § 1770(a)(14) ).) They provide no factual support for these allegations. (*See id.*)

### B. Plaintiffs do not allege that they purchased or rented videos from MLBAM or subscribed to an MLBAM digital product providing expanded video access.

Plaintiffs' Complaint makes limited allegations related to the VPPA's "consumer" definition. As discussed below, the VPPA defines a "consumer" whose PII it protects as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiffs

do not allege that they are consumers of MLBAM's for purposes of this definition based on any rentals or purchases. (*See generally* Compl.) Instead, Plaintiffs allege that their registrations for accounts on "the Website [MLB.com]" make them "consumers" for purposes of the VPPA. (Compl. ¶¶ 40–45, 50–55, 60–65, 70–75, 80–85, 90–95, 100–105, 110–115, 120–125.) They do not allege that those registrations gave them access to any prerecorded videos not otherwise available to any member of the public. (*See generally* Compl.) Nor do they claim they paid for or signed up for any service with MLBAM that provided such access. (*See id.*) Although Plaintiffs refer to MLB.tv, MLBAM's paid subscription service, (*see id.* ¶¶ 21, 24), they do not allege personally subscribing to MLB.tv or any other paid subscription service (*see generally* Compl.).

**C. Plaintiffs agreed to MLBAM's Terms of Use, which includes a New York forum-selection clause, a New York choice-of-law clause, and a class-action waiver.**

When they registered for accounts on MLB.com, Plaintiffs agreed to MLBAM's TOU. The TOU governs the use of MLBAM's Digital Properties, including MLB.com.[1] Plaintiffs acknowledge that this TOU is "applicable" here. (Compl. ¶ 20 n.2.) Indeed, Plaintiffs claim they each registered for accounts on MLB.com. (*Id.* ¶¶ 1, 5–13, 40, 50, 60, 70, 80, 90, 100, 110, 120.) To register for accounts, new users are taken to a "Log In" page on MLB.com, where they can "Sign up." (MLB Account Login Page.[2]) After clicking "Sign up," users are taken to a registration page. (MLB Account

---

[1] (TOU § 1 (MLB.com is an "MLB Digital Property"), https://www.mlb.com/official-information/terms-of-use (last visited Aug. 25, 2024).) The Court may properly consider publicly available information on MLBAM's website MLB.com, including the TOU and its provisions, when deciding this motion because Plaintiffs' Complaint "refers extensively" to MLB.com and the TOU. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (documents incorporated by reference in complaint are properly considered on a motion to dismiss); (*see also* Compl. ¶ 1 (defining MLB.com as "the 'Website'" or "Defendant's Website"); *id.* ¶¶ 2, 5–14, 21–24, 30, 33, 35, 36, 40–43, 46, 47, 50–53, 56, 57, 60–63, 66, 67, 70–73, 76, 77, 80–83, 86, 87, 90–93, 96, 97, 100–103, 106, 107, 110–113, 116, 117, 120–123, 126, 127, 135, 136, 150, 154, 161, 170, 171, 173, 187, 188 (referring to "the Website"); *id* ¶¶ 17 n.1, 20 n.2, 195, n.8 (referring to TOU).) "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (taking judicial notice of contents of defendant's website).

[2] https://www.mlb.com/login?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D100107599999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&campaignCode= (last visited Aug. 8, 2024).

Registration Page.[3]) To create an MLB account, the user must click the button labeled "Register," above which the following text appears: "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (*See id.*) Both the TOU and the Privacy Policy appear as clickable hyperlinks—offset by blue font—on the registration page. (*See id.*)

The operative TOU here is MLBAM's current TOU. (TOU ("LAST UPDATED: FEBRUARY 6, 2024").) Plaintiffs themselves acknowledge that this TOU applies here. (Compl. ¶ 20 n.2.) And Plaintiffs purport to sue under this TOU precisely because the current version contains an exception to its arbitration agreement allowing VPPA and related claims like Plaintiffs' to be brought in court. (*See id.* (discussing current TOU); TOU § 11(1) (defining "Non-Arbitrable Claims" to include "claims under the Video Privacy Protection Act" and other claims related to "privacy rights").)

As Plaintiffs acknowledge, this operative and "applicable" TOU contains a "forum selection clause" selecting a "New York forum." (Compl. ¶ 20 n.2.) It also contains a New York choice-of-law provision. (TOU § 12.) Indeed, the TOU's Table of Contents lists a "**CHOICE OF LAW AND VENUE**" provision in a bolded, all-caps, and numbered heading. (TOU, Table of Contents.) Section 12 then announces this provision in bold font and all capital letters: "**12. CHOICE OF LAW AND VENUE.**" (TOU § 12.) This provision applies to "Non-Arbitrable Claims," which include "any dispute or claim related to the alleged violation of your privacy rights" as well as "claims under the Video Privacy Protection Act and corresponding state video privacy laws." (*Id.* §§ 11–12.) The full provision reads as follows, with the forum-selection clause appearing in underlined text:

> Any and all Disputes and Non-Arbitrable Claims arising out of or related to this Agreement or to your use of any MLB Digital Property, or any product or service distributed by MLB shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, without regard to conflict of laws principles. <u>If the arbitration agreement is ever deemed unenforceable or void, or a dispute or claim between the parties is not subject to arbitration (including any Non-Arbitrable Claim), or for any action that seeks to enforce or challenge the enforceability of the arbitration agreement or any provision of the Agreement, you irrevocably consent to the exclusive jurisdiction of the federal and state courts in</u>

[3] https://www.mlb.com/registration?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D1001107599999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&campaignCode= (last visited Aug. 8, 2024).

> New York County, New York (the "Forum") for purposes of any legal action and waive any objections as to personal jurisdiction or as to the laying of venue in such courts due to: (i) inconvenient forum or (ii) any other basis or any right to seek to transfer or change venue of any such action to another court.

(*Id.* § 12.)

Finally, as Plaintiffs also acknowledge, MLBAM's operative TOU contains a standalone "Class Action Waiver." (Compl. ¶ 17 n.1.) The TOU's Table of Contents notes the "**CLASS ACTION WAIVER**" in a bolded, all-caps heading. (TOU, Table of Contents.) The Introduction to the TOU also discloses the class-action waiver, explaining that "[t]his Agreement contains a . . . class action waiver" that "affect[s] your legal rights." (*Id.*, Introduction.) Section 11 of the TOU declares the class-action waiver in bold font and all-capital letters: "**11. DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)**." (*Id.* § 11.) Yet another bolded, standalone heading announces a "**Class Action Waiver**," and the provision itself is written in all capital letters. (*Id.* § 11, Class Action Waiver.) The provision reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(*Id.*)

## III. ARGUMENT

### A. The Court should transfer this case to the Southern District of New York.

Based on the forum-selection clause in MLBAM's TOU, this case should be transferred to the Southern District of New York. Plaintiffs affirmatively state that MLBAM's TOU is "applicable" here and acknowledge that it contains a "forum selection clause" providing that this case should be litigated "in a New York forum." (Compl. ¶ 20 n.2.) Indeed, MLBAM is already litigating another nationwide class action brought by a California resident raising a VPPA claim in the Southern District

of New York. (*See* Littmann Decl. Ex. A, ¶¶ 9–12.) The plaintiff in *Henry* invoked the forum-selection clause in MLBAM's TOU to support the appropriateness of venue in New York. (*See id.*) Having acknowledged that MLBAM's TOU applies to this lawsuit, Plaintiffs should not be permitted to avoid litigating in the agreed-upon forum. However, unlike the *Henry* plaintiff, Plaintiffs here have filed their nationwide class action here in California, maintaining in their Complaint that the forum-selection clause in MLBAM's TOU should not be enforced because of California-law policy concerns. (*See* Compl. ¶ 20 n.2.) Plaintiffs are incorrect.

A motion to transfer under the federal venue statute, 28 U.S.C. § 1404(a), is the appropriate way to enforce a forum-selection clause like the one in MLBAM's TOU. *See, e.g.*, *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086–87 (9th Cir. 2018) (affirming grant of motion to dismiss for forum non conveniens based on forum-selection clause).[4] "As a general rule, 'when the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.'" *Id.* (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). When deciding a motion to transfer based on a valid forum-selection clause under § 1404(a), a "court may consider arguments about public-interest factors only" and may not consider arguments about the parties' private interests. *See, e.g.*, *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 839 (N.D. Cal. 2018) (internal quotation marks and citation omitted). And "[u]nlike the situation where there is no forum-selection clause, the plaintiff 'must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.'" *Sun*, 901 F.3d at 1087 (quoting *Atl. Marine*, 571 U.S. at 64). "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion [based on a forum-selection clause] be denied." *Atl. Marine*, 571 U.S. at 62.

Plaintiffs cannot meet their burden of showing extraordinary circumstances that warrant the denial of transfer here. Under both New York and California law—the choice of which to apply should be left to the transferee court—Plaintiffs agreed to a valid forum-selection clause in MLBAM's TOU, which applies to their claims. That clause is enforceable under federal law.

---

[4] Although the *Sun* court analyzed a motion to dismiss for forum non conveniens rather than a motion to transfer under 28 U.S.C. § 1404(a), the analysis for these motions is the same. 901 F.3d at 1087.

Although Plaintiffs argue that the forum-selection clause does not apply under California law, that argument depends on choice-of-law issues that are for the transferee court to decide. And the public-interest factors courts consider under 28 U.S.C. § 1404(a) weigh in favor of transfer. The Court should therefore join several recent courts in transferring VPPA cases to the Southern District of New York in similar circumstances. *See Aston-Martin v. WarnerMedia Direct, LLC*, No. 4:24-CV-43, 2024 WL 3516811 (E.D. Tenn. July 24, 2024) (transferring VPPA claim to the Southern District of New York based on forum-selection clause in HBO Max's TOU); *Brooks v. WarnerMedia Direct LLC*, No. 2:23-CV-07579-GW-(MRWx), ECF No. 55 at 12 (C.D. Cal. Sept. 12, 2023) (same for lawsuit to compel arbitration of VPPA claims).

**1. Plaintiffs agreed to the forum-selection clause in MLBAM's TOU, which applies to the claims here.**

The TOU, which Plaintiffs do not dispute they agreed to, applies here. State law governs whether Plaintiffs reached a valid agreement to MLBAM's TOU and its forum-selection clause. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) ("Questions of contract formation are questions of state law."). But this Court need not engage in a choice-of-law analysis to decide this motion to transfer. Rather, "[t]he transferee court decides the choice-of-law issues." *Cooper v. Slice Techs., Inc.*, No. 17-CV-02340-LB, 2017 WL 4071373, at *3 (N.D. Cal. Sept. 14, 2017). MLBAM thus analyzes contract formation under both New York law, which the TOU selects (*supra* at 8), and California law, which Plaintiffs say applies (Compl. ¶ 20 n.2).

Both New York and California courts routinely find that parties have agreed to online contracts through electronic clicks of registration buttons. Under New York law, "an electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (internal quotation marks and citation omitted). Similarly, under California law, online agreements may be enforced so long as they "explicitly alert the user that by creating an account, signing in, or purchasing a ticket, and proceeding to the next page, the user 'agrees to our Terms of Use.'" *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023). Features such as text color and size, location of notices, and general context all help courts

determine whether an agreement's terms are "sufficient to provide reasonably conspicuous notice." *Id.*

MLBAM's signup process meets these standards. When registering for accounts on MLB.com as they allege they did, Plaintiffs were presented with a clear, uncluttered signup form. (*Supra* at 7–8 (Plaintiffs' allegations that they registered for accounts and MLB.com Registration Page).) Directly above the "Register" button, the signup prompt stated, "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (MLB.com Registration Page) "Terms of Use" and "Privacy Policy" appeared in contrasting blue font denoting hyperlinks. (*Id.*) Through this signup process, "a reasonably prudent smartphone [or computer] user would understand that the terms were connected to the creation of a user account." *Meyer*, 868 F.3d at 78; *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (clicking button that confirmed agreement to TOU was sufficient where hyperlink to TOU was distinguished "by a contrasting white font" and other features). Plaintiffs thus agreed to MLBAM's TOU with their electronic click under both New York and California law. Indeed, Plaintiffs do not dispute their agreement, instead affirmatively alleging the TOU is "applicable" here. (*See* Compl. ¶¶ 17 n.1, 20 n.2.)

Plaintiffs also specifically agreed to the forum-selection clause within that TOU. Courts have found that plaintiffs agreed to forum-selection clauses in online agreements where the clause is clear and conspicuous to a reasonable user. For example, in *TradeComet.com LLC v. Google, Inc.*, the court enforced a forum-selection clause in an online agreement presented in all capital letters. 693 F. Supp. 3d 370, 374, 377 (S.D.N.Y. 2010). Similarly, in *Gamayo v. Match.com LLC*, the court enforced a joint "Jurisdiction" clause in a TOU that had a bolded and numbered heading and was written in plain font. No. C 11–00762 SBA, 2011 WL 3739542, at *1, *7 (N.D. Cal. Aug. 24, 2011).

Here, the forum-selection clause is clear and conspicuous. The "**CHOICE OF LAW AND VENUE**" clause is first announced in bolded, all-caps text in the TOU's Table of Contents. (TOU, Table of Contents.) By clicking on the hyperlink in the Table of Contents or scrolling down the TOU webpage, a user then sees "**12. CHOICE OF LAW AND VENUE**" written in bolded font and all capital letters. (TOU § 12.) The selection of "<u>the federal and state courts in New York County</u>" as the chosen venue is underlined for emphasis. (*Id.*) This bolding, use of capital letters, and underlining

make the provision conspicuous under New York and California law. *See, e.g.*, *Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (bolded heading sufficiently conspicuous); *Gamayo*, 2011 WL 3739542, at *1, *7 (enforcing venue clause with bolded heading).

Plaintiffs' claims all fall within the scope of this forum-selection clause. The TOU's definition of "Non-Arbitrable" claims includes "claims under the Video Privacy Protection Act and corresponding state video privacy laws" and "any other alleged violation of your privacy rights or interests." (TOU § 11(1).) Plaintiffs' VPPA and other privacy-related claims all qualify as "Non-Arbitrable" under this definition. (*See id.*) For these "Non-Arbitrable" claims, Plaintiffs "irrevocably consent[ed] to the exclusive jurisdiction of the federal and state courts in New York county, New York." (TOU § 12 (emphasis omitted).) Plaintiffs thus entered into a valid online agreement containing a forum-selection clause that applies to their claims.

**2. The forum-selection clause in MLBAM's TOU is enforceable.**

Courts apply federal law to determine enforceability of a forum-selection clause. *E.g.*, *Lightfoot v. MoneyonMobile, Inc.*, No. 18-CV-07123-YGR, 2019 WL 2476624, at *3 (N.D. Cal. June 13, 2019). A forum-selection clause "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Courts look to three factors to determine whether enforcement of a forum-selection clause would be unreasonable: (1) whether the clause was the result of "fraud or overreaching"; (2) whether the parties' chosen forum is "so gravely difficult and inconvenient that the [complaining party] will for all practical purposes be deprived of [its] day in court"; or (3) whether "enforcement [of the clause] would contravene a strong public policy of the forum in which the suit is brought." *Sun*, 901 F.3d at 1088 (internal quotation marks and citations omitted).

Plaintiffs cannot show the forum-selection clause in MLBAM's TOU satisfies either of the first two factors. Plaintiffs cannot meet their "heavy burden" of showing fraud, undue influence, or overreach here. *See J. G. v. Rustic Pathways, LLC*, No. 22-CV-05666-EJD, 2024 WL 1975472, at *6 (N.D. Cal. May 2, 2024) (internal quotation marks and citation omitted) (granting motion to transfer based on forum-selection clause). Indeed, they have not even alleged any such conduct. (*See*

*generally* Compl.) Nor can Plaintiffs show that litigating in the Southern District of New York will deprive them of their day in court. The court in *Lightfoot* found that even inability to travel does not deprive a plaintiff of his day in court based on "[t]he availability of electronic filing and video and teleconferencing technology." 2019 WL 2476624, at *5. Plaintiffs do not allege an inability to travel, but even if they did, the same would be true here. Indeed, the fact that another California resident is litigating a similar putative, VPPA-based class action in the Southern District of New York shows that Plaintiffs can do so too.

Plaintiffs' Complaint instead suggests that they will try to show that the TOU's forum-selection clause should not be enforced under the third factor. Specifically, they argue that enforcing that clause would violate California public policy "protecting the right to a jury trial" and "protecting consumers' right to bring class actions under certain circumstances." (*See* Compl. ¶ 20 n.2.) These arguments do not support a denial of transfer. "[A]bsent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a ***policy specifically related to venue***." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 868–69 (N.D. Cal. 2015) (emphasis added) (internal quotation marks and citation omitted). Here, neither "policy" concern raised by Plaintiffs is "specifically related to venue." *See id.* Rather, Plaintiffs' argument pertains to California policy around class-action and jury-trial waivers. (*See* Compl. ¶¶ 17 n.1, 20 n.2, 195(g).) The viability of this argument depends on what state law applies here. (*See id.*) These non-venue-related "choice-of-law issues" can and should be decided by the "transferee court." *See Cooper*, 2017 WL 4071373, at *3.

Neither case Plaintiffs cite in the Complaint supports a different result. (*See* Compl. ¶ 20 n.2.) The Ninth Circuit's decision in *In re County of Orange* had nothing to do with transfer; that court decided only that a federal court evaluating a contract with a California choice-of-law clause should apply California's policies to determine enforceability of that contract's jury waiver. 784 F.3d 520, 532 (9th Cir. 2015). And in *Handoush v. Lease Fin. Grp., LLC*, a California state court considered whether to ***dismiss*** a case based on a forum-selection clause selecting New York state court, finding dismissal inappropriate because the plaintiff would have no remedy based on New York state-court

practices. 41 Cal. App. 5th 729, 740 (2019). Here, MLBAM seeks transfer rather than dismissal based on the forum-selection clause. Following transfer, Plaintiffs will be able to present their argument regarding the jury-trial and class-action waivers in the TOU in the Southern District of New York. Indeed, "it is routine for federal courts to analyze and apply the laws of diverse states." *Randles v. Nationstar Mortg., LLC*, No. 1:24-CV-0177-KES-SKO, 2024 WL 1855720, at *6 (E.D. Cal. Apr. 26, 2024) (internal quotation marks and citation omitted). Plaintiffs' argument about other, separate TOU provisions thus does not impact the enforceability of the forum-selection clause here.

**3. Based on the enforceable forum-selection clause in MLBAM's TOU, this case should be transferred to the Southern District of New York.**

Plaintiffs cannot meet their burden of showing the "extraordinary circumstances unrelated to the convenience of the parties" required to deny a motion to transfer under § 1404(a) based on an enforceable forum-selection clause like the one here. *See Atl. Marine*, 571 U.S. at 62; *Sun*, 901 F.3d at 1087 (burden on plaintiff to show why the court should not transfer the case to the parties' agreed forum). Plaintiffs' private interests cannot defeat such a motion; they are deemed to "weigh entirely in favor of the preselected forum." *Ponomarenko*, 287 F. Supp. 3d at 833–34 (internal quotation marks and citation omitted). And the public-interest factors "rarely defeat a transfer motion" based on a forum-selection clause. *Lentini v. Kelly Servs., Inc.*, No. C17-03911 WHA, 2017 WL 4354910, at *4 (N.D. Cal. Oct. 2, 2017) (quoting *Atl. Marine*, 571 U.S. at 64). These factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006).

Taken together, the public-interest factors favor transfer to the Southern District of New York. First, the "local interest" factor heavily supports transfer. Although California has an interest in protecting the rights of its citizens, which Plaintiffs purport to be (*see* Compl. ¶¶ 5–13), Plaintiffs seek relief under the VPPA on behalf of a nationwide class (*id.* ¶¶ 130–131). And California has no interest in applying its laws to the members of Plaintiffs' putative nationwide class who are ***not*** California residents. (*See id.* ¶ 130.) Plus, Plaintiffs expressly allege that their VPPA claim is typical of, and presents issues common to those of a nationwide class. (*See id.* ¶ 134.) Every other state where

putative class members live has just as much of an interest in vindicating the rights of its citizens as Plaintiffs claim California does. Plaintiffs should not get to force these nationwide putative class members into a California venue notwithstanding the TOU's selection of a New York venue. (*See id.* ¶ 17 n.1.)

Indeed, New York has just as much if not more local interest in this case. MLBAM is headquartered in and conducts the operations relevant here out of New York. (*See id.* ¶ 14.) New York also has an interest in deterring alleged wrongdoing of its citizens, which Plaintiffs allege happened here. For example, in the course of transferring a case from California to Texas, the court in *Lightfoot* determined that "Texas' interest in deterring wrongful conduct by its own citizens" was "at least as great as" . . . "California's interest in providing its residents with a forum for redressing injuries." 2019 WL 2476624, at *9. So this first factor strongly supports transfer.

The second factor, "familiarity with governing law," is neutral because federal courts are "fully capable" of applying whichever state's law applies. *See Bromlow v. D&M Carriers, LLC*, 438 F. Supp. 3d 1021, 1030–31 (N.D. Cal. 2020) (granting motion to transfer).

The third factor, "burden on local courts and juries," weighs in favor of transfer. This complex litigation will burden this Court, particularly because Plaintiffs' proposed nationwide VPPA class has no particular connection to California. Meanwhile, MLBAM is already litigating a similar VPPA-based class action in the Southern District of New York, (*see* Littmann Decl. Ex. A), making it less burdensome to litigate another VPPA class action there.

The fourth factor is court congestion, which also weighs in favor of transfer. "The determinative inquiry" here "is whether a trial would be speedier in another court due to a less crowded docket." *Kleiner v. Spinal Kinetics, Inc.*, No. 5:15-CV-02179-EJD, 2016 WL 1565544, at *7 (N.D. Cal. Apr. 19, 2016); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court"). In this District, it takes an average of 48.9 months for a civil case

to get to trial.[5] In the Southern District of New York, it takes civil cases an average of 42.4 months to get to trial.[6]

The fifth and final factor, costs, heavily supports transfer. Indeed, the VPPA class action in *Henry* that MLBAM is already litigating in the Southern District of New York has a motion-to-dismiss briefing schedule proceeding ahead of this case. (*See* Littmann Decl. Ex. B, 6/26/24 Order Setting Briefing Schedule, *Henry*, ECF No. 23; *Id.* Ex. C, 8/15/24 MLBAM Notice of Motion, *Henry*, ECF No. 26.) It would be most cost efficient for the same Court to decide these two VPPA class actions against MLBAM, so this factor "weigh[s] strongly in favor of transfer." *See, e.g.*, *Dimaggio v. Stoever*, No. 2:19-CV-09568-RGK-SS, 2020 WL 2568733 (C.D. Cal. Jan. 14, 2020) (public-interest factors "weigh[ed] strongly in favor of transfer" because a related litigation in the transferee district "[was] already pending and involve[d] issues which overlap").

In sum, Plaintiffs cannot show any "extraordinary circumstances" weighing against transfer, and the public-interest factors favor it. *See Atl. Marine*, 571 U.S. at 62. Like other VPPA cases subject to forum-selection clauses choosing a New York forum, (*see supra* at 9), this case should therefore be transferred to the Southern District of New York. (*See* TOU § 12 (forum-selection clause selects "the federal and state courts in New York County, New York" as appropriate venues); 28 U.S.C. § 1331, Compl. ¶ 18 (federal jurisdiction appropriate over federal claims like Plaintiffs' VPPA claim); Compl. ¶ 14 (MLBAM headquartered within Southern District of New York).)

**B. Alternatively, the Court should dismiss this case.**

Because this case should be transferred to the Southern District of New York, the Court need not reach MLBAM's arguments for dismissal. If it does reach them, the Court should dismiss both Plaintiffs' VPPA claim and their California claims.

---

[5] (United States District Courts — National Judicial Caseload Profile, California Northern, (June 30, 2024) (available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2024/06/30-1).) The Court may take judicial notice of the National Judicial Caseload statistics as a document "made publicly available by government" on a government website. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (collecting cases).

[6] United States District Courts — National Judicial Caseload Profile, New York Southern. (*See supra* n.5.)

**1. Plaintiffs' VPPA claim should be dismissed for failure to state a claim and lack of standing.**

Plaintiffs' VPPA claim fails under both Rule 12(b)(6) and Rule 12(b)(1). "A claim has facial plausibility" under Rule 12(b)(6) only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1119–20 (N.D. Cal. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Gottschalk v. City & Cnty. of San Francisco*, 964 F. Supp. 2d 1147, 1157 (N.D. Cal. 2013) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).

A complaint also fails under Rule 12(b)(1) where it does not allege a cognizable injury. An "injury in fact" must be "concrete and particularized" and "actual or imminent" to support federal standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 803 (N.D. Cal. 2019) (dismissing claim where "Plaintiff only allege[d] possible future injury").

Plaintiffs' VPPA claim fails to meet these standards for two reasons. First, Plaintiffs do not allege facts establishing they are "consumers" within the meaning of the VPPA. Second, they do not allege facts showing that MLBAM made any improper disclosures related to ***them*** in particular. They therefore fail to allege an injury sufficient to give them standing—let alone to state a VPPA claim.

**a. Plaintiffs are not "consumers" under the VPPA.**

Plaintiffs' VPPA claim fails under Rule 12(b)(6) because they do not qualify as "consumers" under the VPPA. The VPPA's protections apply only to "consumer[s]," defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The statute in turn defines "video tape service provider" as someone who delivers "prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). A recent flood of decisions across the country have read these two definitions together to hold that a "consumer" under the VPPA is "a renter, purchaser or subscriber of audio-visual goods or services, and not goods

or services writ large." *See, e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 98, 100 (S.D.N.Y. 2023) (dismissing VPPA claim on this basis).[7]

Plaintiffs here do not allege that they rented or purchased audio-visual goods or services from MLBAM. (*See generally* Compl.) Instead, Plaintiffs allege that their digital registrations for accounts on "the Website [MLB.com]" make them "subscriber[s]" for purposes of the VPPA. (Compl. ¶¶ 40–45, 50–55, 60–65, 70–75, 80–85, 90–95, 100–105, 110–115, 120–125.) They are wrong.

Courts have made clear that to qualify as a "subscriber" for purposes of the VPPA's "consumer" definition, a plaintiff must allege "some 'factual nexus' between the subscription and the video content." *Carroll*, 2024 WL 1091193, at *1 (citations omitted). Simply alleging an "exchange[ of] personal information in return for a service" is insufficient. *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023). Courts, including California district courts, routinely find that registering for an account on a website does not provide the required factual nexus between the subscription and video content unless the registration gives the plaintiff expanded access to prerecorded videos. *See, e.g.*, *Kuzenski*, 2023 WL 8251590, at *3–5 (dismissing VPPA claim where general registration for website account did not make plaintiff a "consumer"); *Mendoza*, 2024 WL 2316544, at *6 (same). The reason is simple: Where "videos are not alleged to be exclusive to

---

[7] *See also Brown v. Learfield Comms., LLC*, No. 1:23-CV-00374-DAE), ECF No. 67 (W.D. Tex. June 27, 2024) (same); *Heather v. Healthline Media Inc.*, No. 3:22-CV-05059-JD, ECF No. 76 (N.D. Cal. June 7, 2024) (same); *Mendoza v. Caesars Ent., Inc.*, No. 23-CV-03591, 2024 WL 2316544, at *5–6 (D.N.J. May 22, 2024) (same); *McCausland v. Gray Media Grp., Inc.*, No. 22 CIV. 7539 (PGG), 2024 WL 1374765, at *7–9 (S.D.N.Y. Mar. 31, 2024), *judgment entered,* No. 22 CIV. 7539 (PGG), 2024 WL 2109302 (S.D.N.Y. Apr. 16, 2024) (same); *Gardner v. MeTV*, No. 22 CV 5963, 2024 WL 779728, at *3–4 (N.D. Ill. Feb. 15, 2024) (same); *Carroll v. Chick-fil-A, Inc.*, No. 23-CV-00314-RFL, 2024 WL 1091193, at *1 (N.D. Cal. Feb. 13, 2024) (same); *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228, at *4–5 (S.D. Cal. Feb. 12, 2024) (same); *Heather v. Healthline Media, Inc.*, No. 3:22-CV-05059-JD, 2023 WL 8788760, at *2 (N.D. Cal. Dec. 19, 2023) (same); *Kuzenski v. Uproxx LLC*, No. 2:23-CV-00945-WLH-AGR, 2023 WL 8251590, at *3–5 (C.D. Cal. Nov. 27, 2023) (same); *Edwards v. Learfield Commc'ns, LLC.,* 697 F. Supp. 3d 1297, at *1305–07 (N.D. Fla. 2023) (same); *Lamb v. Forbes Media LLC*, No. 22-CV-06319-ALC, 2023 WL 6318033, at *14 (S.D.N.Y. Sept. 28, 2023) (same); *Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *4 (S.D.N.Y. Sept. 27, 2023) (same); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) (same); *Salazar v. Paramount Glob.*, 683 F. Supp. 3d 727, 742–44 (M.D. Tenn. 2023) (same); *Gardener v. MeTV*, 681 F. Supp. 3d 864, 869–71 (N.D. Ill. 2023) (same); *Hunthausen v. Spine Media, LLC*, 678 F. Supp. 3d 1228, 1230–31 (S.D. Cal. 2023) (same); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764–65 (N.D. Cal. 2023) (same).

subscribers and can be accessed by anyone visiting Defendant's Website," that sign-up or registration is not for the rental, purchase, or subscription to audio-visual materials that the VPPA requires. *Kuzenski*, 2023 WL 8251590, at *5.

Just like in these cases, Plaintiffs' alleged registrations for accounts on MLB.com do not make them "consumers" for VPPA purposes. Plaintiffs do not allege that their registrations provided them with access to any prerecorded videos not otherwise available to any member of the public with an MLB.com account. (*See generally* Compl.) Nor do they claim they paid for MLB.tv or any service with MLBAM that provided expanded access to prerecorded videos. (*See id.*) Because Plaintiffs do not allege their registration for accounts on MLB.com gave them expanded access to prerecorded audio-video materials, they do not qualify as consumers, and their VPPA claim should be dismissed.

**b. Plaintiffs fail to plausibly allege any disclosures related to them.**

Plaintiffs' VPPA claim also fails because they do not allege an actionable disclosure of their own information. Rather, their Complaint alleges a theory about how MLBAM's website and the Facebook pixel works and asks this Court to issue what would amount to an advisory opinion that—if true—their theory supports a VPPA class action. These allegations do not meet Rule 12(b)(6) pleading requirements or the constitutional requirement that courts entertain only "[c]ases" or "[c]ontroversies." U.S. Const. art. III § 2.

Plaintiffs fail to state a VPPA claim on an individual basis because their Complaint lacks any factual allegations showing that MLBAM disclosed their data. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). So, to state a VPPA claim against MLBAM, Plaintiffs must allege facts sufficient to show that MLBAM knowingly disclosed PII "concerning" them. *Id*. Plaintiffs have failed to allege such facts.

Indeed, the Rule 12(b)(6) standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A plaintiff must "plead[] 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 398 F. Supp. 3d 549, 553 (N.D. Cal. 2019) (quoting *Iqbal*, 556 U.S. at 678). Allegations that are "merely consistent with liability" do not

suffice. *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024), *as amended* (July 8, 2024) (quotation marks and citation omitted).

Here, Plaintiffs' Complaint lacks the factual content necessary to plausibly plead the disclosures they challenge. Each Plaintiff recites the same seven identical paragraphs setting forth generic allegations related to their purported activity on MLB.com. (Compl. ¶¶ 40–46, 50–56, 60–66, 70–76, 80–86, 90–96, 100–106, 110–116, 120–126.) In the single paragraph each Plaintiff devotes to purported disclosures, they make the identical, boilerplate allegation that at some unspecified time, MLBAM "simultaneously disclosed" their "FID" and unspecified "video materials or services" they supposedly "requested or obtained" from MLB.com. (*Id.* ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126.) They include no facts to show that these disclosures ever actually occurred or what viewing information was revealed by these disclosures. (*See id.*) Indeed, their Complaint never identifies a particular disclosure MLBAM supposedly made at all. (*See id.*)

Plaintiffs instead plead a general theory about how MLB.com and the Facebook pixel work. Unlike the seven identical paragraphs of allegations on each Plaintiff's alleged use of MLB.com, Plaintiffs spends many paragraphs on allegations about how they believe MLB.tv and the Facebook pixel function. (*Id.* ¶¶ 21–39.) Even assuming these allegations to be true, they present no facts to show that MLBAM ***did*** violate the statute. These are exactly the kinds of allegations rejected by courts as "merely consistent with liability," *Nielsen*, 101 F.4th at 1169 (quotation marks and citation omitted), without factual support that could show liability if proven.

By alleging only a general theory unsupported by factual allegations, Plaintiffs ask this Court for an advisory opinion. But federal courts lack the power to issue advisory opinions: Their "judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted).

Plaintiffs request just such a decision based "upon a hypothetical state of facts." Plaintiffs allege that because MLB.com has a routine software tool on it that, according to Plaintiffs, is somehow capable of transmitting information to Meta, MLBAM has violated the VPPA. (*See, e.g.*, Compl. ¶ 154.) Plaintiffs' allegations are analogous to a plaintiff alleging a VPPA claim against

Blockbuster by alleging that the office manager at a Blockbuster store is capable of pulling an individual's rental history from a database, writing that history on a notepad kept in the store, putting it in an envelope pulled from Blockbuster's supplies, and sending it to the New York Times. In both Plaintiffs' Complaint and the Blockbuster example, the allegations amount to no more than theories of how the defendant ***might*** violate the VPPA. Neither Plaintiffs nor the hypothetical Blockbuster plaintiff have alleged any facts showing that MLBAM or Blockbuster ***actually sent*** their information. By basing their claims on these general assertions without any factual support, Plaintiffs ask the Court to issue an improper advisory opinion about theoretical—not actual—violations of the VPPA.

Similarly, because Plaintiffs' Complaint lacks any factual allegations showing that a disclosure occurred, Plaintiffs have not shown that they suffered any cognizable injury under the VPPA. To have standing to sue in federal court, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). If a complaint fails to include facts showing a cognizable injury, that complaint is properly dismissed. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (dismissing case where plaintiff "fail[ed] to sufficiently allege the essential elements of Article III standing," including "that he personally suffered" from a statutory violation). As already described, (*see supra* at 20–21), Plaintiffs' Complaint lacks any facts to show that they watched any video or that their information was actually sent to Meta. They therefore cannot show that they suffered a particularized and actual injury as required for standing under Rule 12(b)(1).

Because Plaintiffs' VPPA claim fails to meet the requirements of Rule 12(b)(6) or Rule 12(b)(1), it should be dismissed.

**2. Plaintiffs' California claims should be dismissed because New York law applies and because they do not plausibly plead them.**

Plaintiffs' California claims likewise fail. To begin, if this Court reaches choice of law—which it need not do because this is an issue for the transferee court, (*supra* at 14–16)—it should determine that New York law applies based on the choice-of-law provision in the TOU. Because New

York law applies, Plaintiffs' California claims should be dismissed. In any event, each of these claims fails as a matter of law under Rule 12(b)(6).

**a. Plaintiffs' California claims fail because they bring them under California law despite agreeing that New York law applies.**

Plaintiffs cannot sustain their California claims because New York law applies to this dispute based on the binding TOU. As explained above, Plaintiffs' electronic click sufficed to agree to MLBAM's TOU under either New York or California law. (*Supra* at 11–12.) And the choice-of-law clause is clear and conspicuous within that TOU. "**CHOICE OF LAW**" appears in bold, all-caps text in the TOU's Table of Contents, and it appears again in bold text and all caps in the heading for the "**CHOICE OF LAW AND VENUE**" section. (TOU, Table of Contents & § 12.) That provision requires any disputes related to MLB products or services to "be governed by, and construed and interpreted in accordance with, the laws of the State of New York." (TOU, § 12.) Further, because Plaintiffs' claims all relate to MLB.com (*see generally* Compl.)—a "product or service distributed by MLB"—the choice-of-law clause applies to their claims. (TOU § 12.) Indeed, having conceded that the TOU is "applicable" here (Compl. ¶ 20 n.2), Plaintiffs cannot pick and choose which provisions of the TOU apply them. They are subject to all its provisions, including its choice of New York law.

Under New York law, "choice of law provisions" like this one "are valid and enforceable." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (internal quotation marks and citations omitted). And courts choosing between applying California law based on a party's request or New York law based on a binding contract routinely apply New York law. *E.g.*, *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 96 (S.D.N.Y. 2021) (contract containing choice-of-law clause required application of New York law over California law). As one court reasoned when enforcing a New York choice-of-law provision and finding a choice-of-law analysis unnecessary, "logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply." *Ministers & Missionaries Ben. Bd. v. Snow*, 45 N.E.3d 917, 923 (N.Y. 2015).

So too under California law. California courts' approach to determining whether to enforce choice-of-law provisions reflects a strong policy in favor of enforcement. *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148 (Cal. 1992). A court will uphold a choice-of-law provision like the TOU here as long as a court finds either: (1) "the chosen state has a substantial relationship to the parties or their transaction," or (2) "there is any other reasonable basis for the parties' choice of law." *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1063–64 (E.D. Cal. 2006) (internal quotation marks and citation omitted). "If either test is met, the chosen state's law applies." *Id.* California courts have found a "reasonable basis" for enforcing a choice-of-law provision when a party to the contract is headquartered in the chosen state. *See Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1160 (S.D. Cal. 2022). Because MLBAM is headquartered in New York (Compl. ¶ 14), this test is satisfied.

The only reason a California court would ***not*** uphold a choice-of-law provision that meets this test is if the chosen state's law is contrary to a "fundamental policy" of California. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1168 (S.D. Cal. 2015). "There are no 'bright line rules for determining what is and what is not contrary to a fundamental policy of California.'" *Id.* (citation omitted). But "[t]he relative significance of a particular policy or statutory scheme can be determined by considering whether parties may, by agreement, avoid the policy or statutory requirement." *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323 (2008). Here, both the VPPA and § 1799.3—California's version of that law—provide exceptions to liability where plaintiffs consent to video-viewing disclosures. *See* 18 U.S.C. § 2710(b)(2)(B) (consent exception to VPPA); Cal. Civ. Code § 1799.3(a) (consent exception to § 1799.3). Thus, the factual allegations underlying all Plaintiffs' claims are not of the sort to which a "fundamental policy" exception applies.

The court should therefore enforce the choice-of-law provision in MLBAM's TOU. *See Wainwright v. Melaleuca, Inc.*, 844 F. App'x 958, 960–61 (9th Cir. 2021) (enforcing Idaho choice-of-law provision in an arbitration agreement between a California citizen and her Idaho employer). Because New York law applies, Plaintiffs' California claims should be dismissed.

/ / /

/ / /

**b. Plaintiffs' California claims fail because they do not plead key elements of these claims.**

In the alternative, each of Plaintiffs' California claims also fails under Rule 12(b)(6).

**Section 1799.3.** Plaintiffs' § 1799.3 claim fails because Plaintiffs do not allege that they ever paid for video content from MLBAM. Section 1799.3(a) prohibits the disclosure of an individual's video "sales or rental information." Courts have construed this provision to "appl[y] only to entities providing video materials to customers in exchange for money." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023); *see also Walsh v. Cal. Cinema Invs. LLC*, No. 2:23-CV-09608-ODW (AJRX), 2024 WL 3593569, at *7 (C.D. Cal. July 29, 2024) ("Defendants must provide video recording sales or video recording rental services for Section 1799.3 to apply."). Plaintiffs fail to allege purchasing or renting videos, which defeats their claim under § 1799.3. (*See generally* Compl.)

Additionally, as with their VPPA claim, Plaintiffs cannot state a § 1799.3 claim and lack Article III standing because they plead no facts supporting any alleged "disclos[ures]" related to them personally. *See* Cal. Civ. Code § 1799.3(a); (*supra* at 20–21).

**CIPA.** Plaintiffs' CIPA claims fail as a matter of law for two reasons. First, CIPA does not apply to the browsing-related data Plaintiffs allege was disclosed to Meta. Courts have repeatedly found that browsing-related data does not qualify as "contents" of "communications" protected under CIPA. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (dismissing CIPA claim because browsing-related data did not qualify as protected "content" under CIPA); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014) (affirming dismissal of federal Wiretap Act and Stored Communications Act claims because "URL information" did not qualify as protected "'contents' of a communication").[8] This is because "contents" of a "communication" means "any information concerning the substance, purport, or meaning of that communication." *McCoy v.*

---

[8] *In re Zynga* dealt with claims under the federal Wiretap Act, not CIPA. 750 F.3d at 1109. But courts have construed "contents" to have the same meaning under CIPA that it does under the Wiretap Act, concluding that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014) (internal quotation marks and citation omitted). Thus, *Zynga* and related cases interpreting the Wiretap Act are instructive here.

*Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *13 (N.D. Cal. Feb. 2, 2021) (internal quotation marks and citation omitted). In *Yoon*, for example, the plaintiff alleged that information including "pages viewed," "Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were improperly disclosed. 549 F. Supp. 3d at 1082 (Internal quotation marks and citation omitted). But the court concluded that "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do," and thus, these alleged disclosures of data could not support a CIPA claim. *Id.* at 1082–83.

Here, Plaintiffs allege that MLBAM disclosed exactly the kinds of browsing-history data that *Yoon* and other decisions have found not to violate CIPA. (*See* Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126); *see, e.g.*, *Yoon*, 549 F. Supp. 3d at 1082 (collecting cases). Thus, Plaintiffs' CIPA claim should be dismissed.

Second, because Plaintiffs cannot show that the data supposedly transmitted qualifies as a protected "communication" under CIPA, they by necessity also cannot show that a third party received any "contents" of a qualifying "communication." *See* Cal. Penal Code § 631(a). Their CIPA claim fails for this reason as well.

**UCL.** Plaintiffs' UCL claim fails because they do not and cannot plausibly allege any economic loss. A UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021) (internal quotation marks and citation omitted). Courts have rejected UCL claims based on online disclosures because any alleged economic loss arising from these disclosures "is purely hypothetical." *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (dismissing ULC claim on this basis); *Martin*, 657 F. Supp. 3d at 287, *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023) (same). This Court should join these courts in holding that because Plaintiffs' alleged injury here "consists solely of the alleged disclosure of private information," *Martin*, 657 F. Supp. 3d at 287, they have not "lost money or property" and cannot bring claims under the UCL. *See, e.g.*, *Facebook*, 402 F. Supp. 3d at 804.

Even if they could somehow allege economic loss from online disclosures, Plaintiffs do not plausibly do so here. (*See* Compl. ¶¶ 178–189.) Plaintiffs instead make only conclusory statements: First, that they "paid more in" unspecified "subscription fees than they would have" had they known about MLBAM's supposedly "unlawful business practice" (*id.* ¶ 185), and second, that "[t]he difference between what Plaintiffs paid . . . and what they would have been willing to pay . . . constitutes economic injury" (*id.* ¶ 188). Nowhere do Plaintiffs ever allege any factual content about these supposed payments for unidentified "subscription fees" so as to make these allegations plausible. (*See id.* ¶¶ 178–189.) Without supporting factual content, Plaintiffs cannot state a UCL claim. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021) (affirming dismissal of complaint lacking factual allegations).

**CLRA.** To begin, Plaintiffs' CLRA claims fails because their Complaint simply parrots the language of the statute without supporting factual content. (*Supra* at 6.) They allege, for example, that MLBAM "pass[ed] off goods or services as those of another"—a quote from the statute—without identifying what goods or services they mean or explaining how MLBAM supposedly did so. (Compl. ¶ 195. (quoting Cal. Civ. Code § 1770(a)(19).) Their other allegations similarly quote directly from the statute without any supporting facts. (*See id.*) Plaintiffs' Facebook Pixel-related allegations do not even arguably pertain to these elements. (*See generally* Compl.) Instead, these are precisely the type of "formulaic recitation of the elements of a cause of action" that cannot be credited. *Arcell v. Google LLC*, -- F. Supp. 3d --, No. 22-CV-02499-RFL, 2024 WL 3738422, at *2 (N.D. Cal. Aug. 9, 2024) (internal quotation marks and citation omitted).

Beyond their threadbare pleading, Plaintiffs' CLRA claim fails based on three additional defects. ***First***, Plaintiffs are not "consumers" under the CLRA because they did not "seek[] or acquire[], by purchase or lease, any goods or services for personal, family, or household purposes" from MLBAM. Cal. Civ. Code § 1761(d) (emphasis added). As already described, (*supra* at 6–7, 18–20), Plaintiffs fail to allege any facts suggesting that they "purchased" or "leased" goods from MLBAM. And courts dismiss CLRA claims that fail to include the factual allegations necessary to show a "sale" of any qualifying "good" or "service." *In re iPhone Application Litig.*, 844 F. Supp. 2d

1040, 1070 (N.D. Cal. 2012) (dismissing CLRA claim where plaintiff failed to allege purchase of "good" or "service").

***Second***, Plaintiffs' CLRA claim fails because they have not alleged recoverable damages. Like courts construing the UCL, courts applying the CLRA have rejected claims by plaintiffs who fail to allege that a defendant's alleged online disclosures caused them to "suffer[] any damages," particularly economic damages. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114–15 (N.D. Cal. 2016) (dismissing CLRA claim for failure to allege economic damages.) Courts interpret the "depriv[ation] . . . of economic value" required by the Act literally, examining whether a Plaintiff "lost dollars of his own." *In re Google* at *5. Plaintiffs must plead facts to show how they were deprived of economic value of their personal information when it was allegedly shared with a third party. *See LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *4–5 (C.D. Cal. Apr. 28, 2011) (dismissing CLRA claim). Here, Plaintiffs never allege any losses or deprivation at all in their CLRA claim, let alone the economic loss required to state a claim. (*See* Compl. ¶¶ 40–129.)

***Third***, Plaintiffs have not alleged any actionable misrepresentation "in the context of a transaction intended to result or resulting in the sale or lease of goods or services," which they must, to state a CLRA claim. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *24 (N.D. Cal. Apr. 11, 2024). Misrepresentations that are actionable under the CLRA must impact Plaintiffs' decision to enter into a sale. *Id*. And Plaintiffs here never allege facts supporting that MLBAM sold them any particular good or service, let alone made a misrepresentation to induce them to make a purchase from MLBAM. (*See generally* Compl.) Plaintiffs fail to state a CLRA claim for this reason as well.

**C. The Court should strike Plaintiffs' class allegations.**

In any event, Plaintiffs cannot bring their putative class claims against MLBAM because the TOU to which they agreed prohibits such claims. Plaintiffs admit the TOU "contains a Class Action Waiver." (Compl. ¶ 17 n.1.) Plaintiffs nevertheless incorrectly argue this class-action waiver is unenforceable under California law. (*See id.*)

To begin, New York law—not California law—applies here based on the TOU. (*Supra* at 8.) And New York courts routinely enforce class-action waivers. Because a binding and enforceable agreement between the parties precludes Plaintiffs' class claims, the Court should strike those claims under Rule 12(f). Even if California law applied here, it would require the same result.

**1. Under New York law, Plaintiffs' class waiver is enforceable and requires striking their class allegations.**

Under New York law—which applies based on MLBAM's TOU (supra at 8)—the class-action waiver in the TOU is enforceable. *See, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable"); *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (enforcing class-action waiver). Indeed, "courts applying New York law [] have ***uniformly held*** that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (emphasis added). Nor is "a contractual proscription against class actions . . . violative of public policy" under New York law. *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354–55 (N.Y. App. Div. 2003). And nothing in the VPPA itself prohibits enforcing class-action waivers like MLBAM's. *See generally* 18 U.S.C. § 2710 *et seq*.; *see also U1it4Less, Inc. v. FedEx Corp.*, No. 11-CV-1713 (KBF), 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015) (examining whether class-action waiver is prohibited by the relevant statutory scheme).

The class-action waiver provision here is sufficiently clear and conspicuous that Plaintiffs are bound by it. Like the forum-selection clause and choice-of-law clause, (*see supra* at 8), the phrase "**CLASS ACTION WAIVER**" first appears in bolded, all-caps text in the TOU's Table of Contents. (TOU, Table of Contents.) The Introduction of the TOU also discloses the class-action waiver upfront and explains that it may "affect your legal rights." (TOU, Introduction.) By clicking on the hyperlink in the Table of Contents or scrolling down the TOU webpage, a user looking at the TOU then sees "**CLASS ACTION WAIVER**" in bold font and all capital letters in the Section 11 header. (*Id.* § 11.) Scrolling down, "**Class Action Waiver**" appears in bolded font again as the header for the waiver provision, which in turn is written in all capital letters. (*Id.*) The bolding, use of capital letters, and formatting all make the provision conspicuous. (*See supra* at 8–9, 11–12.)

This conspicuous class-action waiver precludes Plaintiffs' proposed class action. It applies to "any proceeding" involving MLBAM's digital property, "whether in arbitration or in litigation." (TOU § 11, Class Action Waiver.) These proceedings all must "be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action." (*Id.*) Plaintiffs base all their claims on their alleged "subscriptions" to MLB.com, part of "the Official Website of Major League Baseball." (*See id.* § 1 ("the Official Website of Major League Baseball [] encompasses MLB.com").) The plain language of the provision thus makes clear that Plaintiffs may not bring their VPPA or California claims as a putative class action.

Because Plaintiffs are bound by a valid and enforceable class-action waiver that applies to their class claims, the court should strike their class allegations. Rule 12(f) allows a court to "strike from a pleading" immaterial matters. *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 12(f)). Rule 23 in turn allows courts to determine "whether to certify the action as a class action" at "an early practicable time after a person sues . . . as a class representative." *Id.* (quoting Fed. R. Civ. P. 23).

Together, these two rules allow courts to strike class allegations early in a case. So long as the motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," a court may strike class allegations. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). "[O]ne circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Indeed, courts in the Second Circuit regularly grant motions to strike class allegations after finding class-action waivers valid and enforceable. *See, e.g.*, *Camilo*, 2018 WL 2464507, at *3 (granting motion to strike); *Castellanos*, 291 F. Supp. 3d at 302–03 (same).

Because Plaintiffs waived their right to maintain a class action against MLBAM, the Court should strike their class allegations under New York law.

/ / /

/ / /

**2. The class-action waiver also applies under California law.**

Even if the Court applies California law despite the New York choice-of-law provision in MLBAM's TOU, it should reach the same result. California law supports striking the class allegations under Rules 12(f) and 23 where, as here, "the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).

When assessing a standalone class-action waiver like the one in MLBAM's TOU, California courts typically apply the three-part *Discover Bank* test to determine whether the waiver is unconscionable. *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2023 WL 2717255, at *4 (N.D. Cal. Mar. 29, 2023). This test examines: (1) whether the agreement is "a consumer contract of adhesion"; (2) whether the agreement occurs "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* (quoting *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148, 162–63 (Cal. 2005)).

Under the *Discover Bank* test, MLBAM's class-action waiver is enforceable for the following reasons.

***First***, whether the TOU qualifies as a "consumer contract of adhesion" is not outcome determinative because courts balance of all three factors to determine whether to enforce a class-action waiver in a TOU. *See, e.g.*, *id.* at *4–6 (balancing all three factors); *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1038–41 (N.D. Cal. 2008) (examining all three factors when construing, and enforcing, class-action waiver).

***Second***, the class-action waiver here does not "occur[] in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *See Walnut Producers of California v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 649 (2010). This was the situation in a case cited by Plaintiffs declining to enforce a class-action waiver. *See Suski v. Marden-Kane., Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at *4–5 (N.D. Cal. Aug. 31, 2022). The plaintiffs' claims there involved "well under $1,000" each in damages, which was "small enough to satisfy the second element of the *Discover Bank* test." *Id*. By contrast, the *Omstead* court found that "sales of high-end

electronics" worth around $4,000 each did not "occur in 'a setting in which disputes between the contracting parties predictably involve small amounts of damages.'" 533 F. Supp. 2d at 1040 (citation omitted).

Here, not accounting for the restitution and other relief, Plaintiffs each seek at least $8,500. (Compl. at Prayer for Relief, ¶¶ 7–8.) This amount far exceeds even the $4,000 sought by each plaintiff in *Omstead*, which led that court to find the second factor of the *Discover Bank* test not satisfied and to enforce a class-action waiver. *See* 533 F. Supp. 2d at 1040. Thus, this factor supports enforcing the class-action waiver here.

***Third***, Plaintiffs have not alleged any facts to suggest that MLBAM engaged in any "scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 984 (9th Cir. 2007) (internal quotation marks and citation omitted). Indeed, Plaintiffs do not allege any facts supporting that they paid MLBAM for subscription services at all, let alone that such payments were part of a broader, intentional scheme by MLBAM. (*See generally* Comp.) Their conclusory and vague allegations about supposed "subscription fees" for unidentified goods and services (*see* Compl. ¶¶ 185, 188) do not suffice under federal pleading standards. *See Whitaker*, 985 F.3d at 1176–77 (affirming dismissal of complaint lacking factual allegations). So this factor also weighs in favor of enforcing the class-action waiver.

Because the *Discover Bank* factors favor enforceability, this Court should find that Plaintiffs agreed to an enforceable class-action waiver and strike Plaintiffs' class allegations under Rule 12(f) even if it applies California law. *See Tietsworth*, 720 F. Supp. 2d at 1146 (class allegations appropriately stricken under Rule 12(f) where allegations do not support class claims).

## IV. CONCLUSION

The Court should transfer this case to the Southern District of New York. Alternatively, the Court should dismiss Plaintiffs' individual claims and strike Plaintiffs' class claims.

Dated: August 28, 2024

Respectfully submitted,

By: /s/ *Alan E. Littmann*

Alan E. Littmann (appearance *pro hac vice*)
alittmann@goldmanismail.com

GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 South Wacker Drive
22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191

Kenneth F. Baum (SBN 250719)
kbaum@goldmanismail.com
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
100 Wilshire Boulevard, Suite 1760
Santa Monica, CA 90401
Telephone: (310) 576-6900
Facsimile: (312) 881-5191

*Counsel for Defendant MLB Advanced Media, L.P.*