Kenneth F. Baum (SBN 250719)
kbaum@goldmanismail.com
Goldman Ismail Tomaselli
Brennan & Baum LLP
100 Wilshire Boulevard, Suite 1760
Santa Monica, CA 90401
Telephone: (310) 576-6900
Facsimile: (312) 881-5191

(Additional counsel listed in signature block)

*Attorney for Defendant*
*MLB Advanced Media, L.P.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ERIC WONG, *et al.*,

Plaintiffs,

v.

MLB ADVANCED MEDIA, L.P., *et al.*,

Defendants.

Case No. 3:24-cv-00779-LB

*Assigned to Magistrate Judge Laurel Beeler*

**DEFENDANT MLB ADVANCED MEDIA L.P.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER, TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING, AND TO STRIKE CLASS ALLEGATIONS**

Date: December 19, 2024
Time: 9:30 a.m. PT
Courtroom: B, 15th Floor, San Francisco
Judge: Hon. Laurel Beeler

*(Filed concurrently with Declaration of Alan E. Littmann)*

Complaint Filed: February 8, 2024
Amended Complaint Filed: April 18, 2024

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .... iii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES .... 1

I. INTRODUCTION .... 1

II. ARGUMENT .... 2

A. Transfer is proper because the TOU's forum-selection clause is enforceable .... 2

1. Plaintiffs do not dispute MLBAM's core arguments compelling transfer. .... 3

2. Federal law governs forum-selection clause enforceability and places a heavy burden on Plaintiffs to avoid enforcement. .... 3

3. Plaintiffs have not met their heavy burden to avoid enforcement. .... 4

a. None of Plaintiffs' policy-based objections to transfer relate to venue. .... 5

b. Plaintiffs do not raise any remedy that is inevitably foreclosed in the parties' chosen forum. .... 5

c. Plaintiffs improperly invoke state law, which does not apply here. .... 9

B. Plaintiffs' claims fail as a matter of law. .... 11

1. The VPPA claim should be dismissed because Plaintiffs fail to allege disclosures of *their* information. .... 11

2. The VPPA claim should be dismissed because Plaintiffs fail to allege that they are "consumers." .... 12

3. Plaintiffs' California claims should be dismissed because they are not plausibly pleaded and New York law applies. .... 15

C. Plaintiffs' class allegations should be stricken. .... 17

1. Striking class allegations is not premature. .... 17

2. The class-action waiver is neither contradictory nor ambiguous. .... 18

III. CONCLUSION .... 20

# TABLE OF AUTHORITIES

**Cases**

*Alex v. NFL Enters. LLC*,
2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) .......... 13, 14

*Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah*,
2008 WL 691851 (N.D. Cal. Mar. 12, 2008) .......... 10

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 11

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 13, 14

*Balducci v. Congo, Ltd.*,
2017 WL 4176464 (N.D. Cal. Sept. 21, 2017) .......... 6

*Bayol v. Zipcar, Inc.*,
2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) .......... 6, 7

*Beagle v. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) .......... 12

*Beardslee v. Inflection Energy, LLC*,
25 N.Y.3d 150 (2015) .......... 19

*Boghos v. Certain Underwriters at Lloyd's of London*,
36 Cal. 4th 495 (2005) .......... 19

*Clem v. Lomeli*,
566 F.3d 1177 (9th Cir. 2009) .......... 15

*Discover Bank v. Sup. Ct.*,
36 Cal. 4th 148 (2005) .......... 10

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .......... 4, 7, 8, 9

*E. Bay Women's Health, Inc. v. gloStream, Inc.*,
2014 WL 1618382 (N.D. Cal. Apr. 21, 2014) .......... 8

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) .......... 14

*Fan v. NBA Props. Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .......... 11

*Fisher v. DCH Temecula Imports LLC*,
187 Cal. App. 4th 601 (2010) ........ 9

*Gamayo v. Match.com LLC*,
2011 WL 3739542 (N.D. Cal. Aug. 24, 2011) ........ 7

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ........ 17, 18

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ........ 16

*Holman v. Bath & Body Works, LLC*,
2021 WL 5826468 (E.D. Cal. Dec. 8, 2021),
*R&R adopted*, 2022 WL 463298 (E.D. Cal. Feb.15, 2022) ........ 18

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 12

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ........ 20

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ........ 17, 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 17

*Jefferson v. Healthline Media, Inc.*,
674 F. Supp. 3d 760 (N.D. Cal. 2023) ........ 13, 15

*Jeong v. Nexo Cap. Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) ........ 17, 18

*King v. Russell*,
963 F.2d 1301 (9th Cir. 1992) ........ 10

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ........ 16

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ........ 16

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal. 2018) ........ 9

*Lange v. Monster Energy Co.*,
46 Cal. App. 5th 436 (2020) ........ 9, 10

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) ........................................ 3

*Lightfoot v. MoneyonMobile, Inc.*,
2019 WL 2476624 (N.D. Cal. June 13, 2019) ........................................ 5, 9

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) ........................................ 4, 8, 9

*Marcotte v. Micros Sys., Inc.*,
2014 WL 4477349 (N.D. Cal. Sept. 11, 2014) ........................................ 6

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) ........................................ 11

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ........................................ 4, 8, 9

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ........................................ 12

*Preiser v. Newkirk*,
422 U.S. 395 (1975) ........................................ 11

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015) ........................................ 18

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) ........................................ 4

*Richeson v. Helal*,
158 Cal. App. 4th 268 (2007) ........................................ 19

*Rowen v. Soundview Commc'ns, Inc.*,
2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ........................................ passim

*Salazar v. National Basketball Association.*,
-- F.4th --, 2024 WL 4487971 (2d Cir. Oct. 15, 2024) ........................................ 1, 13, 14

*Stability Sols., LLC v. Medacta USA, Inc.*,
2023 WL 350546 (N.D. Cal. Jan. 20, 2023) ........................................ 3, 7

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) ........................................ 20

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................ 17

*United States ex rel. Fallon v. Bell Transit Corp.*,
2021 WL 3665898 (N.D. Cal. Aug. 18, 2021) ........................................ 15, 16

*Venezuela S.A. v. MUFG Union Bank, N.A.*,
51 F.4th 456 (2d Cir. 2022) .......... 9

*Voicemail Club, Inc. v. Enhanced Servs. Billing, Inc.*,
2012 WL 4837697 (N.D. Cal. Oct. 10, 2012) .......... 6

*Wilson v. Gateway, Inc.*,
2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) .......... 20

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) .......... 3, 4

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 17

**Statutes**

28 U.S.C. § 1404(a) .......... 3, 9

Cal. Civ. Code § 1761(d) .......... 15

Cal. Civ. Code § 1770(a)(1) .......... 15

Cal. Civ. Code § 1799.3 .......... 16

California Invasion of Privacy Act .......... 16, 17

California Unfair Competition Law .......... 16

Consumer Legal Remedies Act .......... passim

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 11, 12

Fed. R. Civ. P. 12(b)(6) .......... 1, 11, 12, 15

Fed. R. Civ. P. 12(f) .......... 2, 20

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

As MLBAM's opening memorandum (ECF No. 29 ("Mem.")) established, and as Plaintiffs largely do not dispute, this case should be transferred to the Southern District of New York under the presumptively valid forum-selection clause in MLBAM's Terms of Use ("TOU"). Indeed, two putative VPPA class actions against MLBAM are already being litigated in the Southern District of New York based on this TOU. Although Plaintiffs' opposition (ECF No. 31 ("Opp'n")) misdirects the Court on the applicable standards and law, Plaintiffs' only objection under governing federal standards—that transferring this case would undermine California public policies unrelated to venue—presents no barrier to enforcing the forum-selection clause. This is because, as federal courts have long made clear, unless an argument relates to venue policy specifically, the transferee court should first decide choice of law and then decide whether that argument has merit. So, to the extent that a court must address the merits of Plaintiffs' policy concerns at all, those issues can, and should, be decided by the transferee federal court. Because Plaintiffs fail to meet their heavy burden to overcome enforcement of the forum-selection clause, the Court should transfer this case to the district where two other putative VPPA class actions against MLBAM—including one brought by a California resident—are already pending. (*See* Mem. at 2.)

Should the Court even reach the merits, Plaintiffs' claims all fail at the pleading stage. Plaintiffs' VPPA claim cannot stand for two reasons. ***First***, Plaintiffs do not plausibly allege that any of their own information was ever disclosed to a third party. Plaintiffs' opposition relies on the same conclusory allegations that do not plausibly allege a disclosure under Rule 12(b)(6), and they cite case law that addresses a different standing argument than the one MLBAM makes under Rule 12(b)(1). ***Second***, Plaintiffs' VPPA claim fails because they do not plausibly allege that they are "consumers" under the statute. This is true despite the Second Circuit's recent decision interpreting the VPPA's "consumer" element in *Salazar v. National Basketball Association*. No. 23-1147, -- F.4th --, 2024 WL 4487971 (2d Cir. Oct. 15, 2024). If the Court follows the reasoning adopted by other courts in this District and across the country, then Plaintiffs are not consumers because their alleged registrations on MLB.com are not subscriptions to receive audiovisual goods or services from

MLBAM. And if the Court follows *Salazar*, then Plaintiffs are not consumers because they fail to allege that by registering on MLB.com, they either received a benefit from MLBAM or provided the kinds of information required for a qualifying exchange.

Likewise, Plaintiffs' California claims all suffer fatal pleading deficiencies. Plaintiffs do not refute many of MLBAM's grounds for dismissing each of these claims, instead relying on their vague allegation about supposed payments for unidentified "subscription fees" to support their CLRA, UCL, and § 1799.3 claims. But without supporting factual content, this bare allegation does not suffice—let alone rescue these claims from the many other arguments MLBAM has identified for their dismissal. As for their CIPA claim, this Court should follow binding Ninth Circuit authority holding that the browsing-related data Plaintiffs say was disclosed does not qualify as "contents" of "communications" protected by the statute. All the California claims thus fail as a matter of law.

Finally, in the event the Court reaches this issue, Plaintiffs' class-action allegations should be stricken under the governing TOU. Plaintiffs do not dispute that, based on their own allegations, they agreed to the class-action waiver, or that it is enforceable under New York law. Instead, they argue that the waiver is unenforceable under California law, that MLBAM's motion is premature, and that the waiver is contradictory and therefore ambiguous. Plaintiffs are wrong on all three scores. Even if California law applied, the class-action waiver would be enforceable; MLBAM's motion is not premature because it addresses the enforceability of the parties' class-action waiver, not an issue pertaining to class certification; and the waiver is unambiguous and consistent with routine class-action practice. Because the binding class-action waiver prevents Plaintiffs from bringing this putative class action, the Court should strike their class allegations under Rule 12(f).

## II. ARGUMENT

### A. Transfer is proper because the TOU's forum-selection clause is enforceable.

Plaintiffs do not dispute the majority of MLBAM's analysis that compels transfer to the Southern District of New York. (*See* Mem. at 9–17; Opp'n at 4–17.) Plaintiffs question only whether the TOU's forum-selection clause should be enforced. Plaintiffs' appeals to policy considerations do not overcome their heavy burden to avoid enforcement of the TOU's presumptively valid forum-selection clause. Thus, the Court should transfer this case to the Southern District of New York.

**1. Plaintiffs do not dispute MLBAM's core arguments compelling transfer.**

In most respects, Plaintiffs leave MLBAM's transfer arguments undisturbed. Plaintiffs do not dispute that they agreed to MLBAM's TOU, that their claims are covered by that TOU, or that the TOU includes a forum-selection clause that applies to their claims. (*See* Opp'n at 3 ("Plaintiffs assert . . . that the claims at issue are 'Non-Arbitrable Claims' under the TOU," which "also includes a forum selection clause").) Plaintiffs do not contest that the public-interest factors under the 28 U.S.C. § 1404(a) analysis favor transfer in this case. (*See* Mem. at 15–17.) Indeed, Plaintiffs do not even cite § 1404(a) in their opposition. Nor do Plaintiffs dispute that the Southern District of New York would be the proper place for this case to go if transferred. This is why a putative VPPA class action was already pending there when MLBAM moved to transfer this case, and since then, ***another*** VPPA class action has been filed against MLBAM in the Southern District of New York. (*See* Littmann Decl., Ex. D, 8/20/24 Class Action Compl., *Golland v. Major League Baseball Advanced Media, L.P.*, No. 1:24-CV-6270-GHW-GWG (S.D.N.Y.) ("*Golland*"), ECF No. 1.) The sole remaining issue is whether the forum-selection clause in MLBAM's TOU is enforceable. As explained in MLBAM's opening brief and below, it is.

**2. Federal law governs forum-selection clause enforceability and places a heavy burden on Plaintiffs to avoid enforcement.**

Because they cannot dispute that a valid forum-selection clause applies to their claims and that the § 1404 factors favor transfer, Plaintiffs resort to obfuscation. They begin by making two incorrect claims about the governing legal standard and applicable burden.

***First***, Plaintiffs improperly elide which law applies to this inquiry. (Opp'n at 3–4 (arguing forum-selection clause enforcement "is analyzed under both state and federal law" (capitalization omitted)).) "***Federal law*** governs the interpretation and enforcement of forum-selection clauses." *Stability Sols., LLC v. Medacta USA, Inc.*, No. 22-CV-07412-LB, 2023 WL 350546, at *4 (N.D. Cal. Jan. 20, 2023) (Beeler, J.) (emphasis added); *accord Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (en banc). State law applies only to the question of contract formation, *Stability Sols.*, 2023 WL 350546, at *4, which Plaintiffs do not challenge here. Under federal law, Plaintiffs can evade enforcement of a forum-selection clause only under narrowly defined "extraordinary circumstances."

*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (cleaned up).

***Second***, Plaintiffs improperly seek to avoid their burden to establish "extraordinary circumstances" to overcome the forum-selection clause, instead attempting to put the burden on MLBAM to show that Plaintiffs will be given the same rights in the transferee forum. *Id.*; (Opp'n at 7–8). But Plaintiffs' position conflicts with binding authority in this Circuit. Under Supreme Court and Ninth Circuit law, "the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). As set out below, Plaintiffs fail to meet this burden.

**3. Plaintiffs have not met their heavy burden to avoid enforcement.**

Properly analyzed under federal law's simple framework, Plaintiffs fail to establish any ground not to enforce the forum-selection clause they agreed to. Under federal law, forum selection clauses are "presumptively valid, [and] they should be honored" unless enforcement is "unreasonable." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). Plaintiffs do not even assert two of three recognized "unreasonable" circumstances to avoid enforcement—fraud or overreaching, or deprivation of Plaintiffs' day in court. *See id*. Rather, Plaintiffs claim only that enforcement of the forum-selection clause in MLBAM's TOU would "contravene a strong public policy of the forum in which suit is brought." *Id.* (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998)); (*see* Opp'n at 11–17).

But Plaintiffs misstate and misapply the relevant law, relying on ***other*** clauses in MLBAM's TOU in a confused attempt to say the ***forum-selection clause*** should not be enforced. Plaintiffs claim that the choice-of-law provision in MLBAM's TOU, their barebones pleading under the CLRA, and non-venue-related TOU provisions regarding class actions and jury trials defeat transfer. (Opp'n at 11-17.)

None of these non-venue arguments overcome the parties' choice of forum. To begin, governing law requires forum-selection objections to be venue-specific, and none of Plaintiffs' policy-based objections relate to venue. Plaintiffs also fail to show that any purportedly unwaivable rights they may have under California law would be inevitably foreclosed by transferring venue, so

Plaintiffs' series of policy arguments should all be left for the transferee court to decide.

**a. None of Plaintiffs' policy-based objections to transfer relate to venue.**

Plaintiffs raise several policy-based objections to enforcing the forum-selection clause, but none specifically relates to venue. As ample case law in this District demonstrates, "courts tether their policy analysis to the ***forum selection clause itself***, finding the forum selection clause unreasonable only when it contravenes a policy ***specifically related to venue***." *Rowen v. Soundview Commc'ns, Inc.*, No. 14-CV-05530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015) (emphases added). Plaintiffs nowhere explain how their objections based on the CLRA or class- or jury-related TOU provisions depend on litigating this case in a federal court in California rather than a federal court in New York. And, as MLBAM explained in its Memorandum, those TOU provisions are not relevant. (*See* Mem. at 14.) This Court should therefore focus its analysis on the "forum selection clause itself" and reject Plaintiffs' invitation to focus on other clauses in MLBAM's TOU unrelated to venue to try to defeat application of the forum-selection clause. *See Rowen*, 2015 WL 899294, at *1, *4 (granting motion to transfer based on forum-selection clause).

**b. Plaintiffs do not raise any remedy that is inevitably foreclosed in the parties' chosen forum.**

Plaintiffs cannot identify any remedy for which the transferee forum would completely foreclose relief. The only time a transfer analysis need not be closely tethered to the forum-selection clause is where transfer would render "a ***total foreclosure of remedy*** in the transferee forum." *Rowen*, 2015 WL 899294, at *4 (emphasis added); *see also Lightfoot v. MoneyonMobile, Inc.*, No. 18-CV-07123-YGR, 2019 WL 2476624, at *4 (N.D. Cal. June 13, 2019) (policy objection to forum-selection clause must relate to venue "[a]bsent a total foreclosure of remedy in the transferee forum"). "The foreclosure of remedy ***must be inevitable***." *Rowen*, 2015 WL 899294, at *4 n.2 (emphasis added).

Plaintiffs here do not, and cannot, show that any of the California policies they cite are certain to fail in a New York federal court. They cannot be sure how a New York federal court would evaluate the TOU's choice-of-law provision, their CLRA claim, or the TOU's class-action and jury-trial waivers. And because Plaintiffs cannot show that vindicating California rights would be a literal

impossibility in New York federal court, this case is fundamentally distinct from cases refusing to enforce a forum-selection clause implicating unwaivable rights.

**Choice-of-law provision.** Plaintiffs urge this Court to consider the TOU's forum-selection clause alongside its choice-of-law provision to argue that Plaintiffs would be deprived of substantial California rights in a federal forum that applies New York law. (*See* Opp'n at 4–6.) But as this Court has reasoned, "[t]he problem" with the argument that choice of law should be considered at the transfer stage "is that the choice of law issues are the same for a district court in [New York] or California: both courts . . . consider which law (California or [New York]) to apply to the claims." *Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *8–9 (N.D. Cal. Sept. 11, 2014) (Beeler, J.). "In sum, enforcing the forum selection clause is different than choice-of-law issues," and only the former need be decided on this motion to transfer. *Id.*

Plaintiffs also concede they "cannot be certain whether the transferee court would enforce the choice of law provision" at issue here. (Opp'n at 11.) They thus fail to show that the "total foreclosure" of any California remedy would be "inevitable" if this case were transferred to a federal court in New York. *Rowen*, 2015 WL 899294, at *4 & n.2. Instead, Plaintiffs "improperly speculate[] as to how the transferee forum would ultimately resolve the issue of what substantive law should be applied to plaintiff[s'] claims." *Voicemail Club, Inc. v. Enhanced Servs. Billing, Inc.*, No. C 12-02189 SI, 2012 WL 4837697, at *3–4 (N.D. Cal. Oct. 10, 2012). These "choice of law arguments can be made before the transferee court," and this Court need not "speculate how the transferee court will decide the issue." *Balducci v. Congo, Ltd.*, No. 17-CV-04062-KAW, 2017 WL 4176464, at *6 (N.D. Cal. Sept. 21, 2017); *see also Marcotte*, 2014 WL 4477349, at *8 (holding that the "District of Maryland can address Ms. Marcotte's claims, whether they arise under Maryland or California law").

For these reasons, the Court should decline Plaintiffs' invitation to follow non-binding district court opinions that engage in the very speculation about transferee-forum actions that most courts in this Circuit eschew. (*See* Opp'n at 4–6 (argument based on *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014)).) Plaintiffs want this Court to guess whether transfer would "likely lead to the application of [New York] law," and to guess further how that would impact Plaintiffs' case. (*Id.* at 5 (quoting *Bayol*, 2014 WL 4793935, at *2).) Contrary to

Plaintiffs' argument, "[c]ourts throughout the Ninth Circuit have consistently followed [an] analysis[] rejecting policy arguments unrelated to venue whenever there was no foreclosure of remedy in the transferee forum." *Rowen*, 2015 WL 899294, at *4 (collecting cases). And, as explained below, *Bayol* goes further than the Ninth Circuit's analysis in *Doe 1*, which this Court previously applied to find transfer appropriate where the plaintiff was "not foreclosed from a remedy in the transferee forum." *Stability Sols.*, 2023 WL 350546, at *5. As it has before, this Court should do the same here. *Id.*

**CLRA claim.** Plaintiffs also incorrectly assert that their CLRA claim would be foreclosed in a New York forum. (Opp'n at 12–14.) To begin, this is not even a viable claim. Plaintiffs' barebones CLRA pleading is among the weakest counts in Plaintiffs' complaint. The claim was added late by amendment, apparently with the purpose of trying to defeat transfer under the TOU's forum-selection provision. (*Compare* ECF No. 1 (original complaint), *with* ECF No. 12 (amended complaint, adding CLRA claim).) As described in MLBAM's opening brief and below, Plaintiffs' CLRA claim does not come close to alleging plausible relief. (Mem. at 27–28; *infra* at 15–16.) Plaintiffs should not be permitted to defeat transfer by belatedly asserting a facially deficient claim.

But even if Plaintiffs had a plausible CLRA claim—which they do not—it still would not be enough to overcome transfer under the forum-selection clause here. Other courts in this District have refused to deny transfer based on a valid-forum selection clause much like the one here based on a CLRA claim, because "the resolution of which state's laws apply is for the [transferee] court to make." *Gamayo v. Match.com LLC*, No. C 11-00762 SBA, 2011 WL 3739542, at *6 (N.D. Cal. Aug. 24, 2011) ("In sum, the Court finds that enforcement of Match.com's forum selection clause neither contravenes the anti-waiver provision of the CLRA nor the strong public policy of California."). This Court should rule likewise and transfer this case.

**Class-action and jury-trial waivers.** Plaintiffs' other attempts to invoke non-forum-related provisions of MLBAM's TOU—pertaining to class actions and jury trials—fare no better. (*See* Opp'n at 14–17.) Plaintiffs do not meaningfully argue that the class-action waiver provision in the TOU independently contravenes California public policy. Plaintiffs acknowledge that class actions are available in federal court. So Plaintiffs can only again fall back on their CLRA argument, which fails for the reasons just explained. (*Id.* at 15.) Of course, MLBAM maintains that if the Court reaches this

issue, it should find that the class-action waiver applies, (*see infra* at 17–20), and Plaintiffs argue the opposite. But the parties can make those same arguments in a New York federal court.

Likewise, Plaintiffs cite no case finding the loss of a jury trial inevitable if a case is transferred. Instead, Plaintiffs characterize the risk of adverse enforcement of the jury-trial waiver provision only as a "right that Plaintiffs ***could*** lose under New York law." (Opp'n at 15 (emphasis added); *see id.* at 16 (citing 1991 intermediate New York appellate case that jury trial waivers are "generally" enforceable).) Because Plaintiffs cannot show that a transferee forum is certain to deprive them of their asserted rights to a class mechanism or jury trial, they cannot avoid enforcement of the "presumptively valid" forum-selection clause. *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen*, 407 U.S. at 12); *see Rowen*, 2015 WL 899294, at *4.

* * *

All these considerations make this case fundamentally distinct from binding Ninth Circuit precedent that refused to enforce a forum-selection clause implicating unwaivable class-action and CLRA rights. In *Doe 1*, the Ninth Circuit declined to enforce a forum-selection clause involving the CLRA because California's courts had declared "a California public policy against" class-action and CLRA waiver. 552 F.3d at 1084. But in that case, enforcement of the forum-selection clause would have meant a transfer to Virginia state courts, which had no consumer class-action mechanism. *Id.* As such, enforcing the forum-selection clause in *Doe 1* would have made vindicating plaintiffs' California rights a ***literal impossibility***. *See E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382, at *2–3 (N.D. Cal. Apr. 21, 2014) (holding that the forum-selection clause at issue in *Doe 1* was "fundamentally different" because "the Virginia state-court system was ***procedurally incapable*** of hearing consumer class actions" (emphasis added)). By contrast here, there is nothing about the proposed transferee forum—a New York federal court—that would inevitably doom the possibility of any of Plaintiffs' asserted relief. Although MLBAM does and will advocate to apply the TOU that Plaintiffs agreed to, Plaintiffs themselves admit that it is not certain a New York federal court would apply New York law. (Opp'n at 11.)

Nor have Plaintiffs shown that a federal court in New York, even if it did apply New York law, would unquestionably refuse to effectuate Plaintiffs' alleged rights under the CLRA, or any other

California public policy. As the Second Circuit recently articulated, "[t]he New York Court of Appeals has recognized a public policy exception" to the enforcement of choice-of-law provisions, and "New York intermediate appellate courts have applied these same principles in considering whether to enforce contractual elections of *New York* law." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022). Thus, while MLBAM will argue that New York law controls, as it does here should the Court even reach the issue, Plaintiffs will not be foreclosed from advancing their opposing arguments before a federal court in New York.

Because Plaintiffs have not shown that the TOU's forum-selection clause on its own, or even together with the choice-of-law provision, would "total[ly] foreclos[e]" the remedies they request, *Lightfoot*, 2019 WL 2476624, at *8; *Rowen*, 2015 WL 899294, at *4, Plaintiffs fail to meet their "heavy burden" to avoid enforcement, *Doe 1*, 552 F.3d at 1083 (quotation marks and citation omitted). This Court should therefore transfer this case to the Southern District of New York.

**c. Plaintiffs improperly invoke state law, which does not apply here.**

Plaintiffs' confusion of the applicable law continues with their argument that MLBAM's forum-selection clause is unconscionable under California law. (Opp'n at 8–10.) As discussed, only federal law applies to the narrow question presented here of whether to enforce the TOU's "presumptively valid" forum-selection clause. *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen*, 407 U.S. at 15). For the reasons above, Plaintiffs' policy-based arguments fail to show that enforcement of the forum-selection clause is "unreasonable." *Id.* As with Plaintiffs' other arguments, those about unconscionability can and should be determined by the transferee court. Further, ***none*** of the cases Plaintiffs cite apply state-law unconscionability to a federal-court transfer analysis under § 1404. Rather, several of Plaintiffs' cited cases analyze unconscionability in the context of motions to compel arbitration—a scenario not presented here. (*See* Opp'n at 8–10 (citing, *e.g.*, *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420 (N.D. Cal. 2018) (motion to compel arbitration); *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436 (2020) (same); *Fisher v. DCH Temecula Imports LLC*, 187 Cal. App. 4th 601 (2010) (same)).) Simply put, Plaintiffs' arguments about purported unconscionability are irrelevant to the transfer inquiry, and the Court should disregard them.

But even if the Court were to entertain Plaintiffs' state-law contract arguments, Plaintiffs'

unconscionability arguments would all fail. ***First***, Plaintiffs do not even argue that the ***forum-selection clause*** itself is unconscionable. (*See* Opp'n at 8–10 (unconscionability argument based on the combined effect of "the forum selection clause ***and related choice of law provision***" (emphasis added)).) ***Second***, as MLBAM explained in its opening brief—and as Plaintiffs fail to rebut—the TOU's class-action waiver is enforceable and not unconscionable under the *Discover Bank* rule. (*Compare* Mem. at 31–32 (applying *Discover Bank* factors to the facts here), *with* Opp'n at 10 (citing *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148, 162–63 (2005) and asserting that it "remains in full force" but not applying it to the facts here).) ***Third***, even assuming that Plaintiffs are correct that their class-action and jury-trial rights are unwaivable, applying MLBAM's TOU as written would not violate California policy. In contrast to an agreement to "irrevocably waive any and all rights to trial by jury" that some courts have found unconscionable, *see Lange*, 46 Cal. App. 5th at 451–52, the class-action and jury-trial waivers in MLBAM's TOU apply only to the "extent permitted by applicable law." (*See* MLBAM TOU § 11.) Were a court to adopt Plaintiffs' view of California law, the provisions in MLBAM's TOU would still be valid because the court would simply interpret them ***not*** to waive unwaivable rights. ***Fourth***, as MLBAM has argued, the CLRA claim does not preclude transfer, *see supra* at 7, but if the Court concludes it does, it should not deny MLBAM's motion to transfer venue. Instead, it should assess the merits of the CLRA claim on the pleadings, dismiss that claim, (*see* Mem. at 27–28; *infra* at 15–16), and then transfer the remainder of this case to the parties' agreed forum. To do otherwise would reward Plaintiffs' forum-shopping because they added this meritless claim to their amended complaint in hopes of defeating transfer. *See Altin Havayolu Tasamaciligi Turizm Ve Tic v. Sinnarajah*, No. C-07-6475 EDL, 2008 WL 691851, at *8 (N.D. Cal. Mar. 12, 2008) (courts can dismiss a case rather than transfer if the plaintiff is "acting in bad faith or forum shopping" (citing *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992))). Thus, while Plaintiffs' unconscionability arguments are irrelevant to this motion to transfer, those arguments also fail on their merits.

* * *

Because Plaintiffs have failed to show that enforcing the forum-selection clause would be unreasonable under federal law, this case should be transferred to the Southern District of New York.

**B. Plaintiffs' claims fail as a matter of law.**

Although the Court need not reach the merits, (*see supra* at 1–10), should it do so, each of Plaintiffs' claims also fails as a matter of law, (*see* Mem. at 17–28). The opposition does not refute MLBAM's showings that these claims should be dismissed.

**1. The VPPA claim should be dismissed because Plaintiffs fail to allege disclosures of *their* information.**

Plaintiffs' complaint falls short of Rule 12(b)(6) and Rule 12(b)(1) standards because it includes no factual allegations supporting the claim that Plaintiffs' information in particular was disclosed. (*See* Mem. at 20–22.) Their opposition does not point to a single factual allegation of this nature. Instead, Plaintiffs fall back on the same conclusory allegations that fail to state a claim under Rule 12(b)(6), and they cite distinguishable case law that addresses a different standing argument than the one MLBAM makes under Rule 12(b)(1).

**Rule 12(b)(6).** Plaintiffs attempt to cast their conclusory allegations as the factual ones required to satisfy pleading standards under Rule 12(b)(6). They begin by pointing to general allegations about how the Facebook pixel—the website tool they claim is responsible for the disclosure of users' data—supposedly functions. (Opp'n at 19 (citing Compl. ¶ 36, ECF No. 12).) But as MLBAM has explained, these allegations amount to a request for an advisory opinion based "upon a hypothetical state of facts," which the Court cannot provide. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quotation marks and citations omitted); (*see also* Mem. at 21). Plaintiffs then point to their generic and identical allegations that "[e]ach time Plaintiff [ ] requested or obtained specific video materials . . . Defendant simultaneously disclosed Plaintiff['s] FID and the specific video materials . . . requested . . . to Meta via the Pixel." (Opp'n at 19 (cleaned up) (citing Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126).) But these allegations include no facts to show that these disclosures ever actually occurred or what viewing information was revealed by these disclosures. (*See id.*)

The absence of any supporting factual allegations in Plaintiffs' complaint distinguishes their case from those they cite for the proposition that plaintiffs need not plead specific titles of videos requested or obtained to state a VPPA claim. (*See id.* (citing *Fan v. NBA Props. Inc.*, No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024); *Martinez v. D2C, LLC*, No. 23-21394-

CIV, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023); *Ambrose v. Boston Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022)).) MLBAM does not argue that Plaintiffs' simple failure to plead video titles forecloses their claim. Rather, MLBAM's argument is based on Plaintiffs' failure to plead any factual content whatsoever to support their disclosure allegations. (*See* Mem. at 20–22.)

Faced with a similar absence of factual allegations that a disclosure ever took place, the court in *Beagle v. Amazon.com*, *Inc*. recently adopted an argument similar to MLBAM's here. No. C24-03136JLR, 2024 WL 4028290 (W.D. Wash. Sept. 3, 2024). It found that to state a VPPA claim, a complaint must contain factual allegations showing "that a disclosure has affirmatively taken place," not just allegations consistent with "the mere possibility that information could be disclosed." *Id.* at *3 (quotation marks and citation omitted). The complaint in *Beagle* lacked factual allegations connecting the plaintiffs' theory to an actual disclosure. *Id*. As in *Beagle*, Plaintiffs' complaint lacks factual allegations showing that MLBAM affirmatively disclosed their data. All Plaintiffs have shown is the "mere possibility" of a disclosure based on how they say the Facebook pixel functions, which is insufficient. *Id*.; (*see also* Mem. at 20–22).

**Rule 12(b)(1).** Plaintiffs misunderstand MLBAM's standing argument under Rule 12(b)(1). They claim to have pleaded "a cognizable injury as required for standing," citing cases addressing whether privacy-related harm based on online disclosures can constitute such an injury. (Opp'n at 20 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017)).) But MLBAM does not argue that Plaintiffs' alleged privacy-related harm is not a cognizable injury. Rather, MLBAM contends that Plaintiffs' lack of factual allegations showing that a disclosure occurred means they have not alleged the particularized injury required for standing. (Mem. at 22.) Plaintiffs do not address this argument at all, let alone successfully rebut it. For this reason, too, their VPPA claim fails.

**2. The VPPA claim should be dismissed because Plaintiffs fail to allege that they are "consumers."**

Plaintiffs' VPPA claim also fails under Rule 12(b)(6) because they fail to plausibly allege that they meet the statutory definition of "consumer." (*See* Mem. at 18–20.) As MLBAM's opening brief

explained, district courts across the country, including in the Northern District of California, have read the VPPA's consumer and video-tape service provider definitions together to hold that a "consumer" under the VPPA is a renter, purchaser, or subscriber of ***audiovisual*** goods or services in particular. (*Id.* (collecting cases).) On the same day Plaintiffs filed their opposition, the Second Circuit rejected portions of this argument, holding that "[t]he phrase 'goods or services' in the VPPA's definition of 'consumer' is not cabined to only audiovisual 'goods or services.'" *Salazar*, 2024 WL 4487971, at *13. The Ninth Circuit has yet to weigh in on this question, and MLBAM maintains that if this case remains in this District—which it should not for the reasons explained above (*see infra* at 2–10)—then Plaintiffs' complaint fails because their alleged registrations for accounts on MLB.com do not qualify as subscriptions for ***audiovisual*** goods or services that the VPPA requires. (*See* Mem. at 18–20.)

Even if this Court were to follow the Second Circuit's reasoning in *Salazar*, however, Plaintiffs' VPPA claim would still fail. The *Salazar* court explained that to be a "subscriber" for VPPA purposes, plaintiffs must allege a qualifying "exchange[]." 2024 WL 4487971, at *15. That is, plaintiffs must allege that they provided certain kinds of "personal information" "[i]n return for" a "good or service." *Id.* at *14–15. In *Salazar*, for example, the plaintiff allegedly provided "(1) his email address, (2) his IP address, and (3) cookies associated with his device" in exchange for "receiving periodic NBA-related updates" through an NBA newsletter. *Id.* at *15.

Plaintiffs do not allege a qualifying exchange under *Salazar* for two reasons. ***First***, they do not allege that they ***received*** a qualifying "good or service" from MLBAM. As explained in a decision on which Plaintiffs themselves rely, (Opp'n at 17–19), to qualify as a "subscriber" for VPPA purposes, a plaintiff must have received "a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015); *see also Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023) (similar); *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal. 2023) (dismissing VPPA claim where plaintiff did not allege that she "receives any kind of publication, let alone any good or service, in exchange for signing up"). Simply "viewing . . . public content on [a] provider's

website," for example, "is not enough to qualify as a consumer" because the plaintiff could "'decide to never visit the . . . website ever again—and that decision will have zero consequences.'" *Alex*, 2023 WL 6294260, at *3 (quoting *Austin-Spearman*, 98 F. Supp. 3d at 669).

Here, Plaintiffs do not plead any "future and recurrent benefit" they received from MLBAM. *See Austin-Spearman*, 98 F. Supp. 3d at 669. Instead, they allege only that they registered for digital accounts on MLB.com. (Compl. ¶¶ 41, 51, 61, 71, 81, 91, 101, 111, 121.) But MLB.com is a free website accessible to the public with or without registration.[1] And Plaintiffs do not allege that their registrations conferred any benefit to them at all. This lack of benefit makes their alleged website registrations different from the newsletter subscription in *Salazar*, which offered the plaintiff "emails and other communications" about the NBA. 2024 WL 4487971, at *3 (quotation marks and citations omitted). Similarly, although Plaintiffs point to their vague allegation about "paid . . . subscription fees," (Opp'n at 18–19 (citing Compl. ¶ 185)), their complaint lacks supporting factual allegations about these subscriptions, including no allegation that they gave Plaintiffs a particular benefit.

***Second***, Plaintiffs do not allege facts supporting that they ***provided*** the kinds of personal information in exchange for their MLB.com registrations that could make them "subscriber[s]" under *Salazar*. Each Plaintiff identically alleges that they provided their "name and email address" when registering on MLB.com. (Compl. ¶¶ 41, 51, 61, 71, 81, 91, 101, 111, 121.) But unlike in *Salazar*, they fail to allege that they exchanged either an "IP address" or "cookies associated with [their] devices." *See* 2024 WL 4487971, at *15. Their complaint is thus missing two of the three types of user-provided information that made the *Salazar* plaintiff a "subscriber."

Plaintiffs' opposition does not claim they provided the information to MLBAM required by *Salazar* to qualify as "subscriber[s]." Instead, Plaintiffs say they need not pay for accounts to be subscribers under the VPPA. (*See* Opp'n at 18 (citing cases including *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016)).) But MLBAM's argument is not based merely on Plaintiffs' failure to allege

---

[1] https://www.mlb.com/ (last visited Oct. 26, 2024). The Court may consider the MLB.com website as a whole both because it is publicly available and because it is incorporated by reference in Plaintiffs' complaint. (*See* Mem. at 7 n.1.)

that they had to pay for MLB.com accounts. Rather, regardless of payment, MLBAM maintains that Plaintiffs have not alleged that they provided the kinds of personal information courts have required. Indeed, courts in this District have required plaintiffs to plead "more than" that they simply provided a defendant with their "name and email address" to be subscribers, which is precisely what Plaintiffs allege here. *See Jefferson*, 674 F. Supp. 3d at 764; (*compare* Compl. ¶¶ 41, 51, 61, 71, 81, 91, 101, 111, 121 ("to become a subscriber to the Website, Plaintiff [] provided Defendant with [his/her] name and email address")). Their VPPA claim fails for this reason as well.

**3. Plaintiffs' California claims should be dismissed because they are not plausibly pleaded and New York law applies.**

Plaintiffs do not even address MLBAM's argument that if the Court reaches choice of law, it should dismiss all Plaintiffs' California claims because MLBAM's TOU selects New York law. (*See* Mem. 22–23; Opp'n at 4–6 (addressing choice of law only as a reason to deny transfer).) By "fail[ing] to respond," Plaintiffs have "waived any opposition to th[is] argument." *See United States ex rel. Fallon v. Bell Transit Corp.*, No. 16-CV-06994-PJH, 2021 WL 3665898, at *3 (N.D. Cal. Aug. 18, 2021) (quotation marks and citations omitted); *see also Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (explaining that the failure to respond waives an argument).

In any event, each of Plaintiffs' California claims fails as a matter of law under Rule 12(b)(6).

**CLRA.** Plaintiffs' CLRA claim fails for four reasons: (1) their threadbare pleading parrots the statute's language without supporting facts; (2) they are not "consumers" because they do not allege "purchase or lease" of "any goods or services," *see* Cal. Civ. Code § 1761(d); (3) they allege no recoverable damages; and (4) they allege no actionable misrepresentation. (Mem. at 27–28.) Plaintiffs' opposition does not address these arguments in any detail. Plaintiffs do not deny that their CLRA claim mimics the statutory language. (*See* Opp'n at 23.) Nor do they refute that the disclosures of online-viewing information they challenge in no way fit the elements of the CLRA, like the element of "passing off goods or services as those of another," which none of their factual allegations supports that MLBAM did. (*See* Compl. ¶ 195 (quoting Cal. Civ. Code § 1770(a)(1)).)

Instead, to try to defend their CLRA claim, Plaintiffs focus on their vague allegation that they "paid more in" unidentified "subscription fees than they would have had they previously been aware

of Defendant's unfair and unlawful business practice." (Opp'n at 23 (emphasis omitted) (quoting Compl. ¶ 185).) But this allegation lacks the factual support required to plausibly plead that Plaintiffs made a "purchase or lease" from MLBAM or incurred economic damages, let alone that an actionable misrepresentation impacted Plaintiffs' decision to enter a sale. (*See* Mem. at 27–28.) Plaintiffs never even identify what paid subscription they allegedly made, let alone any facts about those purported payments that would make this allegation plausible. By contrast, in the cases on which Plaintiffs rely, the plaintiffs pleaded specific facts supporting the payments allegedly made and the resulting economic damages. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327–28 (2011) (plaintiffs alleged purchasing specific mislabeled products from a lockset manufacturer); *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1101 (9th Cir. 2013) (plaintiff alleged that purchased "merchandise" was "marked down" from a "fictitious 'original' price"); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1348 (2012) (plaintiffs alleged paying a premium for a lower quality motor fuel). Unlike in these cases, Plaintiffs' CLRA claim wholly lacks supporting detail and must be dismissed.

**§ 1799.3 and UCL.** Plaintiffs similarly rely on their single, unsupported allegation about "subscription fees" to support their § 1799.3 and UCL claims. (Opp'n at 20, 22–23.) For the reasons just explained, this bare allegation unsupported by factual content does not suffice to plausibly plead the purchase or rental of videos required by § 1799.3 or the economic loss required to state a UCL claim. (*See* Mem. at 25–27.) Nor do Plaintiffs address, and so have forfeited, any objection to MLBAM's argument that Plaintiffs cannot state a § 1799.3 claim and lack standing because they plead no facts supporting alleged disclosures related to them personally. (*See id.* at 25); *see also Fallon*, 2021 WL 3665898, at *3 (failing to respond waives any opposition).

**CIPA.** Plaintiffs' CIPA claim fails as a matter of law for two reasons: (1) the browsing-related data Plaintiffs say MLBAM disclosed to Meta are not the protected "contents" of a "communication" under CIPA; and (2) Plaintiffs therefore cannot show that Meta received any "contents" of a "communication" under CIPA. (*See* Mem. at 25–26.) Plaintiffs acknowledge that "record information" generally does not qualify as "contents" of a "communication" for CIPA purposes. (Opp'n at 21 (quotation marks and citation omitted).) Plaintiffs nevertheless try to distinguish the URL and other data they say MLBAM disclosed. Although some courts have found that browsing-

history data alone can sometimes constitute protected "communications" under CIPA, (*see* Opp'n at 21), better reasoned authority—including binding Ninth Circuit authority in a case addressing the federal Wiretap Act—instead supports that these data do not qualify as "communications." (Mem. at 25–26 & n.8 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107–09 (9th Cir. 2014)).) And for good reason: browsing-history data are not "message content" like "the words or a text message." (*Id.* (quoting *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021)).) This Court should likewise find that Plaintiffs cannot state a CIPA claim based on the alleged disclosure of browsing-history data. Their CIPA claim should be dismissed.

**C. Plaintiffs' class allegations should be stricken.**

The class-action waiver in MLBAM's TOU, which is enforceable under both New York and California law, bars Plaintiffs from maintaining their class claim. (*See* Mem. at 28–32.) Plaintiffs do not dispute that they agreed to the class-action waiver or that it is enforceable under New York law. (*See* Opp'n at 23–25.) Instead, they recycle the argument that the class-action waiver is unenforceable under California law (*id.* at 24), which fails (*see* Mem. at 31–32; *supra* at 9–10).

Plaintiffs also contend that MLBAM's motion to strike class allegations is premature and that the waiver is contradictory and therefore ambiguous. (Opp'n at 24–25.) Both arguments are incorrect.

**1. Striking class allegations is not premature.**

As previously explained, (*see* Mem. at 30), the Court should "strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). If it is "'plain enough' based on the pleadings" that an enforceable class-action waiver bars a class claim, then class allegations should be stricken. *See Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2023 WL 2717255, at *3 (N.D. Cal. Mar. 29, 2023) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

Plaintiffs do not dispute this Court's "authority to strike class allegations." *Tietsworth*, 720 F. Supp. 2d at 1146; (*see* Opp'n at 24). Instead, they suggest that, "[g]enerally, courts review class allegations through a motion for class certification," *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007), so MLBAM's motion is premature. (Opp'n at 24.) But *Wal-Mart* is inapt because the motion to strike there was based on defects in the class definitions.

*See* 505 F. Supp. 2d at 614. The court noted its authority to strike class allegations, but it held that the right time for a "fact-intensive inquiry" necessary "to determine the scope of each putative subclass" was on a motion for class certification. *See id.* at 614–15. Here, by contrast, MLBAM does not challenge the class definition—it argues that Plaintiffs waived their right to bring this class action at all. Because MLBAM's motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," it is not premature. *See Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511–12 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Indeed, courts in the Ninth Circuit routinely grant motions to strike class allegations where, as here, an enforceable class-action waiver applies. In *Jeong*, the court granted a motion to strike class allegations because it was "'plain enough' based on the pleadings" that the parties had agreed to an enforceable class-action waiver. 2023 WL 2717255, at *3 (quoting *Gen. Tel. Co.*, 457 U.S. at 160). And *Holman v. Bath & Body Works, LLC* similarly recommended striking class allegations under a contract with a class-action waiver. No. 1:20-CV0-1603-NONE-SAB, 2021 WL 5826468, at *26 (E.D. Cal. Dec. 8, 2021), *R&R adopted*, No. 1:20-CV-1603 JLT SAB, 2022 WL 463298 (E.D. Cal. Feb. 15, 2022). Each court held that the class-action waiver was not unconscionable under California law, enforced the waiver, and struck the class allegations at the pleading stage. *See Jeong*, 2023 WL 2717255, at *3–6; *Holman*, 2021 WL 5826468, at *14–26 (analyzing class-action waiver within arbitration agreement). Likewise, here, it is plain from the pleadings that the waiver is enforceable. (*Compare* Mem. at 29–32 (showing that the waiver is enforceable under New York and California law), *with* Opp'n at 14–15, 24 (not disputing enforceability under New York law and not applying the California-law enforceability standard to the waiver).) Thus, the Court should hold that MLBAM's motion to strike class allegations is not premature. *See Jeong*, 2023 WL 2717255, at *3.

**2. The class-action waiver is neither contradictory nor ambiguous.**

The class-action waiver in MLBAM's TOU is clear: It waives the parties' right to engage in class-action proceedings except for settlement purposes. (*See* MLBAM TOU § 11.) Indeed, Plaintiffs agree that by its terms, the waiver provision "waive[s] the parties' rights to bring their claims as a class action" and "retains the parties' rights to participate in a class-wide settlement." (Opp'n at 25 (emphases omitted).) Because they cannot attack the plain meaning of the contractual text, Plaintiffs

argue that the waiver's class-wide settlement exception makes it "inherently contradictory, creating ambiguity." (*Id.*) They suggest that the supposed contradiction makes the waiver "capable of two different reasonable interpretations," so the Court should construe it against the drafter, MLBAM. (*Id.* (quoting *Richeson v. Helal*, 158 Cal. App. 4th 268, 276–77 (2007)).) But seemingly opposing contract terms do not necessarily create ambiguity where the contract language makes their relationship clear. Relevant here, "clauses similar to the phrase 'notwithstanding any other provision' trump conflicting contract terms" without creating ambiguity. *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015) (cleaned up) (New York law); *accord Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 501 (2005) (similar under California law).

The class-action waiver here is unambiguous because it is susceptible to only one reasonable interpretation. MLBAM's TOU sets the class-wide settlement exception apart in a "notwithstanding" clause: "Notwithstanding the foregoing, the parties retain the right to participate in a class-wide settlement." (MLBAM TOU § 11.) This "notwithstanding" clause "clearly indicates the parties intended" the class-wide settlement exception "to apply according to its terms," "even if other provisions, read in isolation, might seem to require a different result." *Boghos*, 36 Cal. 4th at 503. Thus, Plaintiffs are wrong to suggest that the waiver provision bars "ever pleading a case that would effectuate a settlement that MLBAM at the same time contemplates." (Opp'n at 25.) The class-wide settlement exception takes priority over the waiver, permitting the parties to engage in class procedures for settlement purposes. (*See* MLBAM TOU § 11.) *Richeson*, the case Plaintiffs cite, is not to the contrary because the contract there did not address the key issue: whether a city could extend a zoning permit. *See* 158 Cal. App. 4th at 277–79. Here, in contrast, because the "contractual language is clear and explicit, it governs." *Boghos*, 36 Cal. 4th at 501.

The plain meaning of the class-action waiver is also consistent with Rule 23 because parties may agree to a class-wide settlement despite a class-action waiver. Such waivers are common in TOUs in conjunction with arbitration agreements.[2] And courts approve—and affirm the approval

---

[2] *See, e.g.*, https://www.nba.com/termsofuse (Feb. 20, 2023) (National Basketball Association); https://www.nhl.com/info/terms-of-service (Mar. 8, 2023) (National Hockey League); https://www.nfl.com/legal/terms/ (May 16, 2024) (National Football League).

of—class-wide settlements where contracts contain class-action waivers, including when defendants actively try to enforce those waivers. *See, e.g.*, *Tennille v. W. Union Co.*, 785 F.3d 422, 431–32 (10th Cir. 2015) (affirming approval of class-wide settlement reached during the pendency of defendant's appeal from ruling that arbitration agreement including a class-action waiver was unenforceable); *Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846, at *3 (C.D. Cal. Oct. 6, 2014) (approving class-wide settlement reached while appeal from order compelling arbitration and enforcing class-action waiver was pending). Indeed, courts often explain that class-action waivers can "threaten, reduce, or even eliminate [p]laintiffs' recovery" in the absence of a class-wide settlement. *See, e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). These cases show that the supposed contradiction Plaintiffs identify is, in fact, routine in class-action practice. Parties can waive certain class procedures and preserve others, which is precisely what the class-action waiver here does.

Thus, the Court should hold that the class-action waiver is not ambiguous or contradictory.

* * *

Because the class-action waiver in MLBAM's TOU is enforceable and unambiguously bars Plaintiffs' class claim, the Court should strike Plaintiffs' class allegations under Rule 12(f).

## III. CONCLUSION

The Court should transfer this case to the Southern District of New York. Alternatively, the Court should dismiss Plaintiffs' individual claims and strike Plaintiffs' class allegations.

Dated: October 29, 2024

Respectfully submitted,

By: */s/ Alan E. Littmann*

Alan E. Littmann (appearance *pro hac vice*)
alittmann@goldmanismail.com
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 South Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191

Kenneth F. Baum (SBN 250719)

kbaum@goldmanismail.com
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
100 Wilshire Boulevard, Suite 1760
Santa Monica, CA 90401
Telephone: (310) 576-6900
Facsimile: (312) 881-5191

*Counsel for Defendant MLB Advanced Media, L.P.*