**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC WONG, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MLB ADVANCED MEDIA, L.P.,<br><br>Defendant. | Case No. 1:25-cv-00777-GHW-GWG<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S SUPERSEDING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................ iv

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 4

I. MLBAM's motion to strike Plaintiffs' putative class allegations and motion to dismiss remain pending following transfer to this District. ........................................ 4

II. Plaintiffs' allegations confirm they agreed to MLBAM's TOU, which includes a class-action waiver and a New York choice-of-law clause. ........................................ 5

III. Plaintiffs make limited allegations regarding the key elements of their VPPA and California-law claims. ........................................ 8

ARGUMENT ........................................ 10

I. The Court should strike Plaintiffs' class allegations based on the binding class-action waiver in MLBAM's TOU. ........................................ 11

a. Based on their own allegations, Plaintiffs agreed to the choice-of-law clause and class-action waiver in MLBAM's TOU. ........................................ 11

b. The Court should enforce the class-action waiver in MLBAM's TOU. ........................................ 14

1. The class-action waiver is enforceable under New York law........ 14

2. The class-action waiver is enforceable under California law. ....... 15

c. Because Plaintiffs waived their right to bring these class actions, the Court should strike their class allegations........................................ 17

II. The Court should dismiss Plaintiffs' VPPA claims for failure to state a claim and lack of standing. ........................................ 20

a. Plaintiffs fail to plausibly allege any disclosures related to them............. 21

b. Plaintiffs fail to plausibly allege disclosures of their "personally identifiable information" based on MLBAM's alleged use of the Meta Pixel. ........................................ 24

c. Plaintiffs do not adequately allege that they are "consumers" under the VPPA. ........................................ 27

III. Plaintiffs' California claims should be dismissed because New York law applies and because Plaintiffs do not plausibly plead these claims. ...................... 29

a. Plaintiffs' California claims fail because they bring them under California law despite agreeing that New York law applies......................29

b. Plaintiffs' California claims fail because they do not plead key elements of these claims. ..............................................................31

CONCLUSION..............................................................................................................35

## TABLE OF AUTHORITIES

**Cases**

*Alex v. NFL Enters. LLC*,
2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) ..... 28

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ..... 20

*Arcell v. Google LLC*,
744 F. Supp. 3d 924 (N.D. Cal. 2024) ..... 34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 21, 22, 26

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
708 F. Supp. 3d 385 (S.D.N.Y. 2023) ..... 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..... 20

*Aubrey v. New Sch.*,
624 F. Supp. 3d 403 (S.D.N.Y. 2022) ..... 5

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ..... 28

*Beagle v. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ..... 22

*Beardslee v. Inflection Energy, LLC*,
25 N.Y.3d 150 (2015) ..... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 20, 26

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) ..... 13, 14, 15

*Boghos v. Certain Underwriters at Lloyd's of London*,
36 Cal. 4th 495 (2005) ..... 19

*Brack v. Omni Loan Co.*,
164 Cal. App. 4th 1312 (2008) ..... 31

*Camilo v. Uber Techs., Inc.*,
2018 WL 2464507 (S.D.N.Y. May 31, 2018) ..... 14, 18

*Castellanos v. Raymours Furniture Co., Inc.*,
291 F. Supp. 3d 294 (E.D.N.Y. 2018) .................... 14, 18

*Chen-Oster v. Goldman, Sachs & Co.*,
877 F. Supp. 2d 113 (S.D.N.Y. 2012).................... 17

*Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*,
205 F.R.D. 148 (S.D.N.Y. 2002) .................... 5

*Conn. Parents Union v. Russell-Tucker*,
8 F.4th 167 (2d Cir. 2021) .................... 23

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
412 F. Supp. 2d 1059 (E.D. Cal. 2006).................... 30

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
790 F.3d 411 (2d Cir. 2015).................... 20

*Czarnionka v. Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) .................... 26

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................... 35

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .................... 24, 27

*Emilio v. Sprint Spectrum L.P.*,
68 F. Supp. 3d 509 (S.D.N.Y. 2014).................... 17

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012).................... 13

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714, (N.D. Cal. 2023) .................... 25, 26

*Gomez v. Great-W. Life & Annuity Ins. Co.*,
638 F. Supp. 3d 1156 (S.D. Cal. 2022).................... 30

*Hahn v. JetBlue Airways Corp.*,
2022 WL 22908406 (E.D.N.Y. Aug. 25, 2022).................... 14

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
635 F. Supp. 3d 238 (S.D.N.Y. 2022).................... 17, 20

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .................... 25

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 33

*In re Google, Inc. Priv. Pol'y Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ........ 35

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........ 24

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 34

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 1

*Int'l Multifoods Corp. v. Com. Union Ins. Co.*,
309 F.3d 76 (2d Cir. 2002) ........ 19

*Jeong v. Nexo Cap. Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) ........ 15, 16

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) ........ 35

*Lee v. Springer Nature Am., Inc.*,
2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) ........ 29

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 23, 24

*Maldonado v. Nat'l Football League*,
2023 WL 4580417 (S.D.N.Y. July 18, 2023) ........ 13

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020) ........ 21, 22

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023),
*appeal withdrawn*, 2023 WL 4013900 (2d Cir. May 24, 2023) ........ 31, 33

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 32

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 12, 13, 14

*Mills v. Cap. One, N.A.*,
2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ........ 19, 20

*Ministers & Missionaries Ben. Bd. v. Snow*,
26 N.Y.3d 466 (2015) ........................................ 30

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009)........................................ 14

*Nedlloyd Lines B.V. v. Superior Ct.*,
3 Cal. 4th 459 (1992) ........................................ 30

*Nguyen v. FXCM Inc.*,
364 F. Supp. 3d 227 (S.D.N.Y. 2019)........................................ 33

*Omstead v. Dell, Inc.*,
533 F. Supp. 2d 1012 (N.D. Cal. 2008) ........................................ 16

*Preiser v. Newkirk*,
422 U.S. 395 (1975)........................................ 23

*Ranieri v. Bell Atl. Mobile*,
759 N.Y.S.2d 448 (App. Div. 2003) ........................................ 14

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015)........................................ 17

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)........................................ 24, 25

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........................................ 35

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) ........................................ 3, 27, 28

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) ........................................ 16

*Smith v. Trinity Broad. of Tex., Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) ........................................ 25

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................ 23, 24

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008)........................................ 5

*Suski v. Marden-Kane., Inc.*,
2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ........................................ 16

*T.K. ex rel. Leshore v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ........ 20

*Tennille v. W. Union Co.*,
785 F.3d 422 (10th Cir. 2015) ........ 19

*Terwilliger v. Terwilliger*,
206 F.3d 240 (2d Cir. 2000) ........ 30

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
88 F. Supp. 3d 1156 (S.D. Cal. 2015) ........ 31

*United States v. Aquart*,
92 F.4th 77 (2d Cir. 2024) ........ 11

*Wainwright v. Melaleuca, Inc.*,
844 F. App’x 958 (9th Cir. 2021) ........ 31

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
187 Cal. App. 4th 634 (2010) ........ 16

*Walsh v. Cal. Cinema Invs. LLC*,
2024 WL 3593569 (C.D. Cal. July 29, 2024) ........ 32

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015) ........ 5

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ........ 17, 34

*Willis Re Inc. v. Herriott*,
550 F. Supp. 3d 68 (S.D.N.Y. 2021) ........ 30

*Wilson v. Gateway, Inc.*,
2014 WL 12704846 (C.D. Cal. Oct. 6, 2014) ........ 19

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) ........ 26, 27

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 32, 33

*Zheng v. Live Auctioneers LLC*,
2021 WL 2043562 (S.D.N.Y. May 21, 2021) ........ 14, 15

**Statutes and Codes**

18 U.S.C. § 2710 ........ passim

Cal. Bus. & Prof. Code § 17200 .................... 9, 33

Cal. Civ. Code § 1761(d) .................... 34

Cal. Civ. Code § 1770 .................... 9, 10, 34, 35

Cal. Civ. Code § 1799.3 .................... 9, 31, 32

Cal. Penal Code § 630 et seq. .................... 9, 32, 33

**Rules**

Fed. R. Civ. P. 12(b)(1) .................... passim

Fed. R. Civ. P. 12(b)(6) .................... passim

Fed. R. Civ. P. 12(f) .................... passim

Fed. R. Civ. P. 23 .................... 17

Fed. R. Evid. 201 .................... 5

## INTRODUCTION

A binding agreement between the parties, and several independent pleading deficiencies, foreclose Plaintiffs' putative class action under the federal Video Privacy Protection Act ("VPPA") and California state law against Defendant MLB Advanced Media, L.P. ("MLBAM"). The VPPA is a 1988 statute addressing intentional leaks of videotape-viewing information. It prohibits "video tape service provider[s]" who deliver "prerecorded video cassette tapes or similar audio visual materials" from "knowingly" disclosing "personally identifiable information" that "identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a), (b)(1). The VPPA is a "quite narrow" statute passed before the age of the internet in response to a prominent news story: an exposé published by the *Washington City Paper* after a store clerk leaked a list of 146 films rented by Supreme Court nominee Robert Bork. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278–79, 284 (3d Cir. 2016). Here, in one of three related cases before this Court,[1] Plaintiffs try to stretch the VPPA and California law to implicate MLBAM's alleged use of common website software code. Courts in the Second Circuit and across the country have dismissed cases like this one for failing to plead key elements and based on binding clauses in contracts between the parties. The result here should be no different.

Plaintiffs' claims cannot proceed as a class action because, based on their own allegations, they agreed to a contract that bars class claims. Plaintiffs admittedly base all their claims on their use of MLB.com, which is governed by a Terms of Use Agreement ("TOU") containing a class-action waiver that prohibits bringing class claims except for purposes of class-wide settlement.

[1] *See* 2/28/25 MLBAM Related Case Statement, ECF No. 45 (designating this case as related to *Henry v. Major League Baseball Advanced Media, L.P.*, No. 1:24-CV-01446-GHW-GWG); 9/23/24 Docket Entry, *Golland v. Major League Baseball Advanced Media, L.P.*, No. 24-CIV-6270 (designating *Henry* as related to *Golland*).

The operative TOU here went into effect on February 6, 2024. New York law, which applies under the TOU's choice-of-law clause, uniformly holds that class-action waivers like this one are lawful. New York district courts thus routinely enforce such waivers on motions to strike under Federal Rule of Civil Procedure 12(f) where the waiver is clear and conspicuous, and where its scope and effect are transparent. The waiver here is clear and conspicuous: It is a standalone clause announced repeatedly in the TOU and emphasized with capital letters and bold typeface. The scope and effect of the waiver are equally clear: It covers Plaintiffs' claims because it applies to all claims based on the use of MLB.com, as Plaintiffs' claims are; its plain meaning is unambiguous; and its substance is consistent with class-action practice. But even if California law applied, the result would be the same because California courts enforce class-action waivers in circumstances like these. The Court should therefore enforce the waiver and strike Plaintiffs' class allegations under Rule 12(f).

Plaintiffs' VPPA claims also fail as a matter of law under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for three reasons. ***First***, Plaintiffs do not plausibly allege that MLBAM disclosed their data. Although they allege a broad theory of how MLBAM might violate the VPPA based on its use of a routine software tool known as the Meta Pixel, Plaintiffs assert no factual allegations to show that MLBAM ever disclosed their data to anyone. Plaintiffs thus fail to state a VPPA claim under Rule 12(b)(6). Their complaint instead amounts to a request for an advisory opinion on MLBAM's use of a routine software tool on its website. And because Plaintiffs fail to include any facts showing an actionable disclosure, they lack standing to bring their VPPA claim, meriting dismissal under Rule 12(b)(1).

***Second***, Plaintiffs fail to plausibly allege that MLBAM disclosed their "personally identifiable information" under the VPPA. 18 U.S.C. § 2710(a)(3). Plaintiffs assert that MLBAM's

use of the Meta Pixel resulted in the sharing of their Facebook IDs—unique numeric identifiers tied to Facebook profiles. But Plaintiffs fail to allege that the Facebook profiles associated with those Facebook IDs are public. Courts have found allegations about the public nature of a plaintiff's Facebook profile necessary to state a VPPA claim, and for good reason. To qualify as "personally identifiable information," the VPPA requires that information be of the sort that an ordinary person could use to identify someone. Without allegations that Plaintiffs' Facebook profiles are publicly visible, meaning that the profiles and their contents can be accessed by an ordinary person using their Facebook IDs, Plaintiffs do not plausibly claim that MLBAM disclosed information identifying them as the statute requires.

***Third***, because Plaintiffs focus their individual VPPA claims on their alleged registration on MLB.com, they fail to plausibly allege that they are "consumers" under the VPPA. The VPPA defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). As the Second Circuit recently made clear, to be "subscriber[s]" under this definition, plaintiffs must allege that they provided certain kinds of personal information "in exchange for" a "good[] or service[]" offered by the video tape service provider. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 552–53 (2d Cir. 2024). Plaintiffs fail to satisfy this standard because they do not allege that they received from MLBAM any qualifying "good or service," which courts have defined as a future and recurrent benefit like a magazine or club membership. Unlike the plaintiff in *Salazar* who allegedly received a benefit unavailable to non-subscribers—an NBA newsletter—Plaintiffs here merely allege that they registered for accounts on MLBAM's website MLB.com. But MLB.com is a free website, available to the public without a "subscription," and Plaintiffs nowhere allege that their purported account registration gave them any benefit unavailable to non-registrants. Plaintiffs thus have not

pleaded a "consumer" relationship with MLBAM, and their VPPA claims should be dismissed under Rule 12(b)(6) for this reason as well.

Plaintiffs' California-law claims fare no better. Plaintiffs cannot maintain California claims at all because they agreed in the TOU that New York law would govern disputes between the parties. But even if Plaintiffs could bring their claims under California law, those claims would still fail because Plaintiffs do not plead their threshold elements.

In short, the Court should strike Plaintiffs' class allegations because they agreed to a binding class-action waiver; dismiss their individual VPPA claims for failure to state a claim and lack of standing; and dismiss their California-law claims because New York law governs or for failure to state a claim.

## BACKGROUND

### I. MLBAM's motion to strike Plaintiffs' putative class allegations and motion to dismiss remain pending following transfer to this District.

This memorandum addresses two requests for relief that remain pending after this case's recent transfer to this District. Plaintiffs filed this putative class action in the Northern District of California, alleging that MLBAM violated the VPPA and California law by using software code on MLB.com to disclose certain data to Meta without permission. (*See* 4/18/24 Am. Class Action Compl. ("Compl.") ¶¶ 1–3, ECF No. 12.) Plaintiffs purport to bring their VPPA claims on behalf of a nationwide putative class, (*id.* ¶ 130), and they also "seek to represent a subclass consisting of Class members who reside in the State of California," (*id.* ¶ 131). In August 2024, MLBAM moved to transfer this case to this District, to dismiss Plaintiffs' complaint under Rules 12(b)(6) and 12(b)(1), and to strike their class allegations under Rule 12(f). (*See* 8/28/24 Mot. to Transfer, ECF No. 29.) Following oral argument, (*see* 12/19/24 Minute Entry, ECF No. 36), the court granted MLBAM's motion to transfer and declined to decide MLBAM's motions to dismiss and

to strike class allegations, (*see generally* 1/22/25 Order, ECF No. 41). The case was transferred to this District, (*see* 1/27/25 Transfer Order, ECF No. 42), where it has been designated as one of three related putative class actions. (*See supra* at 1 & note 1.) This Court then directed MLBAM to file an updated brief supporting its motions to strike Plaintiffs' class allegations and to dismiss their complaint. (*See* 3/6/25 Order, ECF No. 59.)

## II. Plaintiffs' allegations confirm they agreed to MLBAM's TOU, which includes a class-action waiver and a New York choice-of-law clause.

Plaintiffs agreed to MLBAM's TOU when they registered for accounts on MLB.com. The TOU governs the use of MLBAM's Digital Properties, including MLB.com. (TOU § 1.)[2] Plaintiffs acknowledge that this TOU is "applicable" here. (Compl. ¶¶ 17 n.1, 20 n.2, n.8.) Indeed, Plaintiffs claim they each registered for accounts on MLB.com. (*Id.* ¶¶ 1, 5–13, 40, 50, 60, 70, 80, 90, 100, 110, 120.) To register for accounts, new users are taken to a "Log In" page on MLB.com,

[2] MLBAM's February 6, 2024 TOU is attached hereto as Exhibit A. The Court may properly consider information on MLBAM's website, MLB.com, and the TOU and its provisions, when deciding this motion because MLB.com and the TOU are "integral to the complaint." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 708 F. Supp. 3d 385, 397–98 (S.D.N.Y. 2023) (cleaned up); (*see* Compl. ¶ 1 (defining MLB.com as "the 'Website'" or "Defendant's Website"); *id.* ¶¶ 2, 5–14, 21–24, 30, 33, 35, 36, 40–43, 46, 47, 50–53, 56, 57, 60–63, 66, 67, 70–73, 76, 77, 80–83, 86, 87, 90–93, 96, 97, 100–103, 106, 107, 110–113, 116, 117, 120–123, 126, 127, 135, 136, 150, 154, 161, 170, 171, 173, 187, 188 (referring to "the Website"); *id.* ¶¶ 17 n.1, 20 n.2, n.8 (referring to TOU)). The Court also may properly take judicial notice of information on a public website like MLB.com under Federal Rule of Evidence 201. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quotation marks and citation omitted); *see also, e.g.*, *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002) (taking judicial notice in motion to strike); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008) (same for motion to dismiss). MLBAM made minor updates to the Terms of Use Agreement on its website on March 11, 2025 ("2025 TOU"), available at https://www.mlb.com/official-information/terms-of-use (last visited March 13, 2025), which apply only to users based in Japan. (*See* 2025 TOU, § 12 (designating Tokyo District Court as proper venue for claims in Japan).) The Court may take judicial notice of archived webpages, including the operative TOU here, which is available at https://web.archive.org/web/20250301013536/mlb.com/official-information/terms-of-use (retrieved March 13, 2025). *See, e.g.*, *Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022).

where they can "Sign up." (MLB Account Login Page.)[3] After clicking "Sign up," users are taken to a registration page. (MLB Account Registration Page.)[4] To create an MLB account, the user must click the button labeled "Register," above which the following text appears: "I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy." (*See id.*) Both the TOU and the Privacy Policy appear as clickable hyperlinks—offset by blue, bolded font—on the registration page:







---

3 https://www.mlb.com/login?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D100107599999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&campaignCode= (last visited Mar. 12, 2025).

4 https://www.mlb.com/registration?redirectUri=https://commerce.mlb.com/purchase?mlbSku%3D1001107599999910222401000%26campaign%3D%26flow%3DPURCHASE%26_gl%3D1*yspmro*_gcl_au*MTg2NjQ0MTY1MC4xNzA2NjMyODQy&campaignCode= (last visited Mar. 12, 2025).

(MLB Account Login Page; MLB Account Registration Page.)

Plaintiffs purport to sue under this TOU precisely because the operative version contains an exception to its arbitration agreement allowing VPPA and related claims like Plaintiffs' to be brought in court. (*See* Compl. ¶ 20 n.2 (discussing operative TOU); TOU § 11(1) (defining "Non-Arbitrable Claims" to include "claims under the Video Privacy Protection Act" and other claims related to "privacy rights").)

As Plaintiffs acknowledge, this operative and "applicable" TOU contains a choice-of-law clause providing that New York law governs this dispute. (TOU § 12; *see* Compl. ¶ 20 n.2 (calling this provision a "forum selection clause").) The TOU's Table of Contents lists a "**CHOICE OF LAW AND VENUE**" provision in a bolded, all-capital, and numbered heading. (TOU, Table of Contents.) Section 12 then announces this provision in bold font and all-capital letters: "**12. CHOICE OF LAW AND VENUE**." (*Id.* § 12.) This provision applies to "Non-Arbitrable Claims," which include "any dispute or claim related to the alleged violation of your privacy rights" as well as "claims under the Video Privacy Protection Act and corresponding state video privacy laws." (*Id.* §§ 11–12.) In relevant part, this provision reads:

> Any and all Disputes and Non-Arbitrable Claims arising out of or related to this Agreement or to your use of any MLB Digital Property, or any product or service distributed by MLB shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, without regard to conflict of laws principles.

(*Id.* § 12.)

As Plaintiffs also acknowledge, MLBAM's operative TOU contains a standalone "Class Action Waiver." (Compl. ¶ 17 n.1.) The TOU's Table of Contents notes the "**CLASS ACTION WAIVER**" in a bolded, all-capital heading. (TOU, Table of Contents.) The Introduction to the TOU also discloses the class-action waiver, explaining that "[t]his Agreement contains a . . . class action waiver" that "affect[s] your legal rights." (*Id.*, Introduction.) Section 11 of the TOU declares

the class-action waiver in bold font and all-capital letters: "**11. DISPUTE RESOLUTION (INCLUDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER; JURY TRIAL WAIVER)**." (*Id.* § 11.) Yet another bolded, standalone heading announces a "**Class Action Waiver**," and the provision itself is written in all capital letters. (*Id.* § 11.) The provision reads in full:

> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. YOU AND MLB AGREE TO WAIVE ANY RIGHT TO BRING OR TO PARTICIPATE IN SUCH AN ACTION IN ARBITRATION OR IN COURT TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.

(*Id.*)

### III. Plaintiffs make limited allegations regarding the key elements of their VPPA and California-law claims.

Plaintiffs claim that MLBAM violated the VPPA and California state laws through its alleged use of a tool called the Meta Pixel on MLB.com. (Compl. ¶ 30.) Plaintiffs allege that when a user "request[s] or obtain[s] specific video materials or services" from MLB.com, two types of information are disclosed to Meta "via the Pixel": (1) information about the "specific video materials" the user viewed; and (2) the user's Facebook ID ("FID"), a unique numeric identifier associated with a particular Facebook account. (*See, e.g.*, *id.* ¶¶ 27, 46.)

But Plaintiffs omit key details. For example, they provide no facts to show that MLBAM made any disclosures about them in particular. Instead, they each make the identical allegation that at an unspecified time, MLBAM "simultaneously disclosed" their "FID" and unidentified "video materials or services" they "requested or obtained." (*Id.* ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126.)

Further, no Plaintiff alleges that their Facebook profile is publicly visible or explains how disclosing their FID could link to a public profile identifying them. (*See generally id.* ¶¶ 40–129.)

Plaintiffs also make limited allegations related to the VPPA's "consumer" element. As discussed below, the VPPA defines a "consumer" whose "personally identifiable information" ("PII") it protects as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1), (3). Plaintiffs do not allege that they are consumers of MLBAM's for purposes of this definition based on any rentals or purchases. (*See generally* Compl.) Instead, Plaintiffs allege that their registrations for accounts on "the Website [MLB.com]" make them "consumers" for purposes of the VPPA. (*Id.* ¶¶ 40–43, 50–53, 60–63, 70–73, 80–83, 90–93, 100–103, 110–113, 120–123.) As publicly available information shows, however, MLB.com is free. Its video and other content is available to the public without charge or registration. (*See* MLB.com Homepage.)[5] And Plaintiffs do not claim to receive any benefit or service in return for registering an account. (*See generally* Compl. ¶¶ 40–129.)

Plaintiffs also bring California-law claims on behalf of a California sub-class under Cal. Civ. Code § 1799.3 ("§ 1799.3"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630–638 ("CIPA"); California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770 ("CLRA"), based on the same theory of data transmission. (*See* Compl. ¶¶ 158–96.) Just as with their VPPA claim, Plaintiffs do not describe any information about the specific alleged transmissions of their own data that they challenge. (*See id.*) Instead, for their § 1799.3 and CIPA claims, Plaintiffs make

[5] MLB.com Homepage, https://web.archive.org/web/20240207235001/https://www.mlb.com/ (last visited Mar. 12, 2025). The Court may consider the MLB.com website as a whole because it is publicly available. (*See supra* note 2.)

only generalized allegations regarding the nature of the Meta Pixel. (*Id.* ¶¶ 161, 171.) For their UCL claim, Plaintiffs allege only that MLBAM "repeatedly shar[ed] its subscribers' personal information with Meta without consent" and that Plaintiffs were injured because they "paid more in subscription fees" than they would have had they known about the purported disclosures. (*Id.* ¶¶ 182, 185, 188.) Plaintiffs do not, however, allege that they paid anything for any particular MLBAM subscription or provide any other supporting facts about these supposed "subscription fees." (*See id.*)

Finally, Plaintiffs' CLRA claim does no more than parrot the statute. Plaintiffs allege that MLBAM "pass[ed] off goods or services as those of another"; "misrepresent[ed] the source, sponsorship, approval, or certification of MLB's goods or services"; "misrepresent[ed] the affiliation, connection, or association with, or certification by[] another"; "represent[ed] that its Website and Product have characteristics and benefits [they do] not have"; "advertis[ed] its Website and Product with the intent not to sell it as advertised"; "represent[ed] that a transaction confers or involved rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"; and "insert[ed] unconscionable terms into its contract." (*Id.* ¶ 195 (quoting Cal. Civ. Code § 1770(a)(1)–(3), (5), (9), (19) and quoting *id.* § 1770(a)(14)).) They provide no facts to support these statutory recitations. (*See* Compl. ¶ 195.)

## ARGUMENT

The Court should strike Plaintiffs' class allegations because they waived their right to bring them. Beyond their class allegations, the Court should dismiss Plaintiffs' VPPA claims because they have not sufficiently pleaded key elements and because they lack standing. And the Court should dismiss Plaintiffs' California-law claims either because the parties agreed that New York law would govern their disputes or because Plaintiffs fail to state a claim.

## I. The Court should strike Plaintiffs' class allegations based on the binding class-action waiver in MLBAM's TOU.

Plaintiffs cannot maintain their class claim against MLBAM because MLBAM's TOU prohibits it. Plaintiffs' own allegations show that they agreed to the TOU, which contains clear and conspicuous language barring them from bringing class-action lawsuits except for purposes of settlement. The TOU also contains a choice-of-law clause requiring the application of New York law. Under New York law, courts routinely enforce class-action waivers, finding that they are not unconscionable and do not violate public policy. But the result is the same if the Court applies California law. California courts apply the test from *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), to determine whether a class-action waiver is enforceable, and the TOU's class-action waiver is enforceable under that test. Because the parties' binding contract precludes Plaintiffs' class claims, the Court should strike those claims under Rule 12(f).

### a. Based on their own allegations, Plaintiffs agreed to the choice-of-law clause and class-action waiver in MLBAM's TOU.

According to the complaint, Plaintiffs agreed to MLBAM's TOU. They acknowledge that this TOU is "applicable" here. (*See supra* at 5; Compl. ¶¶ 17 n.1, 20 n.2, n.8.) Indeed, the California federal court that transferred this case to this District found both that "[P]laintiffs do not dispute that they agreed to the [TOU]" and that the TOU was enforceable. (*See* 1/22/25 Transfer Order at 5, 7, ECF No. 41 (granting transfer based on valid forum-selection clause).) This ruling was correct. *Cf. United States v. Aquart*, 92 F.4th 77, 93 (2d Cir. 2024) ("[T]he law of the case will be disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated." (cleaned up)). When users register for MLB.com accounts, as Plaintiffs say they did here, they agree electronically to—and become contractually bound by—the TOU. (*Supra* at 5–8.) And by allegedly maintaining these subscriptions, Plaintiffs

continue to be subject to the TOU, including its choice-of-law clause and class-action waiver. (*Id.*; TOU §§ 11–12.)

The electronic click Plaintiffs made when they allegedly registered for MLB.com accounts sufficed to agree to the TOU under both New York and California law. New York law applies here under the TOU, which states in a choice-of-law provision that "the laws of the State of New York" govern all claims "arising out of or related to" the "use of any MLB Digital Property." (TOU § 12; *see id.* § 1 (defining the "Official Website," including MLB.com, as an "MLB Digital Property").) But binding Second Circuit precedent makes clear that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up). Online TOUs have "not fundamentally changed the principles of contract." *Id.* at 75 (cleaned up). Thus, "[c]ourts around the country have recognized that an electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Id.* (cleaned up).

To determine whether a reasonable user has notice that their click would signify assent to the online agreement, courts look to the formatting of the webpage, including whether:

1. "the screen was ***uncluttered***;"
2. "the text alerting the user to the existence of other terms of use appeared ***directly below*** the registration button;"
3. "the hyperlink to the terms of use also was easily located under the registration button ***without scrolling***;"
4. "the text alerting the user to the other terms of use was ***clear and obvious by virtue of its font and color***;"
5. "the text itself was a 'clear prompt' or suggestion to read the terms insofar as it stated '***by creating an . . . account, you agree to the Terms of Service***'"; and

> 6. “the notice to the terms of use was ***temporally connected*** to an action by the user, meaning that the terms were provided simultaneous to the customer action.”

*Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017) (emphases added) (internal alteration omitted) (quoting *Meyer*, 868 F.3d at 78–79), *R. & R. adopted as modified*, No. 17-CV-04570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).

MLBAM’s signup process satisfies each of these six factors. When registering for their alleged MLB.com accounts, Plaintiffs were shown (1) a clear, ***uncluttered*** signup form. (*See* MLB Account Registration Page & *supra* note 4.) (2) ***Directly below*** the “Sign Up” button and (3) visible ***without scrolling***, (4) ***in blue font denoting hyperlinks***, the signup prompt stated, (5) “***I understand and agree to be bound by the MLB.com Terms of Use and Privacy Policy***.” (*Id.*) And notice of the TOU was (6) ***temporally connected*** to the signup by requiring the user to click to complete the signup process. Through this process, “a reasonably prudent smartphone [or computer] user would understand that the terms were connected to the creation of a user account.” *Meyer*, 868 F.3d at 78. Indeed, courts in this District have found that it “was enough” for contract formation for a plaintiff to be “informed of the consequences of his assenting click and . . . shown, immediately below, where to click to understand those consequences.” *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839–40 (S.D.N.Y. 2012); *see also Maldonado v. Nat’l Football League*, No. 1:22-CV-02289 (ALC), 2023 WL 4580417, at *3 (S.D.N.Y. July 18, 2023) (enforcing arbitration clause in TOU that plaintiffs clicked to confirm assent to when registering online accounts). That is precisely what MLBAM’s signup process did. MLBAM’s TOU, including its class-action waiver and choice-of-law clause, binds the parties here.

**b. The Court should enforce the class-action waiver in MLBAM's TOU.**

New York law—not California law—applies here based on the TOU's choice-of-law clause. (TOU § 12; *infra* at 29–31.) And New York courts routinely enforce class-action waivers. But even if California law applied here, the class-action waiver would be enforceable.

**1. The class-action waiver is enforceable under New York law.**

New York courts routinely uphold class-action waivers like the one in MLBAM's TOU. *See, e.g.*, *Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (finding class-action waiver "valid and enforceable" and granting motion to strike class allegations); *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (enforcing class-action waiver and striking class allegations). Indeed, "[c]ourts applying New York law . . . have ***uniformly held*** that class action waivers are not unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (emphasis added); *see also Hahn v. JetBlue Airways Corp.*, No. 21-CV-6867 (CBA) (LB), 2022 WL 22908406 (E.D.N.Y. Aug. 25, 2022) (enforcing class-action waiver). Nor is "a contractual proscription against class actions . . . violative of public policy" under New York law. *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003).

This means MLBAM's class-action waiver is valid and enforceable under New York law so long as the provision itself is formatted to be clear and conspicuous to a reasonable user. *Meyer*, 868 F.3d at 78–79. For example, in *Zheng v. Live Auctioneers LLC*, the court enforced an arbitration provision in an online agreement that "was given its own section with a bolded and numbered heading," with font that "was not smaller than any of the other text" of the relevant agreement. No. 20-CV-9744 (JGK), 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021). And in *Bernardino*, a bolded header for the "Dispute Resolution" section made it conspicuous enough even though a user had to scroll down the agreement webpage to read it. 2017 WL 7309893, at *10.

The class-action waiver provision here is clear and conspicuous. The phrase "class-action waiver" first appears in bolded text in the Table of Contents of MLBAM's TOU—the first thing a user sees after clicking into the TOU. The TOU's Introduction also discloses the class-action waiver upfront and explains that it may "affect your legal rights." (TOU, Introduction.) By clicking on the hyperlink in the Table of Contents or scrolling down the TOU webpage, a user then sees "**CLASS ACTION WAIVER**" in bold font and all capital letters in the Section 11 header in the Table of Contents. (*Id.*, Table of Contents.) Scrolling further down, "**Class Action Waiver**" appears in bold font again as the header for the waiver provision, which is written in all capital letters. (*Id.* § 11) The bolding, use of capital letters, and formatting here make the provision conspicuous under New York law. *See, e.g.*, *Zheng*, 2021 WL 2043562, at *5 (bolded and numbered heading sufficiently conspicuous); *Bernardino*, 2017 WL 7309893, at *10–11 (bolded heading sufficiently conspicuous).

**2. The class-action waiver is enforceable under California law.**

Even if the Court applies California law despite the choice-of-law provision in the TOU, it should still enforce the class-action waiver. When assessing a standalone class-action waiver like the one in MLBAM's TOU, California courts apply the three-part *Discover Bank* test to determine whether the waiver is unconscionable. *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2023 WL 2717255, at *4 (N.D. Cal. Mar. 29, 2023) (citing *Discover Bank*, 36 Cal. 4th at 162–63). This test examines: (1) whether the agreement is "a consumer contract of adhesion"; (2) whether the agreement occurs "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* (quoting *Discover Bank*, 36 Cal. 4th at 162–63).

Under the *Discover Bank* test, MLBAM's class-action waiver is enforceable. ***First***, whether the TOU qualifies as a "consumer contract of adhesion" is not outcome determinative because courts balance all three factors to determine whether to enforce a class-action waiver in a TOU. *See, e.g.*, *id.* at *4–6 (balancing all three factors); *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1038–41 (N.D. Cal. 2008) (examining all three factors when construing, and enforcing, class-action waiver).

***Second***, the class-action waiver here does not occur "in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *See Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 649 (2010). This was the situation in a case cited in the complaint declining to enforce a class-action waiver. *See Suski v. Marden-Kane., Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at *4–5 (N.D. Cal. Aug. 31, 2022). The plaintiffs' claims there involved "well under $1,000" each in damages, which was "small enough to satisfy the second element of the *Discover Bank* test." *Id.* By contrast, the *Omstead* court found that "sales of high-end electronics" worth around $4,000 each did not "arise 'in a setting in which disputes between the contracting parties predictably involve small amounts of damages.'" 533 F. Supp. 2d at 1040 (citation omitted).

Here, not accounting for restitution and other relief, each Plaintiff seeks at least $8,500. (Compl. at Prayer for Relief, ¶¶ 7, 8.) This amount more than doubles the $4,000 sought by each plaintiff in *Omstead*, which led that court to find the second factor of the *Discover Bank* test not satisfied. *See* 533 F. Supp. 2d at 1040. Thus, this factor supports enforcing the class-action waiver.

***Third***, Plaintiffs have not alleged any facts to suggest that MLBAM engaged in a "scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 984 (9th Cir. 2007) (cleaned up).

Indeed, Plaintiffs do not allege any facts supporting that they paid MLBAM for subscription services at all, let alone that such payments were part of an intentional scheme by MLBAM. (*See generally* Compl.) Their vague allegations about supposed "subscription fees" for unidentified goods and services, (*see id.* ¶¶ 185, 188), do not suffice under federal pleading standards. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021) (affirming dismissal of complaint lacking factual allegations). So this factor also weighs in favor of enforcing the waiver.

Although the Court need not apply California law, if it chooses to, it should find that Plaintiffs agreed to a class-action waiver that is enforceable under the *Discover Bank* factors.

**c. Because Plaintiffs waived their right to bring these class actions, the Court should strike their class allegations.**

Because Plaintiffs are bound by the enforceable class-action waiver in their contract with MLBAM, the Court should strike their class allegations. Rule 12(f) allows a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter . . . on [a] motion made by a party." Fed. R. Civ. P. 12(f). In turn, Rule 23 allows courts to determine "whether to certify the action as a class action" at "an early practicable time." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 23(c)(1)(A)).

Together, these two rules allow courts to strike class allegations early in a case. So long as the motion to strike "addresses issues separate and apart from the issues that will be decided on a class certification motion," a court may grant a motion to strike a plaintiff's class allegations. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 512 (S.D.N.Y. 2015) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). "[O]ne circumstance where striking the class allegations may be appropriate is where a contractual waiver clearly precludes the possibility that a plaintiff's claim may be brought on a class-wide basis." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 240–41 (S.D.N.Y. 2022). Courts in the

Second Circuit regularly strike class allegations when the validity and enforceability of a class-action waiver is established. *See, e.g.*, *Camilo*, 2018 WL 2464507, at *3; *Castellanos*, 291 F. Supp. 3d at 302. Courts are especially willing to do so where, as here, the waiver is a standalone clause that applies in litigation, rather than a provision contained in an arbitration clause. *See, e.g.*, *Castellanos*, 291 F. Supp. 3d at 302 (striking class allegations based on class-action waiver that explicitly applied in litigation or arbitration).

The standalone class-action waiver here precludes Plaintiffs' putative class actions. The class-action waiver in MLBAM's TOU applies to "any proceeding" involving MLBAM's digital properties, "whether in arbitration or in litigation." (TOU § 11.) These proceedings all must "be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action." (*Id.*) Plaintiffs allege that their claims arise from use of MLB.com and that the TOU is "applicable" here. (*See* Compl. ¶¶ 17 n.1, 20 n.2, n.8.) The plain language of the provision thus makes clear that Plaintiffs may not bring their claims as a putative class action.

The sole exception to the TOU's class-action prohibition—that "the parties retain the right to participate in a class-wide settlement," (TOU § 11)—is irrelevant here, as the parties have not agreed to settle on a class-wide basis. Nor does the TOU's class-wide settlement exception make its class-action waiver for all other purposes ambiguous. The TOU sets the class-wide settlement exception apart in a "notwithstanding" clause: "***Notwithstanding the foregoing***, the parties retain the right to participate in a class-wide settlement." (*Id.* (emphasis added).) This provision is clear as a matter of plain English, and "under New York law, clauses similar to the phrase 'notwithstanding any other provision' trump conflicting contract terms" without creating ambiguity. *Beardslee v. Inflection Energy, LLC*, 25 N.Y.3d 150, 158 (2015) (cleaned up); *accord*

*Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 501 (2005) (similar under California law). In other words, rather than introducing ambiguity, the "notwithstanding" clause in MLBAM's TOU "by its terms overrides" any purportedly "inconsistent language" "because it trumps all other relevant provisions." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 91 (2d Cir. 2002). The class-wide settlement exception takes priority over the waiver, permitting the parties to engage in class procedures for settlement purposes. (*See* TOU § 11.)

The plain meaning of the class-action waiver is also consistent with routine class-action practice because parties may, and regularly do, agree to class-wide settlements where class-action waivers are present. Such waivers are common in TOUs in conjunction with arbitration agreements.[6] And courts approve—and affirm the approval of—class-wide settlements where contracts contain class-action waivers, including when defendants actively try to enforce those waivers. *See, e.g.*, *Tennille v. W. Union Co.*, 785 F.3d 422, 431–32 (10th Cir. 2015) (affirming approval of class-wide settlement reached during the pendency of defendant's appeal from ruling that arbitration agreement including a class-action waiver was unenforceable); *Wilson v. Gateway, Inc.*, No. CV 09-7560-GW(VBKX), 2014 WL 12704846, at *2–3 (C.D. Cal. Oct. 6, 2014) (approving class-wide settlement reached during pendency of appeal from order compelling arbitration and enforcing class-action waiver).

Indeed, courts regularly cite the risk that a defendant could enforce a class-action waiver as a reason to approve class-wide settlements. In *Mills v. Capital One, N.A.*, for example, the court explained that a proposed settlement provided good value to the class because "a substantial number of class members signed releases of their state law claims and class/collective action

[6] *See, e.g.*, https://www.nba.com/termsofuse (Feb. 20, 2023) (National Basketball Association); https://www.nhl.com/info/terms-of-service (Mar. 8, 2023) (National Hockey League); https://www.nfl.com/legal/terms/ (May 16, 2024) (National Football League).

waivers," and thus "[s]ettlement eliminate[d] the[] uncertainties and the risks resulting from the releases and waivers." No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015) (internal citation omitted); *see also, e.g.*, *T.K. ex rel. Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *13 (N.D. Ill. Mar. 25, 2022) (identifying "[t]he arbitration and class action waiver agreement entered into" by putative class members as "perhaps the biggest obstacle to recovery"). Cases like these demonstrate that parties can waive some class procedures while preserving others, which is precisely what MLBAM's TOU does.

By its plain terms, the class-action waiver prohibits Plaintiffs from maintaining class actions against MLBAM except for purposes of class-wide settlement, which the parties do not seek here. And the TOU's class-action waiver is both unambiguous and consistent with class-action practice. The Court should therefore grant MLBAM's motion to strike Plaintiffs' class allegations under Rule 12(f). *See Haymount*, 635 F. Supp. 3d at 240–41.

## II. The Court should dismiss Plaintiffs' VPPA claims for failure to state a claim and lack of standing.

Plaintiffs also fail to state a claim under the VPPA. "To survive dismissal" under Rule 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[a] district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction" if "the plaintiff lacks constitutional standing." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (cleaned up). A complaint that "fail[s] to allege a plausible injury in fact" should be dismissed under Rule 12(b)(1). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148–49 (2d Cir. 2011).

Plaintiffs fail to meet Rule 12(b)(6) or Rule 12(b)(1) standards for three reasons. To start, Plaintiffs fail to allege facts showing that MLBAM made any improper disclosure relating to ***them*** and thus fail to allege an injury sufficient to give them standing to bring this lawsuit—let alone to state a VPPA claim. Further, Plaintiffs fail to allege that their "personally identifiable information" was shared with any third party. 18 U.S.C. § 2710(a)(3). Finally, Plaintiffs allege insufficient facts to establish that they are "consumers" under the VPPA. 18 U.S.C. § 2710(a)(1).

**a. Plaintiffs fail to plausibly allege any disclosures related to them.**

Plaintiffs' VPPA claims fail because they do not allege an actionable disclosure of their information. Unlike the Judge Bork situation that led to the VPPA, (*see supra* at 1), Plaintiffs fail to point to ***any disclosure*** of their personal information by anyone, or to anyone. Rather, they allege a theory about how MLB.com and the Meta Pixel work and ask this Court to issue an advisory opinion that—if true—their theory supports a VPPA class action. These allegations do not meet Rule 12(b)(6) pleading requirements or standing requirements under Rule 12(b)(1).

**Rule 12(b)(6).** Plaintiffs fail to state a VPPA claim because their complaint lacks any factual allegations showing that MLBAM disclosed their data. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer . . . ." 18 U.S.C. § 2710(b)(1). So, to state a VPPA claim, Plaintiffs must allege facts sufficient to show that MLBAM knowingly disclosed "personally identifiable information" "concerning" them. *Id.* Plaintiffs have failed to allege such facts.

Indeed, the Rule 12(b)(6) standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must do more than provide "naked assertions devoid of further factual enhancement" or "allegations that are merely consistent with liability" to survive a motion to dismiss. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). In the VPPA context, this

means that where a plaintiff's VPPA allegations are merely "consistent with . . . liability" but lack supporting facts showing that the challenged disclosures occurred, their claim should be dismissed. *Beagle v. Amazon.com, Inc.*, No. C24-0316JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (dismissing VPPA claim on this basis).

Here, Plaintiffs' complaint lacks the factual content necessary to plausibly plead the disclosures they challenge. Each Plaintiff recites the same seven identical paragraphs setting forth generic allegations related to their purported activity on MLB.com. (Compl. ¶¶ 40–46, 50–56, 60–66, 70–76, 80–86, 90–96, 100–106, 110–116, 120–126.) In the single paragraph each Plaintiff devotes to purported disclosures, they make the identical, boilerplate allegation that at some unspecified time, MLBAM "simultaneously disclosed" their "FID" and unspecified "video materials or services" they supposedly "requested or obtained" from MLB.com. (*Id.* ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126.) They include no facts to show that these disclosures ever actually occurred or what viewing information was revealed by these disclosures. (*See id.*) Indeed, their complaint never identifies a particular disclosure MLBAM supposedly made at all. (*See id.*)

Plaintiffs instead plead a general theory about how MLB.com and the Meta Pixel work. Unlike the seven identical paragraphs of allegations on each Plaintiff's alleged use of MLB.com, Plaintiffs spend many paragraphs on allegations about how they believe MLB.com and the Meta Pixel function. (*Id.* ¶¶ 21–39.) Even assuming these allegations to be true, they present no facts to show that MLBAM ever violated the VPPA. These are exactly the kinds of allegations rejected by courts as "merely consistent with liability," *Mandala*, 975 F.3d at 207 (quoting *Iqbal*, 556 U.S. at 678), without factual support that could show liability if proven.

By alleging only a general theory unsupported by factual allegations, Plaintiffs ask for an advisory opinion. But federal courts lack the power to issue advisory opinions: Their "judgments

must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted).

Plaintiffs request just such a decision based "upon a hypothetical state of facts." *Id.* Plaintiffs allege that because MLB.com has a routine software tool on it that, according to Plaintiffs, is somehow capable of transmitting information to Meta, MLBAM has violated the VPPA. (*See* Compl. ¶¶ 30, 35, 36, 154.) Plaintiffs' allegations are analogous to a VPPA claim against Blockbuster alleging that the office manager at a Blockbuster store is capable of pulling an individual's rental history from a database, writing that history on a notepad kept in the store, putting it in an envelope pulled from Blockbuster's supplies, and sending it to the *New York Times*. In both the complaint and the Blockbuster example, the allegations amount to mere theories of how the defendant might violate the VPPA. Neither Plaintiffs nor the hypothetical Blockbuster plaintiff have alleged facts showing that MLBAM or Blockbuster actually sent their information. By basing their claims on general assertions without any factual support, Plaintiffs ask the Court to issue an improper advisory opinion about theoretical—not actual—violations of the VPPA.

**Rule 12(b)(1).** Similarly, because the complaint lacks any factual allegations showing that a disclosure occurred, Plaintiffs have not shown that they suffered a cognizable injury as required for standing. To have standing to sue in federal court, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). If a complaint fails to include facts showing a cognizable injury, that complaint should be dismissed. *See Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021) (affirming dismissal of complaint under Rule

12(b)(1) on this basis). As described, (*see supra* at 8–9, 21–22), Plaintiffs' complaint lacks any facts to show that that their information was actually sent to Meta by MLBAM. They therefore cannot show that they suffered a "'concrete and particularized' and 'actual or imminent'" injury as required for standing under Rule 12(b)(1). *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

**b. Plaintiffs fail to plausibly allege disclosures of their "personally identifiable information" based on MLBAM's alleged use of the Meta Pixel.**

Plaintiffs further fail to state a claim under the VPPA because they do not plausibly allege that any of their PII was shared with third parties through the Meta Pixel. The VPPA protects against unauthorized disclosures only of information that qualifies as PII, which the statute defines as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiffs claim that MLB.com shares PII in the form of a "unique Facebook ID," or "FID." (Compl. ¶¶ 27 (defining FID), 36, 37.) Plaintiffs claim that "FIDs are uniquely associated with particular Facebook accounts" and can be used to locate "the associated Facebook profile." (*Id.* ¶ 28.) But because Plaintiffs do not allege that their Facebook profiles are publicly visible, they fail to plausibly claim that they themselves could be identified based on the transmission of their FIDs as is required to allege a disclosure of PII for VPPA purposes.

The VPPA's definition of PII requires that the information disclosed, "at the very least, identify a ***particular*** person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (citing *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014)). And to qualify as PII, the information disclosed must be the kind of information that an "ordinary person" could use "to identify an individual." *Eichenberger v. ESPN,*

*Inc.*, 876 F.3d 979, 986 (9th Cir. 2017); *see also Robinson*, 152 F. Supp. 3d at 184 (applying the "ordinary person" standard in this Circuit).

To satisfy this standard, courts have held that VPPA plaintiffs must allege that their social-media profiles are publicly visible so that their disclosed social-media identifier can be used to identify them. For example, the court in *Smith v. Trinity Broadcasting of Texas, Inc.* dismissed a VPPA claim because the plaintiff did not "indicate that her profile [was] public ***and*** contain[ed] any identifying information or photos." No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (emphasis added). The court in *Heerde v. Learfield Communications, LLC* likewise dismissed a VPPA claim because the plaintiffs did not "identify what information on their Facebook pages, if any, was viewable and could be used to identify them." 741 F. Supp. 3d 849, 858 (C.D. Cal. 2024). Similarly, in *Ghanaat v. Numerade Labs, Inc.*, the court dismissed a VPPA claim where the plaintiff's allegations failed to show that disclosure of her FID would "lead[] to a Facebook page that discloses personal and identifying information about the consumer." 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). Although the *Ghanaat* court did not specifically address whether VPPA plaintiffs need to allege that their Facebook profiles are public, its logic supports that they must. *See id.* Where a Facebook profile is not public, disclosure of an FID would not lead an ordinary person "to a Facebook page that discloses personal and identifying information." *See id.*

The reasoning in *Trinity*, *Heerde*, and *Ghanaat* applies here. No Plaintiff alleges that their Facebook profile is public. (*See* Compl. ¶¶ 45, 55, 65, 75, 85, 95, 105, 115, 125.) The absence of allegations about the public accessibility of Plaintiffs' Facebook profiles means that they have not plausibly alleged that an ordinary person could identify them based on the disclosure of their FIDs. As a result, their VPPA claims should be dismissed.

To be sure, other decisions, including by courts in this District, have found that alleged disclosure of an FID alone qualifies as PII and have not required additional allegations about a plaintiff's Facebook profile to state a VPPA claim. *See, e.g.*, *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (holding an "FID itself represents a particular individual"). As the *Ghanaat* court acknowledged, "[m]ost, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII." 689 F. Supp. 3d at 720 (footnote omitted).

But the *Ghanaat* court properly declined to follow those other cases when considering a complaint, like Plaintiffs' complaint here, in which plaintiffs fail to allege that their FIDs "le[d] to a Facebook page that discloses personal and identifying information" about them. *Id.* Because such a "complaint does not adequately allege that [plaintiffs'] FIDs result in the sharing of any personal information[,] Plaintiffs . . . fail to allege this element of their claim or state an injury" under the VPPA. *Id.*; *see also Iqbal*, 556 U.S. at 678 (a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (first alteration in original) (quoting *Twombly*, 550 U.S. at 557)). This Court should find the same.

Nor is it sufficient for Plaintiffs to allege that Meta employees could use the information allegedly disclosed to access Plaintiffs' accounts. Plaintiffs claim that "[t]he Pixel enables ***Meta*** to 'match [an owner's] website visitors to their respective Facebook User accounts.'" (Compl. ¶ 32 (second alteration in original).) But courts, including in this District, have rejected "recipient-dependent" VPPA claims of this nature. *See, e.g.*, *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91–92 (S.D.N.Y. 2022). The *Triller* court dismissed a VPPA claim alleging that the third-party recipient could use the information disclosed to identify the plaintiff, rather than alleging that ***anyone*** could use the information to find her social-media profile and identify her. *See id.* at 92.

As the *Triller* court explained, interpreting PII to be "recipient-dependent" "would make little sense" because the VPPA's prohibition on disclosures of PII applies broadly, not just where information is disclosed to a particular third party. *Id.* at 91–92. The Ninth Circuit has likewise affirmed dismissal of a VPPA claim under the "ordinary person" standard where only a specific third party could identify a plaintiff from challenged disclosures. *Eichenberger*, 876 F.3d at 986. This Court should similarly reject any argument that the alleged ability of sophisticated Meta employees to identify Plaintiffs through non-public social-media profiles suffices to state a VPPA claim.

In sum, because Plaintiffs do not plausibly allege that they had public social-media profiles allowing an ordinary person to identify them based on their allegedly disclosed profile information, they cannot state a VPPA claim.

**c. Plaintiffs do not adequately allege that they are "consumers" under the VPPA.**

Plaintiffs' VPPA claims fail for an additional reason under Rule 12(b)(6): Plaintiffs do not qualify as "consumers" under the VPPA. The VPPA's protections apply only to "consumer[s]," defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiffs allege that they qualify as "consumers" not because they made any video rentals or purchases, but because they registered for an account on MLB.com. (Compl. ¶¶ 40, 41, 50, 51, 60, 61, 70, 71, 80, 81, 90, 91, 100, 101, 110, 111, 120, 121.) These allegations do not make Plaintiffs "consumers" under the law in this Circuit.

The Second Circuit recently explained in *Salazar* that to qualify as a "subscriber" for VPPA purposes, plaintiffs must allege a qualifying "exchange[]." 118 F.4th at 551–52. That is, plaintiffs must allege that they provided certain kinds of "personal information" "[i]n return for" a particular "good or service" from a video tape service provider. *Id.* at 552–53. In *Salazar*, for example, the plaintiff allegedly provided "(1) his email address, (2) his IP address, and (3) cookies associated

with his device" in exchange for "receiving periodic NBA-related updates" through an NBA newsletter subscription. *Id.* at 552.

Plaintiffs do not allege a qualifying exchange under *Salazar* because unlike the plaintiff in *Salazar*, Plaintiffs do not allege that they receive a qualifying "good or service" from MLBAM. Courts in this District have explained that to qualify as a "subscriber" for VPPA purposes, a plaintiff must have received "a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, or email updates." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015); *accord Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023). Simply "viewing . . . public content on [a] provider's website is not enough to qualify as a consumer under the VPPA," for example, because the plaintiff could "decide to never visit the . . . website ever again—and that decision will have zero consequences, costs, or further obligations." *Alex*, 2023 WL 6294260, at *3 (quoting *Austin-Spearman*, 98 F. Supp. 3d at 669).[7]

Here, Plaintiffs do not allege receiving any "future and recurrent benefit" from MLBAM. *See id.* (quotation marks and citation omitted). They instead allege only that they "had an active subscription to Defendant's Website," MLB.com, and "regularly requested or obtained specific video materials or services from the Website." (Compl. ¶¶ 40, 43, 50, 53, 60, 63, 70, 73, 80, 83, 90, 93, 100, 103, 110, 113, 120, 123.) But they do not allege that a registration on MLB.com provides a "future and recurrent benefit" by giving them any access to any content beyond what every other member of the public gets, regardless of registration. Indeed, MLB.com is a free website accessible to the public with or without a subscription. (*Supra* at 9 & note 5.)

[7] Nor does *Salazar* undermine this reasoning. The Second Circuit in that case expressly declined to address whether simply "viewing [] videos on NBA.com" could make someone a subscriber for VPPA purposes. *See* 118 F.4th at 552 n.14.

This distinguishes MLB.com from subscription-based websites that courts have found to be goods or services under the VPPA. *See, e.g.*, *Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 692152, at *9 (S.D.N.Y. Mar. 4, 2025) (plaintiff alleged being a "consumer" by subscribing to website that required subscription to watch three or more videos on the website). Because Plaintiffs have not plausibly alleged receiving a qualifying benefit in connection with their MLB.com registration, they are not "consumers" under the VPPA.

## III. Plaintiffs' California claims should be dismissed because New York law applies and because Plaintiffs do not plausibly plead these claims.

Plaintiffs' California claims likewise fail. Plaintiffs cannot sustain their California claims because New York law applies to this dispute based on the choice-of-law provision in the binding TOU. Thus, Plaintiffs' California claims are barred and should be dismissed. In the alternative, Plaintiffs' California claims should be dismissed for failure to state a claim under Rule 12(b)(6).

### a. Plaintiffs' California claims fail because they bring them under California law despite agreeing that New York law applies.

Plaintiffs cannot sustain their California claims because New York law applies to this dispute based on the TOU. As explained above, Plaintiffs' electronic click sufficed to agree to MLBAM's TOU under either New York or California law. (*Supra* at 11–13.) And the choice-of-law clause is clear and conspicuous within that TOU. "**CHOICE OF LAW AND VENUE**" appears in bold, all-caps text in the Table of Contents, and it appears again in bold text and all caps in the heading for the "**CHOICE OF LAW AND VENUE**" section. (TOU, Table of Contents & § 12.) That provision requires that any disputes related to MLB products or services "be governed by, and construed and interpreted in accordance with, the laws of the State of New York." (*Id.* § 12.) Further, because Plaintiffs' claims all relate to MLB.com, (*see generally* Compl.)—a "product or service distributed by MLB"—the choice-of-law clause applies, (TOU § 12). Indeed, having conceded that the TOU is "applicable" here (Compl. ¶¶ 17 n.1, 20 n.2, n.8), Plaintiffs

cannot pick and choose which TOU provisions apply. They are subject to all its provisions, including its choice of New York law.

Under New York law, "choice of law provisions" like this one "are valid and enforceable." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (internal quotation marks and citations omitted). And courts choosing between applying California law based on a party's request or New York law based on a binding contract routinely enforce the parties' contractual choice and apply New York law. *E.g.*, *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 96 (S.D.N.Y. 2021) (contract containing choice-of-law clause required application of New York law over California law). As New York's highest court reasoned when enforcing a New York choice-of-law provision and finding a choice-of-law analysis unnecessary, "logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply." *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 467 (2015).

So too under California law. California courts' approach to determining whether to enforce choice-of-law provisions reflects a strong policy in favor of enforcement. *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992). A court will uphold a choice-of-law provision like the one in the TOU here as long as a court finds either: (1) "the chosen state has a substantial relationship to the parties or their transaction," or (2) "there is any other reasonable basis for the parties' choice of law." *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1063–64 (E.D. Cal. 2006) (quoting *Nedlloyd*, 3 Cal. 4th at 466). California courts have found a "reasonable basis" for enforcing a choice-of-law provision when a party to the contract is headquartered in the chosen state. *See Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1160 (S.D. Cal. 2022). Because MLBAM is headquartered in New York, (Compl. ¶ 14), this test is satisfied.

The only reason a California court would not uphold a choice-of-law provision that meets this test is if the chosen state's law is contrary to a "fundamental policy" of California. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1166 (S.D. Cal. 2015) (quoting *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 917 (2001)). "The relative significance of a particular policy or statutory scheme can be determined by considering whether parties may, by agreement, avoid the policy or statutory requirement." *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323 (2008). Here, both the VPPA and § 1799.3—California's version of that law—provide exceptions to liability where plaintiffs consent to video-viewing disclosures. *See* 18 U.S.C. § 2710(b)(2)(B) (consent exception to VPPA); Cal. Civ. Code § 1799.3(a) (consent exception to § 1799.3). Thus, the factual allegations underlying all Plaintiffs' claims are not of the sort to which a "fundamental policy" exception applies.

The court should therefore enforce the choice-of-law provision in MLBAM's TOU. *See Wainwright v. Melaleuca, Inc.*, 844 F. App'x 958, 960–61 (9th Cir. 2021) (enforcing Idaho choice-of-law provision in an arbitration agreement between a California citizen and her Idaho employer). Because New York law applies, Plaintiffs' California claims should be dismissed.

**b. Plaintiffs' California claims fail because they do not plead key elements of these claims.**

In the alternative, each of Plaintiffs' California claims also fails under Rule 12(b)(6).

**Section 1799.3.** Plaintiffs' § 1799.3 claims fail because Plaintiffs do not allege that they ever paid for video content from MLBAM. Section 1799.3(a) prohibits the disclosure of an individual's video "sales or rental information." Courts have construed this provision to "appl[y] only to entities providing video materials to customers in exchange for money." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023); *see also Walsh v. Cal. Cinema Invs. LLC*, No. 2:23-CV-09608-

ODW (AJRX), 2024 WL 3593569, at *7 (C.D. Cal. July 29, 2024) ("Defendants must provide video recording sales or video recording rental services for Section 1799.3 to apply."). Plaintiffs fail to allege purchasing or renting videos, which defeats their claims under § 1799.3. (*See generally* Compl.)

Additionally, as with their VPPA claim, Plaintiffs cannot state a § 1799.3 claim and lack Article III standing because they plead no facts supporting any alleged "disclos[ures]" related to them personally. *See* Cal. Civ. Code § 1799.3(a); (*supra* at 21–27).

**CIPA.** Plaintiffs' CIPA claims fail as a matter of law for two reasons. ***First***, CIPA does not apply to the browsing-related data Plaintiffs allege was disclosed to Meta. Courts have found that browsing-related data does not qualify as "contents" of "communications" protected under CIPA. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (dismissing CIPA claim because browsing-related data including "keystrokes, mouse clicks, pages viewed, . . . IP address . . . and browser type" did not qualify as protected "content" under CIPA). This is because "contents" of a "communication" means "any information concerning the substance, purport, or meaning of that communication." *McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *13 (N.D. Cal. Feb. 2, 2021) (internal quotation marks and citation omitted). In *Yoon*, for example, the plaintiff alleged that information including "pages viewed," "Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" were improperly disclosed. 549 F. Supp. 3d at 1082 (internal quotation marks and citation omitted). But the court concluded that "[n]one of these pieces of data constitutes message content in the same way that the words of a text message or an email do," and thus, these alleged disclosures of data could not support a CIPA claim. *Id.* at 1082–83. Here, Plaintiffs allege that MLBAM disclosed exactly the kinds of browsing-history data that *Yoon* and

other decisions have found not to violate CIPA. (*See* Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126); *see, e.g.*, *Yoon*, 549 F. Supp. 3d at 1082 (collecting cases). Thus, Plaintiffs' CIPA claims should be dismissed.

***Second***, because Plaintiffs cannot show that the data supposedly ***transmitted*** qualifies as a protected "communication" under CIPA, they by necessity also cannot show that a third party ***received*** any "contents" of a qualifying "communication." *See* Cal. Penal Code § 631(a). Their CIPA claims fail for this reason as well.

**UCL.** Plaintiffs' UCL claims fail because they do not and cannot plausibly allege any economic loss. Courts require that plaintiffs "show that they have suffered injury in fact and have lost money or property as a result of the unfair competition to maintain a claim under the UCL." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 242 (S.D.N.Y. 2019) (cleaned up). Courts have rejected UCL claims based on online disclosures because any alleged economic loss arising from these disclosures "is purely hypothetical." *See, e.g.*, *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (dismissing ULC claim on this basis); *Martin*, 657 F. Supp. 3d at 287 (same). This Court should join these courts in holding that because Plaintiffs' alleged injury here "consists solely of the alleged disclosure of private information," *Martin*, 657 F. Supp. 3d at 287, they have not "lost money or property" and cannot bring claims under the UCL. *See, e.g.*, *Facebook*, 402 F. Supp. 3d at 804.

Even if they could somehow allege lost money or property from online disclosures, Plaintiffs do not plausibly do so here. (*See* Compl. ¶¶ 178–189.) Plaintiffs make conclusory allegations about "pay[ing] more" in unspecified "subscription fees than they would have" had they known about MLBAM's supposedly "unlawful business practice." (*Id.* ¶¶ 185, 188.) But nowhere do Plaintiffs allege factual content about these supposed payments for unidentified

"subscription fees" to make these allegations plausible. (*See id.* ¶¶ 178–189.) Without supporting factual content, Plaintiffs cannot state a UCL claim. *See Whitaker*, 985 F.3d at 1176–77 (affirming dismissal of complaint lacking factual allegations).

**CLRA.** To begin, Plaintiffs' CLRA claims fail because their complaint simply parrots the language of the statute without supporting factual content. (*Supra* at 8–10.) They allege, for example, that MLBAM "pass[ed] off goods or services as those of another"—a quote from the statute—without identifying what goods or services they mean or explaining how MLBAM supposedly did so. (Compl. ¶ 195 (*quoting* Cal. Civ. Code § 1770(a)(19)).) Their other allegations similarly quote from the statute without any supporting facts. (*See id.*) Plaintiffs' Meta Pixel-related allegations do not even arguably pertain to these elements. (*See generally* Compl.) Instead, these are precisely the type of "formulaic recitation of the elements of a cause of action" that cannot be credited. *Arcell v. Google LLC*, 744 F. Supp. 3d 924, 929 (N.D. Cal. 2024) (internal quotation marks and citation omitted).

Beyond their threadbare pleading, Plaintiffs' CLRA claims fail based on three additional defects. ***First***, Plaintiffs are not "consumers" under the CLRA because they did not "seek[] or acquire[], by purchase or lease, any goods or services for personal, family, or household purposes" from MLBAM. Cal. Civ. Code § 1761(d) (emphasis added). As already described, (*supra* at 8–10, 27–29), Plaintiffs fail to allege any facts suggesting that they "purchased" or "leased" goods from MLBAM. And courts dismiss CLRA claims that fail to include the factual allegations necessary to show a "sale" of any qualifying "good" or "service." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) (dismissing CLRA claim on this basis).

***Second***, Plaintiffs' CLRA claims fail because they have not alleged recoverable damages. Like courts construing the UCL, courts applying the CLRA have rejected claims by plaintiffs who

fail to allege that a defendant's alleged online disclosures resulted in economic damages. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114–15 (N.D. Cal. 2016) (dismissing CLRA claim for failure to allege economic damages). Courts interpret the "depriv[ation] . . . of economic value" required by the Act literally, examining whether a Plaintiff "lost dollars of his own." *In re Google, Inc. Priv. Pol'y Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013). Plaintiffs must plead facts to show how they were deprived of economic value of their personal information when it was allegedly shared with a third party. *See LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *4–5 (C.D. Cal. Apr. 28, 2011) (dismissing CLRA claim). Here, Plaintiffs never allege any losses or deprivation at all, let alone the economic loss required to state a CLRA claim. (*Supra* at 9–10, 27–29.)

***Third***, Plaintiffs have not alleged any actionable misrepresentation "in the context of a transaction intended to result or resulting in the sale or lease of goods or services," which they must to state a CLRA claim. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *24 (N.D. Cal. Apr. 11, 2024). Misrepresentations that are actionable under the CLRA must impact Plaintiffs' decision to enter into a sale. *Id.* And Plaintiffs here never allege facts supporting that MLBAM sold them any good or service, let alone made a misrepresentation to induce them to make a purchase from MLBAM. (*See generally* Compl.) Plaintiffs fail to state a CLRA claim for this reason as well.

## CONCLUSION

Because Plaintiffs waived their rights to bring a class action, the Court should strike their class allegations under Rule 12(f). Further, because Plaintiffs fail to plausibly allege VPPA claims and lack standing, the Court should dismiss these claims under Rules 12(b)(6) and 12(b)(1). Finally, because Plaintiffs agreed that New York law would govern disputes with MLBAM and

because their California-law claims are insufficiently pleaded, the Court should dismiss those claims under Rule 12(b)(6).

Dated: March 13, 2025

Respectfully submitted,

By: *S/ Alan E. Littmann*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)
Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 13, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann