**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIC WONG, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Case No. 1:25-cv-00777-GHW-GWG

MLB ADVANCED MEDIA, L.P.,

Defendant.

**PLAINTIFFS' SUPERSEDING MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AND DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ..... 1
BACKGROUND ..... 2
ARGUMENT ..... 5
I. DEFENDANT'S CLASS ACTION WAIVER IS UNENFORCEABLE AND THE MOTION TO STRIKE SHOULD BE DENIED. ..... 5
A. The Court Should Apply California Law, and Under California Law, the Class Action Waiver is Unenforceable ..... 5
1. California Law Governs the Dispute ..... 6
2. The Class Action Waiver is Unconscionable Under California Law ..... 10
i. Contract of Adhesion ..... 10
ii. Small Amounts of Damages ..... 10
iii. Scheme to Deliberately Cheat Large Numbers of Consumers ..... 12
B. Even if New York Law Applies, the Class Action Waiver is Unconscionable and Should Not Be Enforced. ..... 12
II. PLAINTIFFS HAVE SUFFICIENTLY PLEADED THEIR VPPA CLAIMS AND HAVE STANDING ..... 15
A. Plaintiffs Sufficiently Pleaded That MLBAM Disclosed Their PII To a Third Party. ..... 16
B. Plaintiffs Sufficiently Pleaded That They Are "Consumers." ..... 18
III. PLAINTIFFS' CALIFORNIA CLAIMS SHOULD NOT BE DISMISSED ..... 20
A. California Law Governs. ..... 20
B. Plaintiffs' California Claims Are Sufficiently Pleaded. ..... 21
i. Plaintiffs Sufficiently Pleaded a Claim Under § 1799.3 ..... 21
ii. Plaintiffs Sufficiently Pleaded a Claim Under CIPA ..... 22
iii. Plaintiffs Sufficiently Pleaded a Claim Under the UCL ..... 24
iv. Plaintiffs Sufficiently Pleaded a Claim Under the CLRA ..... 24
CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aldana v. GameStop, Inc.*,
No. 22-7063, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .......... 2

*Alex v. NFL Enters. LLC*,
No. 22-09239, 2023 WL 6294260 (S.D.N.Y. Sept. 27, 2023) .......... 19

*Ambrose v. Boston Globe Media Partners LLC*,
No. 21-10810, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 13

*Austin-Spearman v. AMC Network Entm't LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) .......... 18

*Bayol v. Zipcar, Inc.*,
No. 14–02483, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) .......... 9

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006) .......... 6, 7, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 15

*Camilo v. Uber Techs., Inc.*,
No. 17-9508, 2018 WL 2464507 (S.D.N.Y. May 31, 0218) .......... 12

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) .......... 12, 18

*Castellanos v. Raymours Furniture Co., Inc.*,
291 F. Supp. 3d 294 (E.D.N.Y. 2018) .......... 12-13

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020) .......... 14

*CIPA. Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .......... 22

*Cohen v. DirecTV, Inc.*,
142 Cal. App. 4th 1442 (2006) .......... 10, 11

*Czarnionka v. Epoch Times Ass'n, Inc.*,
No. 22-6348, 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) .......... 17-18

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
352 F.3d 775 (2d Cir. 2003) .................... 14

*Day Op of N. Nassau, Inc. v. Viola*,
16 Misc.3d 1122(A) (N.Y. Sup. Ct. 2007) .................... 14

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) .................... 9, 10, 11

*Div. 1181 v. N.Y.C. Dep't of Educ.*,
9 F.4th 91 (2d Cir. 2021) .................... 2, 3

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) .................... 9

*E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*,
590 F. Supp. 3d 668 (S.D.N.Y. 2022) .................... 6

*Eisen v. Venulum Ltd.*,
244 F. Supp. 3d 324 (W.D.N.Y. 2017) .................... 14

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2025) .................... 18

*Fan v. NBA Props. Inc.*,
No. 23-05069, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .................... 16, 21

*Feldman v. Star Tribune Media Co. LLC*,
659 F. Supp. 3d 1006 (D. Minn. 2023) .................... 11-12, 18

*Gillman v. Chase Manhattan Bank, N.A.*,
534 N.E.2d 824 (N.Y. 1988) .................... 13, 14

*Harris v. Pub. Broad. Serv.*,
662 F. Supp. 3d 1327 (N.D. Ga. 2023) .................... 12, 18, 19

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .................... 25

*In re Cty. of Orange*,
784 F.3d 520. (9th Cir. 2015) .................... 7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .................... 22, 23

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .................... 22

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .................... 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
2017 WL 11420284 (C.D. Cal. July 25, 2017) .......... 22-23

*In re Yahoo! Litig.*,
251 F.R.D. 459 (C.D. Cal. 2008) .......... 10

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) .......... 24, 25

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 24, 25

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531 (2d Cir. 1997) .......... 7

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) .......... 19

*Lee v. Springer Nature Am.*,
No. 24-04493, 2025 WL 692152 (S.D.N.Y. 2025) .......... 20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 15

*M.K. v. Google LLC*,
No. 21-08465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) .......... 18

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277.......... 21

*Martinez v. D2C, LLC*,
No. 23-21394, 2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) .......... 16

*Medtronic, Inc. v. Walland*,
No. 21-2908, 2021 WL 4131657 (S.D.N.Y. Sept. 10, 2022) .......... 6

*Ministers & Missionaries Benefit Bd. v. Snow*,
45 N.E.3d 917 (N.Y. 2015) .......... 6

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 24

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......... 13

*Oestreicher v. Alienware Corp.*,
502 F. Supp. 2d 1061 (N.D. Cal. 2007) .......... 10-11

*Omstead v. Dell, Inc.*,
533 F. Supp. 2d 1012 (N.D. Cal. 2008) .......... 10, 11

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 17

*Ranieri v. Bell Atl. Mobile*,
759 N.Y.S.2d 448 (App. Div. 2003) .......... 13

*Revitch v. New Moosejaw, LLC*,
No. 18-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 23

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 22

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*,
8 Cal. App. 5th 1 (2017) .......... 7-8

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .......... 20

*Sanchez v. Valencia Holding Co., LLC*,
61 Cal. 4th 899 (2015) .......... 9

*Sellers v. Bleacher Rep., Inc.*,
No. 23-00368, 2023 WL 4850180 (N.D. Cal. July 28, 2023) .......... 12

*Shroyer v. New Cingular Wireless Servs.*,
498 F.3d 976 (9th Cir. 2007) .......... 10

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 23

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .......... 22

*TOU. Lange v. Monster Energy Co.*,
46 Cal. App. 5th 436 (2020) .......... 8

*U1it4Less, Inc. v. FedEx Corp.*,
No. 11-1713, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) .......... 13, 14

*U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
152 F. Supp. 2d 443 (S.D.N.Y. 2001) .......... 15

*Wiretap Act." Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 23

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) .......... 19

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 22

*Zerman v. Ball*,
735 F.2d 15 (2d Cir. 1984) ........................................................................................ 6

**Statutes**

18 U.S.C. § 2710 ........................................................................................ 1, 2, 11, 18
Cal. Civ. Code § 1668 ........................................................................................ 9
Cal. Civ. Code § 1751 ........................................................................................ 8
Cal. Civ. Code § 1799.3 ........................................................................................ 21, 11
Cal. Penal Code §§ 630 et seq. ........................................................................................ 1
California Civil Code § 1799.0 ........................................................................................ 1
Cal. Code Civ Proc § 631 ........................................................................................ 8

## INTRODUCTION

Plaintiffs assert that Defendant MLB Advanced Media, L.P. ("MLBAM") collects and discloses to Meta their identities and the video materials they request or obtain on Defendant's website ("Website"). The Amended Class Action Complaint ("Complaint") asserts that MLBAM unlawfully disclosed Plaintiffs' personally identifiable information ("PII") in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(b)(1); California Civil Code § 1799.0; the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq.*, the California Unfair Competition Law ("UCL"); and the California Consumer Legal Remedies Act ("CLRA"). MLBAM brings a motion to strike and dismiss Plaintiffs' complaint, which must be denied.

Plaintiffs each subscribed to the Website and, in doing so, were required to accept a Terms of Use Agreement ("TOU") drafted by MLBAM. Of course, that Plaintiffs accepted a clickwrap agreement does not end the inquiry into whether all of the terms within that agreement are actually enforceable.

The applicable TOU, effective February 6, 2024, contains an arbitration agreement but specifically carves out claims like Plaintiffs' from its scope. The TOU also contains a choice-of-law provision designating New York law as the governing law for disputes between Plaintiffs and MLBAM, a class action waiver, and a jury trial waiver. These provisions contravene fundamental public policy of the state of California and are thus unenforceable. California law must govern, and the class action waiver is unconscionable under both California and New York law. As such, Defendant's motion to strike under Rule 12(f) must be denied.

MLBAM also moves to dismiss Plaintiffs' claims under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. MLBAM's motion to dismiss should be denied because the Complaint sufficiently alleges that MLBAM unlawfully disclosed Plaintiffs' PII in violation of the

VPPA and Plaintiffs' California state law claims. Specifically, the Complaint sufficiently alleges all elements of a VPPA claim: that Plaintiffs are "subscribers" of MLBAM's video service and that MLBAM disclosed their identity (in the form of a Facebook ID), the video material's identity, and the connection between them (the Meta Pixel disclosed to Meta that the subscriber requested or obtained the specific video materials). *See Aldana v. GameStop, Inc.*, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024). It also sufficiently alleges that MLBAM acted "knowingly" when it installed the Meta Pixel, fully aware of its functions. *See generally* Compl.

## BACKGROUND

The VPPA provides for damages when "[a] video tape service provider…knowingly discloses to any person, [PII] concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Plaintiffs allege the following facts, which are taken as true for the purposes of a motion to dismiss. *Div. 1181 v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021).

MLBAM developed, owns, and operates the Website. Compl. ¶ 2. The Website offers an array of video materials. *Id.* ¶ 1. MLBAM's goods and services are streaming video materials delivered via its Website. *Id.* ¶ 21.

MLBAM monetizes its Website, in part, by collecting and disclosing subscriber information to Meta. *Id.* ¶ 29. The Website uses a code analytics tool called the "Meta Pixel," which tracks the actions of subscribers, such as the pages or videos they view. *Id.* ¶¶ 30–33. When a Facebook account is created, a corresponding Facebook ID ("FID") number is also created. *Id.* ¶ 27. A user's Facebook profile can be identified and viewed using an FID. *Id.* ¶ 28.

When an individual requests or obtains video materials from the Website, the individual's FID and the video materials requested or obtained are simultaneously disclosed to Meta via the Pixel. *Id.* ¶ 36.

Plaintiffs subscribed to the Website by creating an account, which involves providing MLBAM with their names, dates of birth, and email addresses. *Id.* ¶ 24. Plaintiffs also paid subscriptions fees. *Id.* ¶¶ 24; 185. Plaintiffs accessed their Website accounts to request or obtain video materials from MLBAM. *See, e.g., id.* ¶ 43.

Each Plaintiff also has a Facebook account, which he or she is perpetually logged into. *See, e.g., id.* ¶ 44. Each Plaintiff's Facebook account contains his or her name. *See, e.g., id.* ¶ 45. Each time Plaintiffs requested or obtained video materials, MLBAM disclosed his or her FID, as well as the video materials requested or obtained. MLBAM installed the Pixel knowing that it discloses PII to Meta. *See, e.g., id.* ¶ 46. Plaintiffs allege that MLBAM violated the VPPA, and related California state consumer law, each time it knowingly disclosed their FIDs and the video materials they requested or obtained.

As subscribers to the Website, Plaintiffs were presented with MLBAM's TOU, which states in relevant part:

> Any dispute or claim arising out of or relating to this Agreement, or your use of any MLB Digital Property… ("Dispute") will be resolved through binding arbitration.
> …
> Dispute, however, **does not include** any dispute or claim related to…the alleged violation of your privacy rights or interests whether based in contract, tort, statute, fraud, misrepresentation, common law, rule, regulation, or any other legal theory, including but not limited to: (i) claims under the Video Privacy Protection Act and corresponding state video privacy laws; (ii) claims under the Federal Wiretap Act and other federal and state wiretapping laws; or (iii) any other alleged violation of your privacy rights or interests that is based on the use of technology, including, but not limited to, any code, software, software development kit, and/or application programming interface, on any MLB Digital Property or use of that technology to allegedly intercept, record, collect, possess, procure, or disclose any information, including but not limited to personally identifiable information and video viewing behavior (without concession that any such claims, including those under video privacy or wiretapping laws, apply to any MLB Entity) (collectively, "Non-Arbitrable Claims").
> …
> YOU AND MLB AGREE THAT ANY PROCEEDING, WHETHER IN ARBITRATION OR IN LITIGATION, WILL BE CONDUCTED ONLY ON AN

> INDIVIDUAL BASIS AND NOT IN A CLASS, COLLECTIVE, CONSOLIDATED, PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION. … NOTWITHSTANDING THE FOREGOING, THE PARTIES RETAIN THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT.
> …
> TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND MLB WAIVE THE RIGHT TO A JURY TRIAL.

Compl. Ex. A. § 11 (emphasis in original). The TOU also includes a choice-of-law provision, presenting subscribers with a non-negotiable contract to have their disputes with MLBAM "governed by, and construed and interpreted in accordance with, the laws of the State of New York, without regard to conflict of laws principles." Compl. Ex. A § 12.

Plaintiffs assert, and Defendant does not dispute, that the claims at issue are "Non-Arbitrable Claims" under the TOU and therefore must be brought in a court of law. Plaintiffs further assert that the TOU's class action waiver and jury waiver are contrary to important public policy in the state of California—where Plaintiffs reside, where Defendant conducts business, and where this action was originally filed—and that the choice-of-law provision is unenforceable.

Plaintiffs first filed this action in the District Court for the Northern District of California out of concern that a New York forum, in conjunction with the New York choice-of-law provision, would effectuate a waiver of their rights under California law. Defendant brought a motion to transfer the case to this District, to dismiss Plaintiffs' complaint, and to strike Plaintiffs' class allegations. The court granted Defendant's motion to transfer but did not reach Defendant's motions to dismiss and strike. *See* Order, ECF No. 41. Following transfer, this Court directed the parties to file updated briefing regarding Defendant's motions. For the reasons below, the Court should deny these motions.

## ARGUMENT

The Court should deny Defendant's motion to strike Plaintiffs' class allegations because the class action waiver contained in Defendant's TOU is unenforceable. Additionally, the Court should deny Defendant's motion to dismiss Plaintiffs' VPPA claims as those claims are sufficiently pleaded and Plaintiffs have established standing. Further, the Court should deny Defendant's motion to dismiss Plaintiffs' California-law claims because California law governs this action and because Plaintiffs have sufficiently pleaded their claims.

### I. DEFENDANT'S CLASS ACTION WAIVER IS UNENFORCEABLE AND THE MOTION TO STRIKE SHOULD BE DENIED.

While Defendant's TOU attempts to assert a class action waiver, this waiver is unenforceable. California law should govern this dispute because the application of the TOU's choice-of-law clause would violate fundamental California public policy, and under California law, the class action waiver is unconscionable. Even if New York law governs the action, the class action waiver should nonetheless be set aside as unconscionable and unenforceable because it appears outside of the arbitration context and deprives Plaintiffs of the ability to vindicate their rights. Because the class action waiver is not enforceable, Defendant's motion to strike should be denied.

#### A. The Court Should Apply California Law, and Under California Law, the Class Action Waiver is Unenforceable.

Plaintiffs here do not dispute that they made the "electronic click" sufficient to acknowledge the TOU when they registered for their accounts on Defendant's website. But merely clicking "agree" on an online agreement does not make that agreement's terms lawful or enforceable.

*1. California Law Governs the Dispute*

Plaintiffs once again acknowledge that the TOU contains a choice-of-law provision selecting New York law to govern disputes between Defendant and its subscribers. "Under New York law, great deference is to be given a contract's designation of the law that is to govern disputes arising from the contract." *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984). However, "courts may refuse to enforce a choice-of-law clause…where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute." *E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*, 590 F. Supp. 3d 668, 677 (S.D.N.Y. 2022); *see also Medtronic, Inc. v. Walland*, 2021 WL 4131657, at *4–6 (S.D.N.Y. Sept. 10, 2022) (explaining that, even in light of the decision in *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917 (N.Y. 2015), a court should consider whether a choice-of-law provision violates a fundamental policy of a state with a materially greater interest).

Whether the choice-of-law provision has a reasonable basis is a straightforward inquiry. Defendant is headquartered in New York; Plaintiffs do not contest that. The Court is therefore left with "the question of whether the application of New York law would violate fundamental public policy of another jurisdiction with materially greater interests in the dispute." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006). "This inquiry involves two steps: The Court first must determine whether California law would govern this dispute in the absence of the parties' contractual choice-of-law provision; and, if so, the Court must decide whether the application of New York law would violate a fundamental public policy of California." *Id.*

As to this first step—whether California law would govern absent the choice-of-law provision—New York courts apply a "center of gravity" approach to decide such questions. *Id.* at 379. "Using this approach, 'courts may consider a spectrum of significant contact, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties.'" *Id.* (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). Here, because all plaintiffs are domiciled in California, entered into these contracts in California, and watched video content in California, California contacts predominate. Further, the personally identifiable information at issue was transmitted to Meta, a California company.

If California law would govern the dispute in the absence of a choice-of-law provision, "the Court must address whether applying New York law in accordance with that provision would violate a fundamental public policy of California." *Beatie & Osborn*, 431 F. Supp. 2d at 379. The answer is plainly yes. The application of New York law, rather than the law of California, would contravene fundamental policy in three ways: by enforcing a predispute jury trial waiver, by effectuating a waiver of Plaintiffs' rights under the CLRA, and by enforcing an unconscionable class action waiver.

First, California law and public policy reflects a strong fundamental policy of preserving jury trials for civil litigants. The right to a jury trial is uncontroversially unwaivable under California law. *See In re Cty. of Orange*, 784 F.3d 520. 523 (9th Cir. 2015) ("Under California…law, parties to a contract cannot waive their right to a jury trial before a dispute commences, and any contract provision seeking to effect such a waiver is unenforceable unless expressly authorized by statute."); *see also Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 17 (2017) (finding that even though plaintiffs resided in New York and disputed

loans were made and disbursed in New York, the New York choice-of-law provisions in the contracts were unenforceable under California law as applied to the jury waiver provisions because the waiver violated fundamental California public policy). The California Constitution clearly provides in the strongest terms for protection of the right to trial by jury and leaves up to the California legislature to describe the ways in which that right may be waived. The California legislature has spoken clearly through California Code of Civil Procedure section 631(f), which allows a party to waive jury trial in six instances[1], none of which include a pretrial waiver contained in a private contract's TOU. Plaintiffs' right to a jury trial is unwaivable and a clear manifestation of California public policy. While jury trial waivers are "inherent in arbitration agreements," Plaintiffs' claims are explicitly outside the scope of the arbitration agreement contained in the TOU. *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452 (2020). Instead, a jury trial waiver applied to a claim or controversy brought in a court of law "is not susceptible to any interpretation *other* than as an unconscionable predispute jury waiver." *Id.* (emphasis in original).

Second, enforcement of the New York choice-of-law clause would effectively constitute a waiver of consumer rights under the CLRA. The CLRA plainly declares that "[a]ny waiver by a consumer of the provisions of this title *is contrary to public policy* and shall be unenforceable and

---

[1] (1) By failing to appear at the trial.
(2) By written consent filed with the clerk or judge.
(3) By oral consent, in open court, entered in the minutes.
(4) By failing to announce that a jury is required, at the time the cause is first set for trial, if it is set upon notice or stipulation, or within five days after notice of setting if it is set without notice or stipulation.
(5) By failing to timely pay the fee described in subdivision (b), unless another party on the same side of the case has paid that fee.
(6) By failing to deposit with the clerk or judge, at the beginning of the second and each succeeding day's session, the sum provided in subdivision (e).

void." *Id.* (quoting Cal. Civ. Code § 1751) (emphasis added). "[C]lass actions are among the provisions of the CLRA that may not be waived." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 924 (2015). California's CLRA is an example of the state's comprehensive protection of Californian consumers' rights that go above and beyond that of other states. The anti-waiver provision in the CLRA is a clear expression by the California legislature that the protections of the CLRA cannot be waived. California courts have consistently ruled against attempts by companies to sidestep the CLRA's heightened consumer protections by rejecting forum selection clauses and choice of law provisions that would shift legal disputes to more business-friendly states. *See, e.g.*, *Bayol v. Zipcar, Inc.*, No. 14–cv–02483–TEH, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009). These decisions demonstrate the judiciary's commitment to upholding California's strong public policy aimed at protecting consumers.

Finally, a class action waiver "found in a consumer contract of adhesion in a setting in which disputes between contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money" is "unconscionable under California and should not be enforced." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005). Such a class action waiver "becomes in practice the exemption of the [drafting] party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Id.* at 163 (quoting Cal. Civ. Code § 1668). That is precisely the type of waiver presented here.

Since enforcement of the choice-of-law provision would contravene three of California's strong public policies, including the right to a jury trial, consumer protections and remedies of the

CLRA, and protections against class action waivers, this court should find the choice-of-law provision unenforceable.

*2. The Class Action Waiver is Unconscionable Under California Law*

As previously mentioned, under California law, some consumer contracts of adhesion are unconscionable. While [*Discover Bank*] did not hold "that all class action waivers are necessarily unconscionable," neither did it hold that class action waivers are unconscionable only in the circumstances it described. *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1451 (2006). Nonetheless, the class action waiver here is exactly the kind *Discover Bank* aims to prevent. It (1) is "a consumer contract of adhesion," (2) occurs "in a setting in which disputes between contracting parties predictably involve small amounts of damages," and (3) "the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." 36 Cal. 4th at 162–63.

i. Contract of Adhesion

"Under California law, a contract of adhesion is defined as a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *In re Yahoo! Litig.*, 251 F.R.D. 459, 467 (C.D. Cal. 2008) (quoting *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 983 (9th Cir. 2007). Defendant does not argue that the TOU would not qualify as a "consumer contract of adhesion."

ii. Small Amounts of Damages

Defendant does, however, appear to argue that Plaintiffs' request for statutory damages is too high for their TOU to be unconscionable under the *Discover Bank* test. In support, Defendant cites *Omstead v. Dell, Inc.*, 533 F. Supp. 2d 1012, 1040 (N.D. Cal. 2008), claiming that a request of $4,000 led the *Omstead* court "to find the second factor of the *Discover Bank* test not satisfied."

Def.'s Br. at 16. But that simply is not what the *Omstead* decision holds. Rather, the *Omstead* court noted that it was "at odds" with the decision in *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1067–68 (N.D. Cal. 2007), in which the court *did* find that "the $4,149 that the plaintiff paid for his computer was within the *Discover Bank* limit." The *Olmstead* court does not even state how much the plaintiff in that case sought, only that it did not agree with the *Oestreicher* court that "the sales of high-end electronics, such as computers, occur in 'a setting in which disputes between the contracting parties predictably involve small amounts of damages.'" *Omstead*, 533 F. Supp. 2d at 1040.

What ultimately matters to this analysis is not the numerical figure requested by any specific plaintiff, but rather the "***setting***" in which the waiver occurs. The waiver in question is found in a clickwrap agreement entered into by subscribers paying at most a small monthly subscription fee. A claim under VPPA or California Civil Code section 1799.3, if brought on their own, provides for damages far below the $4,149 request made by the plaintiff in *Oestreicher*. *See* 18 U.S.C. § 2710(c)(2)(A)–(D) (providing $2,500 in statutory damages for a violation of the VPPA); Cal. Civ. Code § 1799.3(d)(1) (providing civil penalties of up to $500 per violation).

Even if the damages sought had some maximum cap to fall within the scope of the *Discover Bank* rule, as Defendant suggests, this Court should not find that $8,500 is above it. While "not an insignificant sum, many consumers…may not view that amount as sufficient 'to warrant individual litigation,' and certainly it is not sufficient to obtain legal assistance in prosecuting the claim." *Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1452 (2006) (quoting *Discover Bank*, 36 Cal. 4th at 157).

iii. Scheme to Deliberately Cheat Large Numbers of Consumers

Finally, the agreement itself is one *designed* to cheat consumers out of small sums of money. Video tape service providers, like Defendant, have seen a rise in the number of video privacy cases being brought, both in arbitration and in class actions. *See, e.g.*, *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006 (D. Minn. 2023); *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180 (N.D. Cal. July 28, 2023); *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90 (S.D.N.Y. 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327 (N.D. Ga. 2023). Hoping to escape the risk of any costly video privacy mass arbitration, Defendant modified its TOU in early 2024 to specifically carve out video privacy cases from its arbitration clause. But Defendant does not stop there; the TOU also contains a class action waiver that applies to non-arbitrable claims, including video privacy claims. When consumers are barred from pursuing the realistic, cost-saving avenues of both arbitration and class actions, Defendant is essentially enabled to violate the privacy rights of consumers without fear of legal repercussion. For consumers, seeking redress for violations of their video privacy rights becomes nearly financially and logistically impossible. This is plainly the situation *Discover Bank* contemplated when it held that such class action waivers were unconscionable.

**B. Even if New York Law Applies, the Class Action Waiver is Unconscionable and Should Not Be Enforced.**

Defendant asserts that New York courts "routinely uphold class-action waivers like the one in MLBAM's TOU," but that simply is not true. *See* Def.'s Br. at 14. To support their argument, Defendant cites several cases, but the waivers discussed in these cases are not like the one present in the TOU. All but one of the cases cited by Defendant discuss the validity of a class action waiver *within an arbitration agreement*, not a standalone class action waiver for claims explicitly outside

the scope of the arbitration agreement. *See Camilo v. Uber Techs., Inc.*, No. 17 CIV. 9508, 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 0218) ("The *arbitration provision* of the [agreement] contains a class waiver." (emphasis added)); *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (finding a class action waiver enforceable on a *motion to compel arbitration*); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (rejecting argument that *an arbitration clause* is unconscionable). Defendant's citation to *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (App. Div. 2003) also omits this vital context: "[***G***]***iven the strong public policy favoring arbitration***, and the absence of a commensurate policy favoring class actions, we are in accord with authorities holding that a contractual proscription against class actions, such as contained in the Agreements, is neither unconscionable nor violative of public policy."

The logic, of course, is that arbitration should not be displaced in favor of class actions, for "[t]he overarching purpose of the [Federal Arbitration Act]…is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). But there *are no* streamlined proceedings here: Defendant specifically carved them out.

"Rather, in the absence of an accompanying arbitration agreement…[t]he Court must…ask if the class action waiver at issue is unconscionable under the applicable state law" *U1it4Less, Inc. v. FedEx Corp.*, No. 11-cv-1713, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015).

"Under New York Law, an unconscionable contract is one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Id.* (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988)). "A determination of unconscionability

generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., 'some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Gillman* 534 N.E.2d at 828 (internal quotations and citations omitted). But "[t]he unconscionability doctrine is flexible, and is 'intended to be sensitive to the realities and nuances of the bargaining process.'" *Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324, 341 (W.D.N.Y. 2017) (quoting *Gillman*, 534 N.E.2d at 829). "Unconscionability is a 'sliding scale' and no one factor is determinative." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 248 (S.D.N.Y. 2020).

As to procedural unconscionability, "[s]everal factors contribute to the determination of whether a contract clause is procedurally unconscionable, including '(1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power.'" *U1it4Less*, 2015 WL 3916247, at * 4 (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (internal quotations omitted). Here, some degree of procedural unconscionability is clearly present. The agreement is presented on a "take-it-or-leave-it" basis, providing no meaningful choice and no opportunity for negotiation or bargaining. Further, while "Arbitration Agreement" and "Class Action Waiver" are bolded at the top of the TOU, a user must scroll down and parse through the legal jargon to decipher the fact that privacy claims, such as Plaintiffs', are excluded from this Arbitration Agreement.

As to substantive unconscionability, "[c]ontract terms are substantively unconscionable when they are unreasonably balanced in favor of one party over the other." *Eisen*, 244 F. Supp. 3d at 342. "Examples of terms that are substantively unconscionable include 'contract provisions that

are oppressive, unjust, and unreasonably deprive a party of the benefits of his or her bargain.'" *Id.* (quoting *Day Op of N. Nassau, Inc. v. Viola*, 16 Misc.3d 1122(A), 847 N.Y.S.2d901 (Table), at *6 (N.Y. Sup. Ct. 2007)). As discussed above, placing video privacy claims outside the scope of the arbitration clause while nonetheless requiring a subscriber to waive the ability to bring a class action essentially precludes a consumer from effectively bringing these claims. In the arbitration context, Defendants could argue that Plaintiffs receive meaningful consideration in exchange for class waivers because arbitrations, they argue, are cheaper and faster than litigation. However, since these claims are excluded from arbitration, the class waiver is purely a loss to the consumer and a powerful gain for the Defendant. A class waiver in this scenario is "unreasonably favorable" to Defendant because it essentially operates as a de facto liability waiver, and, if enforced, would massively prejudice the members of the class while overwhelming the courts with repetitive and low-value litigation.

## II. PLAINTIFFS HAVE SUFFICIENTLY PLEADED THEIR VPPA CLAIMS AND HAVE STANDING

Plaintiffs have pleaded sufficient facts to state a plausible claim for relief and to establish standing under the VPPA. To survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but rather, a plaintiff must allege "only enough facts to state a claim for relief that is plausible of its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To establish standing for purposes of a motion under Rule 12(b)(1), a plaintiff must plead an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 560 (1992). In deciding a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

**A. Plaintiffs Sufficiently Pleaded That MLBAM Disclosed Their PII To a Third Party.**

Defendants contend that Plaintiffs' VPPA claim fails because "they do not allege an actionable disclosure of their information," but rather "a theory about how MLB.com and the Meta Pixel work." *See* Def.'s Br. at 21. This is incorrect.

Plaintiffs, instead, allege that "[*e*]*ach time* Plaintiff [ ] requested or obtained specific video materials or services from the Website, Defendant simultaneously disclosed Plaintiff['s] FID and the specific video materials or services…requested or obtained from Defendant to Meta via the Pixel." Am. Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126 (emphasis added). Importantly, there is "no requirement" that a plaintiff "disclose the title of the specific videos" requested or obtained. *Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024); *see also Martinez v. D2C, LLC*, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023) (finding "no support" for "requiring that [a plaintiff] identify the actual titles that they allege were disclosed"); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (finding sufficient that plaintiff alleged that defendant disclosed "information about what videos he has watched").

Moreover, Plaintiffs do not allege a "general theory" about how the Pixel *could* work. *See* Def.'s Br. at 22. They instead allege facts about how the Pixel *does* work. *See, e.g.*, Am. Compl. ¶ 36 ("When someone requests or obtains specific prerecorded audio visual material or services on the Website, the specific audio visual material or service and the viewer's FID *are* simultaneously disclosed to Meta via the Pixel." (emphasis added)). Plaintiffs' allegations are not akin to

Defendant's analogy of a Blockbuster office manager being "capable" of "pulling an individual's rental history" and "sending it to the *New York Times*." *See* Def.'s Br. at 23. Rather, the allegations are analogous to Blockbuster, hypothetically, pulling an individual's rental history and sending it to the New York Times *as a matter of course* from which it does not deviate.

Each Plaintiff here alleged that he or she "regularly requested or obtained specific video materials or services from the Website," and that "*each time*" he or she did so, that information was transmitted to Meta via the Pixel, along with his or her FID. *See, e.g.*, Am. Compl. ¶¶ 46, 41 (emphasis added). In doing so, Plaintiffs have sufficiently pleaded a cognizable injury as required for standing. *Cf. In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* in jury, *i.e.*, the unlawful disclosure of legally protected information."); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 ("The structure and purpose of the VPPA supports the conclusion that it provides actionable rights. …We conclude that violation of the VPPA constitutes a concrete harm.").

Defendant's argument that Plaintiffs FIDs do not constitute PII because they "do not allege that their Facebook profiles are publicly visible" holds no merit. *See* Def.'s Br. at 24–27. Defendant takes Plaintiffs' pleadings about Meta's matching capabilities out of context. *See* Compl. ¶ 32; Def.'s Br. at 26–27. While Plaintiffs do allege that "[t]he Pixel enables Meta to 'match [an owner's] website visitors to their respective Facebook User Accounts," this concerns how the Pixel works and how video tape service providers, like Defendant, uses Meta's advertising tools.

More importantly, Plaintiffs alleged that "a person can be personally identified by their Facebook account," "an FID can be used to identify *and view* the associated Facebook profile," and that each Plaintiff's Facebook profile is associated with his or her real name and he or she can

be personally identified by their profile. *See* Compl. ¶¶ 26, 28 (emphasis added), 45, 55, 65, 75, 85, 95, 105, 115, 125. Courts have also routinely held that similar allegations are sufficient to state a claim. *See Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348, 2022 WL 17718689, at *1 (S.D.N.Y. Dec. 15, 2022) ("The Facebook ID disclosed by [defendant] is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing 'facebook.com/[Facebook ID]' into a web browser."); *Feldman*, 659 F. Supp. at 1021 ("[C]onnecting a Facebook ID to a specific person, a URL to a particular video, and the specific person to the particular video is a reasonably straightforward exercise.").

As such, Plaintiffs plausibly alleged that their PII was unlawfully disclosed and that they suffered in injury in fact.

**B. Plaintiffs Sufficiently Pleaded That They Are "Consumers."**

The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). A "subscriber" is not a separately defined term under the VPPA, but courts have defined a VPPA "subscriber" as a person: (1) who has established a subscriber relationship with a video tape service provider; and (2) whose subscription is connected to the video tape service provider's video materials. *See, e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 669–71 (S.D.N.Y. 2015).

"Relevant considerations include whether the relationship between the plaintiff and the video tape service provider involves payment, registration, establishment of an account, provision of personal information, receipt or delivery of goods or services, expressed association, and/or access to restricted content." *M.K. v. Google LLC*, 2023 WL 4937287, at *4 (N.D. Cal. Aug. 1, 2023) (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2025)). However,

"[n]o single factor is dispositive." *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023).

Courts have consistently held that an individual with a subscription to goods or services of a video tape service provider, even when free, constitutes a "consumer" under the VPPA. *See, e.g.*, *Ellis v. Cartoon Network*, 803 F.3d at 1256 ("[P]ayment is not a necessary element of subscription."); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487, 489 (1st Cir. 2016); *Harris*, 662 F. Supp. 3d 1327 (finding that a plaintiff who "signed up for a free account with Pbs.org" was a "consumer" under the VPPA); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) (finding that plaintiff was a consumer where "she allege[d] that she exchanged her email address to receive the WebMD e-newsletter and that she also created her own WebMD account").

As noted in the complaint, MLB's paid subscription service "provides 'an *expanded* library of *premium content*, including documentaries, classic programs and the World Series Films." Compl. ¶ 21 (emphasis added). However, even class members with free accounts[2] are nonetheless "consumers" under the VPPA.

Defendant argues that viewing public content is not enough to qualify as a consumer "because the plaintiff 'could decide to never visit the…website ever again—and that decision will have zero consequences, costs, or further obligations." Def.'s Br. at 28 (quoting *Alex v. NFL Enters. LLC*, No. 1:22-CV-09239 (ALC), 2023 WL 6294260, at *3 (S.D.N.Y. Sept. 27, 2023). But

---

[2] A free MLB account does, additionally, provide access to content not otherwise available to those without accounts. *See Free Game of the Day on MLB.TV*, MLB, https://support.mlb.com/s/article/Free-Game-Of-The-Day-on-MLBTV (last visited March 20, 2025) ("Yes, you will need to create a free MLB account and log with your MLB credentials in order to access the free game of the day.").

establishing an account with or providing an email address to a video tape service provider indeed has consequences, even if the content viewed is available to the public.

By submitting a full name and email address to a video tape service provider, an individual "convey[s] valuable personal information to [the video tape service provider] and establishe[s] a relationship permitting [the video tape service provider] to be in touch with him regarding the Website. At the pleading stage, that is enough to make [one] a VPPA subscriber." *Lee v. Springer Nature Am.*, --- F. Supp. 3d ---, 2025 WL 692152, at *9 (S.D.N.Y. 2025). The *Salazar* court also acknowledged that providing personal information to a video tape service provider establishes a relationship "distinct" from "casual…video-watchers." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 552 (2d Cir. 2024). The plaintiff in *Salazar* provided, "at minimum, (1) his email address, (2) his IP address, and (3) cookies associated with his device." *Id.* "That information is not insignificant. By receiving it, the [defendant] learned how to directly reach out to Salazar. It discovered where his device was. It gained access to additional information stored in any cookies on his device. These tools increased the [defendant's] potential to urge Salazar to visit [the website] and watch videos on it." *Id.*

As such, registration for an account on the Website does make one a "subscriber" under the VPPA, and because Plaintiffs established "some sort of ongoing commitment or relationship" between themselves and Defendant, Plaintiffs adequately pleaded that they are "consumers" under the VPPA.

## III. PLAINTIFFS' CALIFORNIA CLAIMS SHOULD NOT BE DISMISSED

### A. California Law Governs.

As previously discussed, the New York choice-of-law provision is unenforceable because California law would govern the dispute in the absence of a choice-of-law provision and "applying

New York law in accordance with that provision would violate a fundamental public policy of California," namely by enforcing a predispute jury trial waiver, by effectuating a waiver of Plaintiffs' rights under the CLRA, and by enforcing an unconscionable class action waiver. *See Beatie & Osborn*, 431 F. Supp. 2d at 379. Because the New York choice-of-law provision is unenforceable and California law governs, Plaintiffs' state-law claims survive.

### B. Plaintiffs' California Claims Are Sufficiently Pleaded.

#### *i. Plaintiffs Sufficiently Pleaded a Claim Under § 1799.3.*

Defendant asserts that Plaintiffs claim under § 1799.3 fails because they "do not allege that they ever paid for video content." Def.'s Br. at 31. A plain reading of the Complaint demonstrates otherwise: "*Plaintiffs paid* more in subscription fees than they would have had they been previously aware of Defendant's unfair and unlawful business practice." Am. Compl. ¶ 185 (emphasis added).

While Plaintiffs contest that a paid subscription is even required under the statute,[3] Plaintiffs are aware of no case in which a court has required a plaintiff to state the specific dollar amount expended on their subscriptions at the pleading stages to state a claim under section 1799.3. *But cf. Fan v. NBA Props. Inc.*, No. 23-cv-05069, 2024 WL 1297643 (denying defendant's motion

[3] Defendant cites *Martin v. Meredith Corp.* for the contention that a plaintiff must pay for video content in order to state a claim under section 1799.3. 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023) ("The term 'sales or rental services' indicates that the statute applies only to entities providing video materials to customers in exchange for money."). However, a careful reading of both *Martin*, in which a federal court in New York interpreted a California statute, and the statute itself demonstrates that the term "sales or rental services" is contained in the provision describing which *entities* are subject to the prohibition of disclosure under section 1799.3. Defendant, which does engage in "providing video recording sales or rental services" through its paid MLB.TV service, is prohibited from disclosing "the contents of *any record*, *including* sales or rental information…without [ ] written consent." Cal. Civ. Code § 1799.3(a) (emphasis added).

to dismiss 1799.3 claim); Am. Compl., *Fan v. NBA Props. Inc.*, No. 23-cv-05069 (N.D. Cal. Oct. 6, 2023), ECF No. 9 (pleading simply that "Plaintiff Fan purchased a NBA Top Shot video clip").

Because Plaintiffs are not required to plead that the video materials were received in exchange for money and because, even if they were required to do so, Plaintiffs sufficiently did, Plaintiffs have sufficiently pleaded a claim under section 1799.3.

*ii. Plaintiffs Sufficiently Pleaded a Claim Under CIPA*

"[T]he California Supreme Court has…emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (citing *Ribas v. Clark*, 38 Cal. 3d 355, 358–61 (1985); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199 (2021) ("The interpretation of section 632.7 we adopt is better aligned with the[ ] aims and declarations [of CIPA] than a narrower interpretation would be.")). Defendant's narrow interpretations of "contents" and "communications" protected under CIPA are at odds with both this principle and case law.

Defendant argues that Plaintiffs allege the disclosure of "exactly the kinds of browsing-history data that *Yoon* [*v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)] and other decisions have found not to violate CIPA," namely an "IP address, [ ] location at the time of the [website] visit, [ ] browser type, and the operating system on [the] device." Def.'s Br. at 32–33. But this argument fails for several reasons.

First, while "basic identification and address information" is not "content," Plaintiffs are not alleging disclosure of such general "record information." *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Rather, Plaintiffs allege that Defendant disclosed the precise video materials or services Plaintiffs requested or obtained. *See id.* ("[B]ecause full-string URLs concern the 'substantive, purport, or meaning of a communication,' these

transmissions likely constitute 'contents."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 139 (3d Cir. 2015) ("[P]ost-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user."); *In re Vizio, Inc., Consumer Priv. Litig.*, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) ("When watching a program through a connected device or streaming service, the 'intended message conveyed by the communication' is the program that the consumer is watching.").[4]

Moreover, courts have held that a user's website activity can constitute communication for purposes of CIPA. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("[Plaintiff] requested information from [defendant] by clicking on items of interest; [defendant] responded by supplying that information. This series of requests and responses—whether online or over the phone—is communication."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (finding an allegation that data collected by defendant's site "may include email addresses, data on users' income, filing status, refund amounts, buttons that were clicked, and year of return" was enough to state a claim under CIPA); *see also In re Google*, 806 F.3d at 139 ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the [federal] Wiretap Act.").

Because the information disclosed by Defendant constitutes a protected "communication" under CIPA, and because this information was transmitted to a third party (Meta), Plaintiffs have sufficiently stated a claim under CIPA.

[4] While these cases addressed the federal Wiretap Act, rather than CIPA, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

*iii. Plaintiffs Sufficiently Pleaded a Claim Under the UCL*

Defendants primarily argue that Plaintiffs' UCL claim fails because disclosure of private information does not constitute economic loss. Plaintiffs at no point alleged that it does. Instead, Plaintiffs alleged that their economic loss resulted in the payment of subscription fees that they would otherwise have been unwilling to pay had they been aware of Defendant's practice of disclosing their information. *See* Compl. ¶ 185. Such an economic injury has been routinely recognized by California courts. *See, e.g., Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 334 (2011) ("[A] buyer forced to pay more than he or she would have is harmed at the moment of purchase."); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 554–55 (2022) (collecting cases). That Plaintiffs did not allege the exact amount paid or lost is not fatal to their claim at the pleading stage. *See Kwikset*, 51 Cal. 4th at 330 ("Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of this loss is not required.").

*iv. Plaintiffs Sufficiently Pleaded a Claim Under the CLRA*

Contrary to Defendant's assertions, Plaintiffs make specific allegations in pleading their CLRA claims, including, for example, that Defendant "falsely represent[ed] that Defendant does not unlawfully disclose consumers' PII." *See* Compl. ¶ 195; *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1382–83 (2012) (finding that Plaintiffs stated a claim under the CLRA where "[t]he allegations underlying plaintiffs' CLRA claim [were] essentially identical to those pleaded in support of their UCL claim").

Moreover, Defendant's arguments that Plaintiffs are not "consumers" under the CLRA, that Plaintiffs "never allege any losses," and that Plaintiffs "never allege facts supporting that MLBAM sold them any good or service" fail for reasons already discussed. *See* Def.'s Br. at 35.

These arguments all hinge on Plaintiffs' purported failure to allege any payment or economic loss, but Plaintiffs plainly alleged that they "paid more in subscription fees than they would have had they been previously aware" of Defendant's practice of disclosing their PII. Compl. ¶ 185. "Because the [CLRA's] 'any damage' standard includes even minor pecuniary damage, …any plaintiff who has standing under the UCL's… 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (quoting *Klein,* 202 Cal. App. 4th at 1375); *see also Kwikset*, 51 Cal. 4th at 335–36 ("[T]he standards for establishing standing…and eligibility for restitution…are wholly distinct.").

## CONCLUSION

For the reasons set forth above, this Court should deny MLBAM's Motion to Strike. Additionally, this Court should deny MLBAM's Motion to Dismiss. In the alternative, Plaintiffs request leave to amend.

Respectfully submitted,

/s/ Todd S. Garber
Todd S. Garber
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
tgarber@fbfglaw.com

**ZIMMERMAN REED LLP**

Caleb Marker
caleb.marker@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

Jeffrey Harrington*
jeffrey.harrington@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400

Molly Billion*
molly.billion@zimmreed.com
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400

*Attorneys for Plaintiffs*

*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 20, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2,the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

/s/ Todd S. Garber
Todd S. Garber