**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIC WONG, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MLB ADVANCED MEDIA, L.P.,<br><br>Defendant. | Case No. 1:25-cv-00777-GHW-GWG<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT MLB ADVANCED MEDIA, L.P.'S SUPERSEDING REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(f), 12(b)(6), AND 12(b)(1)**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 4

I. The Court should strike Plaintiffs' class allegations because the class-action waiver is enforceable. .......... 4

a. Binding New York law requires enforcing the parties' choice of law without considering the public policy of California. .......... 4

b. The class-action waiver is enforceable under New York law. .......... 7

c. Although California law does not apply, the choice-of-law clause and class-action waiver are also enforceable under California law. .......... 9

d. Because the class-action waiver is enforceable, it is undisputed that the Court should strike Plaintiffs' class allegations now. .......... 16

II. The Court should dismiss Plaintiffs' VPPA claims because Plaintiffs fail to state a claim and lack standing. .......... 17

a. Plaintiffs fail to allege disclosures of *their* information. .......... 17

b. Plaintiffs fail to allege that their social-media profiles are publicly visible. .......... 19

c. Plaintiffs fail to plausibly allege that they are consumers. .......... 21

III. Plaintiffs' California claims should be dismissed because New York law applies and they are not plausibly pleaded. .......... 22

CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases**

*Ambrosev. Boston Globe Media Partners, LLC*,
2022 WL 4329373 (D. Mass. Sept. 19 2022) ........ 19

*Arguelles-Romero v. Superior Ct.*,
184 Cal. App. 4th 825 (2010) ........ 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 23

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y.2015) ........ 21

*Beaglev. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ........ 18

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
431 F. Supp. 2d 367 (S.D.N.Y. 2006) ........ 5

*Cajun Conti, LLC v. Star Surplus Lines Ins. Co.*,
2025 WL 764131 (S.D.N.Y. Mar. 11, 2025) ........ 6

*Carovillano v. Sirius XM Radio Inc.*,
2024 WL 3460040 (S.D.N.Y. July 18, 2024) ........ 7

*City of Syracuse v. Onondoga Cty.*,
464 F.3d 297 (2d Cir. 2006) ........ 22

*Dalie v. Pulte Home Corp.*,
2009 WL 10691187 (E.D. Cal. Apr. 29, 2009) ........ 15

*Discover Bank v. Superior Ct.*,
36 Cal. 4th 148 (2005) ........ 2, 13, 15, 16

*Doe #1 v. Coll. Bd.*,
440 F. Supp. 3d 349 (S.D.N.Y. 2020) ........ 9

*E.Cap. Invs. Corp. v. GenTech Holdings, Inc.*,
509 F. Supp. 3d 668 (S.D.N.Y.2022) ........ 5

*Fan v. NBA Props., Inc.*,
2024 WL 1297643 (N.D. Cal. March 26, 2024) ........ 19

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .......... 20

*Gillman v.Chase Manhattan Bank, N.A.*,
73 N.Y.2d 1 (1988) .......... 7, 8, 9, 10

*Hahn v. JetBlue Airways Corp.*,
2022 WL 22908406 (E.D.N.Y. Aug. 25, 2022) .......... 9

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 20

*Hinojos v. Kohl's Corp.,*
718 F.3d 1098 (9th Cir. 2013) .......... 23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
806 F.3d 125 (3d Cir. 2015) .......... 25

*In re Meta Pixel Healthcare Litig*.,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 25

*In re Vizio, Inc., Consumer Priv. Litig*.,
2017 WL 11420284 (C.D. Cal. July 25, 2017) .......... 25

*Invs. Corp. v. GenTech Holdings, Inc.*,
590 F. Supp. 3d 668 (S.D.N.Y. 2022) .......... 5

*Jeong v. Nexo Cap. Inc.*,
2023 WL 2717255 (N.D. Cal. Mar. 29, 2023) .......... 13, 14, 15

*Klein v. Chevron, U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) .......... 23

*Kwikset Corp. v. Super. Ct.,*
51 Cal. 4th 310 (2011) .......... 23

*La. Revitalization Fund, LLC v. Starr Surplus Lines Ins. Co.*,
2024 WL 1337617 (S.D.N.Y. Mar. 27, 2024) .......... 6

*Lange v. Monster Energy Co.*,
46 Cal. App. 5th 436 (2020) .......... 12

*Lawrence v. NYC Med. Prac., P.C.*,
2023 WL 4706126 (S.D.N.Y. July 21, 2023) .......... 8

*Mandel v. Liebman*,
303 N.Y. 88 (1951) .......... 7

*Martinez v. D2C, LLC*,
2023 WL 6587308 (S.D. Fla. Oct. 10, 2023) .......... 19

*Medtronic, Inc. v. Walland*,
2021 WL 4131657 (S.D.N.Y. Sept. 10, 2021) .......... 5

*Ministers & Missionaries Benefit Board v. Snow*,
26 N.Y.3d 466 (2015) .......... 4, 5, 6, 10

*Nayal v. HIP Network Servs. IPA, Inc.*,
620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......... 7

*Olmsteadv. Dell, Inc.*,
533 F. Supp. 2d 1012 (N.D. Cal. 2008) .......... 14

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .......... 19

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
41 N.Y.3d 462 (2024) .......... 1, 6

*Pilon v. Discovery Commc'ns, LLC*,
2025 WL 752244 (S.D.N.Y. Mar. 10, 2025) .......... 7

*Preiser v. Newkirk*,
422 U.S. 395 (1975) .......... 18

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010) .......... 8

*Roman v. Superior Ct.*,
172 Cal. App. 4th 1462 (2009) .......... 12, 13

*Salazar v. Nat'l Basketball Ass'n*,
118 F.4th 533 (2d Cir. 2024) .......... 21

*Saliba v. Five Towns Coll.*,
991 F. Supp. 2d 449 (E.D.N.Y. 2014) .......... 17

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) .......... 15, 16

*Smith v. Trinity Broad. of Tex., Inc.*,
2024 WL 4394557 (C.D. Cal. Sept. 27, 2024) .......... 20

*Sonico v. Charter Commc'ns*, LLC,
2021 WL 268637 (S.D. Cal. Jan. 27, 2021) .......... 12

*State v. Wolowitz*,
468 N.Y.S.2d 131 (App. Div. 1983) ..... 7

*Suski v. Marden-Kane., Inc.*,
2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ..... 14

*Terwilliger v. Terwilliger*,
206 F.3d 240 (2d Cir. 2000) ..... 4

*TGG Ultimate Holdings, Inc. v. Hollett*,
2017 WL 1019506 (S.D.N.Y. Feb. 24, 2017) ..... 5

*Treiber v. Aspen Dental Mgmt., Inc.*,
635 F. App'x 1 (2d Cir. 2016) ..... 17

*Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*,
88 F. Supp. 3d 1156 (S.D. Cal. 2015) ..... 10, 11

*U1it4Less, Inc. v. Fedex Corp.*,
2015 WL 3916247 (S.D.N.Y. June 25, 2015) ..... 9

*United States ex rel. Fallon v. Bell Transit Corp.*,
2021 WL 3665898 (N.D. Cal. Aug. 18, 2021) ..... 24

*Wash. Mut. Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) ..... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..... 24

*Zerman v. Ball*,
735 F.2d 15 (2d Cir. 1984) ..... 4

**Statutes**

18 U.S.C. § 2710(a)(1) ..... 21

18 U.S.C. § 2710(a)(3) ..... 17

Cal. Civ. Code § 1761(d) ..... 22

Cal. Civ. Code § 1770(a)(1) ..... 23

Cal. Civ. Code § 1799.3 ..... 24

**Rules**

Fed. R. Civ. P. 12(b)(1) ..... passim

Fed. R. Civ. P. 12(b)(6) ..... passim

Fed. R. Civ. P. 12(f) ..... passim

## INTRODUCTION

Plaintiffs do not dispute that they agreed to and are bound by MLB Advanced Media, L.P.'s ("MLBAM's") 2024 Terms of Use Agreement ("TOU").[1] Nor do Plaintiffs dispute that the TOU contains a choice-of-law clause requiring the application of New York law and an unambiguous class-action waiver. Yet Plaintiffs insist they can maintain their class claims and California state-law claims in violation of the parties' contract. Plaintiffs are mistaken. New York courts routinely enforce choice-of-law clauses and class-action waivers like those in the TOU. Based on these provisions, and the pleading deficiencies MLBAM identified, the Court should strike the class allegations under Federal Rule of Civil Procedure 12(f) and dismiss Plaintiffs' individual Video Privacy Protection Act ("VPPA") and California law claims under Rules 12(b)(6) and 12(b)(1).

The TOU's class-action waiver bars Plaintiffs from maintaining their class claims. Despite Plaintiffs' attempts to confuse the issue, the analysis is simple. The Court should first determine that New York law applies. Plaintiffs do not dispute that the TOU's choice-of-law clause calls for the application of New York law "without regard to conflict of laws principles," (TOU § 12), but they nevertheless argue that New York courts may decline to enforce the parties' choice of law based on another state's public policy interests. They are incorrect. As New York's highest court reiterated just last year, when a contract contains a New York choice-of-law clause, courts do "not conduct a conflict-of-laws analysis." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 41 N.Y.3d 462, 474 (2024) (quotation omitted). An equally straightforward analysis requires enforcing the class-action waiver. Settled New York law forecloses Plaintiffs' argument that the class-action waiver is unconscionable—the only argument they make against enforceability.

[1] MLBAM's February 6, 2024 TOU is attached as Exhibit A to 3/13/25 MLBAM's Superseding Memorandum of Law ("Mem."). (*See* Mem. at 5 n.2, ECF No. 62.)

Although the Court need not consider California law at any point in the analysis, the class-action waiver is enforceable under California law. California courts uphold a choice-of-law clause unless it violates a fundamental California policy, and applying New York law would not violate any fundamental California policy. ***First***, Plaintiffs argue that the class-action waiver violates the rule of *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), but as shown in MLBAM's opening brief, the class-action waiver is enforceable under *Discover Bank*. ***Second***, Plaintiffs argue that applying New York law would cause them to waive unwaivable rights under California's Consumer Legal Remedies Act ("CLRA"), but as demonstrated in MLBAM's opening brief, the CLRA claims are transparently deficient and should be dismissed. With no CLRA claims remaining, no unwaivable rights are at stake. ***Third***, Plaintiffs claim that enforcing the choice-of-law clause would waive their right to a jury trial in violation of California law. Not so. The jury-trial waiver explicitly limits its reach to the "extent permitted by applicable law," (TOU § 11), so if California law applies at all, the jury-trial waiver would not apply to the California-based Plaintiffs. And even if the jury-trial waiver did apply to these Plaintiffs, California law would instruct the Court to sever it from the parties' contract, then enforce the remainder of the TOU, including the choice-of-law clause. Therefore, even if the Court evaluates the choice-of-law clause under California law, that clause is enforceable, and New York law applies; the class-action waiver would then be given effect under New York law. Further, even if the Court applies California law to the class-action waiver, it should hold that the waiver is enforceable under *Discover Bank*.

In other words, no matter which path the Court takes in its analysis, the destination is the same: the class-action waiver is enforceable. Plaintiffs make no argument that striking class allegations now is premature. The Court should therefore enforce the waiver the parties agreed to and strike the class allegations under Rule 12(f).

Plaintiffs also fail to refute MLBAM's arguments for dismissing their individual VPPA claims under Rules 12(b)(6) and 12(b)(1). Plaintiffs do not cite a single case showing that they pleaded a qualifying "disclosure" under the VPPA. To the contrary, the complaint's lack of factual allegations showing a disclosure of Plaintiffs' own information means they not only fail to state a VPPA claim but also lack Article III standing. Plaintiffs also fail to allege that their Facebook profiles contain any publicly visible information. As multiple courts have held, this is a fatal pleading defect. It means Plaintiffs have not plausibly pleaded that their Facebook IDs ("FIDs"), numeric identifiers tied to their individual Facebook profiles, would allow an ordinary person to identify them. This is required for FIDs to constitute "personally identifiable information" ("PII") under the VPPA. Finally, Plaintiffs' opposition ignores MLBAM's key point on the VPPA's "consumer" element: that their alleged registrations on MLB.com fail to qualify them as "consumers" under the VPPA. As the Second Circuit has explained, a VPPA plaintiff must allege that he received a recurrent benefit, such as a newsletter, to qualify as a "consumer." Plaintiffs do not do so. For all these reasons, Plaintiffs' VPPA claims fail under Rules 12(b)(6) and 12(b)(1).

Likewise, Plaintiffs' California claims all suffer fatal deficiencies. Crucially, Plaintiffs do not dispute that these claims cannot be brought at all if the choice-of-law clause in the TOU is enforceable. Because that clause is enforceable, these claims should be dismissed. Further, Plaintiffs do not refute many of MLBAM's grounds for dismissing each of these claims on the merits. Plaintiffs instead rely on their vague allegation about supposed payments for unidentified "subscription fees" to support their CLRA, California's Unfair Competition Law ("UCL"), and Cal. Civ. Code § 1799.3 ("§ 1799.3") claims. But without supporting factual content, these bare allegations do not suffice—let alone rescue these claims from the many other arguments MLBAM has identified for their dismissal. As for their CIPA claims, Plaintiffs cite cases that involved

information sharing well beyond the information allegedly shared here, which is not "contents" of "communications" protected by the statute. All the California claims thus fail as a matter of law.

## ARGUMENT

### I. The Court should strike Plaintiffs' class allegations because the class-action waiver is enforceable.

Plaintiffs do not dispute that if the class-action waiver is enforceable, the Court should strike their class allegations now under Rule 12(f). (*See* 3/20/25 Pls.' Opp'n ("Opp'n") at 5–15, ECF No. 66.) Plaintiffs argue only that the class-action waiver is unenforceable under California law, which they say applies, or under New York law because it is unconscionable. (*See id.* at 5.) But New York—not California—law governs here based on the TOU's choice-of-law clause. And New York courts uniformly hold that class-action waivers are not unconscionable. Although the Court need not consider choice of law or unconscionability under California law, should it do so, the result would not change: Plaintiffs agreed to waive their right to bring their claims as a class action, so the Court should strike their class allegations under Rule 12(f).

#### a. Binding New York law requires enforcing the parties' choice of law without considering the public policy of California.

As MLBAM's opening brief explained, "choice of law provisions" like the one in the TOU "are valid and enforceable." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000); (Mem. at 30). New York's highest court held a decade ago in *Ministers & Missionaries Benefit Board v. Snow* that when a contract contains a choice-of-law clause, a choice-of-law analysis is unnecessary because "logic dictates that, by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply." 26 N.Y.3d 466, 467 (2015); (Mem. at 30). This binding precedent should end the choice-of-law analysis: New York law governs.

While acknowledging the "great deference" courts give to choice-of-law clauses, (*see* Opp'n at 6 (quoting *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984)), Plaintiffs argue, contrary to

binding precedent, that they can avoid their agreement to New York law. They assert that courts may disregard the parties' choice of law if "(1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute." (*Id.* (quoting *E. Cap. Invs. Corp. v. GenTech Holdings, Inc.*, 590 F. Supp. 3d 668, 677 (S.D.N.Y. 2022)).) But *East Capital* did not cite the controlling *Ministers* opinion; it relied instead on a nonbinding decision predating *Ministers*. 590 F. Supp. 3d at 677 (quoting *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006)).[2] Because *East Capital* did not apply the correct standard, this Court should not follow it.

Plaintiffs also incorrectly argue that after *Ministers*, courts must continue to evaluate other states' public policy interests even where a contract contains a choice-of-law clause. (*See* Opp'n at 6 (citing *Medtronic, Inc. v. Walland*, No. 21 CIV. 2908 (ER), 2021 WL 4131657, at *4–6 (S.D.N.Y. Sept. 10, 2021)).) Despite *Ministers*' express statement that "New York courts should not engage in ***any*** conflicts analysis where the parties include a choice-of-law provision in their contract," 26 N.Y.3d at 474 (emphasis added), *Medtronic* held that courts must still consider whether the parties' choice of law violates the public policy of another state, 2021 WL 4131657, at *5. Relying on a nonprecedential Second Circuit order, *Medtronic* reasoned that *Ministers* "did not have cause to address the status of prior law recognizing that the parties' choice of law must yield to a conflicting law reflecting the fundamental public policy of a state with a materially greater interest in the dispute than the chosen state." *Id.* (cleaned up); *see id.* at *6 (noting a split among district courts on this issue).

---

[2] *East Capital* also cited *TGG Ultimate Holdings, Inc. v. Hollett*, No. 16 CIV. 6289 (VM), 2017 WL 1019506, at *4 (S.D.N.Y. Feb. 24, 2017), which likewise does not discuss *Ministers*. *See E. Cap.*, 509 F. Supp. 3d at 677.

Even if there were uncertainty on this point when *Medtronic* was decided, New York's highest court later settled the question. In 2024, the New York Court of Appeals reiterated that "[t]he inclusion of a New York choice-of-law clause in a contract demonstrates the parties' intent that 'courts not conduct a conflict-of-laws analysis.'" *Petróleos*, 41 N.Y.3d at 474 (quoting *Ministers*, 26 N.Y.3d at 468). The presence of a such a clause "'obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives,' unless the parties or the [New York] legislature clearly express a contrary intent." *Id.* (quoting *Ministers*, 26 N.Y.3d at 468). Thus, as courts in this District have explained, "[e]ven if *Ministers* left open the possibility that a court could engage in a conflict-of-law analysis" in certain circumstances, "*Petróleos de Venezuela* forecloses such an analysis." *La. Revitalization Fund, LLC v. Starr Surplus Lines Ins. Co.*, No. 23-CV-1006 (VSB) (VF), 2024 WL 1337617, at *5 (S.D.N.Y. Mar. 27, 2024) (citing *Medtronic* as one case applying the outdated analysis); *see also, e.g.*, *Cajun Conti, LLC v. Star Surplus Lines Ins. Co.*, No. 23 CIV. 8844 (KPF), 2025 WL 764131, *5 (S.D.N.Y. Mar. 11, 2025) ("Under [the *Ministers* and *Petróleos*] line of cases, the Court is obligated to enforce the . . . choice-of-law clause and apply New York law, without consideration of a conflict-of-laws analysis.").

Under *Ministers* and *Petróleos*, therefore, a party to a choice-of-law clause must rely on a provision of New York law or a term in the contract itself to argue that some other forum's law applies. For example, *Petróleos* applied a New York statute to determine whether a different jurisdiction's law would apply. *See* 41 N.Y.3d at 467, 474. Plaintiffs here, in contrast, do not argue that any New York statute requires the application of California law or dispute that the TOU itself calls for the application of New York law "without regard to conflicts of laws principles." (TOU § 12; *see* Opp'n at 6–10.) Instead, they argue only that applying New York law would violate California public policy. (Opp'n at 7–10.) But after *Ministers* and *Petróleos*, "New York courts

now refuse to consider the public policy of foreign states—including California—to overturn an otherwise valid contractual choice of law provision." *Pilon v. Discovery Commc'ns, LLC*, No. 24-CV-4760 (JPO), 2025 WL 752244, at *10 (S.D.N.Y. Mar. 10, 2025) (cleaned up). Because New York law requires the Court to disregard arguments—like Plaintiffs'—that are based on California policy, the Court should hold that the New York choice-of-law clause is enforceable.

**b. The class-action waiver is enforceable under New York law.**

Based on a straightforward application of New York law, which applies based on the enforceable choice-of-law clause, the class-action waiver is not unconscionable. As MLBAM's opening brief explained, courts applying New York law "have ***uniformly held*** that class action waivers are not unconscionable." (Mem. at 14 (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009)) (emphasis added); *accord*, *e.g.*, *Carovillano v. Sirius XM Radio Inc.*, No. 23 CIV. 4723 (PAE), 2024 WL 3460040, at *8 n.6 (S.D.N.Y. July 18, 2024) (enforcing class-action waiver).) Because Plaintiffs cite no authority for departing from this uniform precedent, the Court can simply apply this line of cases and hold that the class-action waiver in the TOU is not unconscionable.

But the result would be the same if the Court conducts its own unconscionability analysis. Courts will refuse to enforce a contract under New York law only if it "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (quoting *Mandel v. Liebman*, 303 N.Y. 88, 94 (1951)). Procedural unconscionability relates to "the contract formation process and the alleged lack of meaningful choice," while substantive unconscionability "looks to the content of the contract, per se." *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (App. Div. 1983). Plaintiffs must show that the class-action waiver is both procedurally ***and*** substantively unconscionable to avoid the parties' contract. *Gillman*, 73 N.Y.2d

at 10; (*see* Opp'n at 13–14 (conceding that showing both types of unconscionability is necessary)). Because Plaintiffs can show neither, the Court should enforce the class-action waiver.

**Procedural unconscionability.** Plaintiffs incorrectly argue that the TOU being offered "on a 'take-it-or-leave it' basis" and the fact that Plaintiffs needed to read the terms of the contract to understand it makes the class-action waiver procedurally unconscionable. (*See* Opp'n at 14.) They cite no case finding procedural unconscionability based on similar factors, (*see id.*), and precedent refutes Plaintiffs' arguments. The Second Circuit has held that offering a contract "on a 'take it or leave it' basis . . . is not sufficient under New York law to render the [contract] procedurally unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) (cleaned up). And as to Plaintiffs' argument that they could not easily see and understand the class-action waiver, the very first line of the TOU is a bolded, all-capital instruction to "**PLEASE READ THESE TERMS . . . CAREFULLY**," and Plaintiffs acknowledge that "Class Action Waiver" appears "bolded at the top of the TOU." (Opp'n at 14; *see* TOU, Introduction.) "That clear, all-caps language significantly militates against finding the [class-action waiver] to be procedurally unconscionable." *See Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649-GHW, 2023 WL 4706126, at *11 (S.D.N.Y. July 21, 2023). And Plaintiffs' failure to argue other procedural unconscionability factors "reinforce[s] the conclusion" that the TOU is not procedurally unconscionable. *See id.*

**Substantive unconscionability.** The Court need not analyze substantive unconscionability because the class-action waiver is not procedurally unconscionable, *Gillman*, 73 N.Y.2d at 10; (*see* Opp'n at 13–14 (conceding requirement to show both factors)), but if the Court does, it should hold that the class-action waiver is not substantively unconscionable. Plaintiffs argue that "the class waiver is purely a loss to the consumer and a powerful gain for the Defendant" and that a

class-action waiver is unenforceable if not accompanied by an arbitration agreement. (Opp'n at 15.) They cite no New York authority for either proposition, however, (*see id.*), and New York law forecloses their arguments. First, the class-action waiver applies to both "parties," "you and MLB." (*See* TOU § 11.) Contract terms that "bind both parties equally" are not substantively unconscionable under New York law. *See Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 357 (S.D.N.Y. 2020) (cleaned up) (upholding class-action waiver on this basis).

Second, Plaintiffs argue that there is a difference between "the validity of a class action waiver within an arbitration agreement" and the validity of "a standalone class action waiver," (Opp'n at 12–13), but no such distinction exists. *U1it4Less, Inc. v. Fedex Corp.*, which Plaintiffs cite for this supposed distinction, confirms that New York law treats both types of waivers identically: "[n]othing . . . suggests that class action waivers contained in a provision also containing an arbitration agreement should be treated as more sacrosanct than waivers in context of a contract without an arbitration agreement." No. 11-CV-01713 KBF, 2015 WL 3916247, *4 (S.D.N.Y. June 25, 2015) (upholding standalone waiver); (*see* Opp'n at 13). As the *Hahn* decision cited in MLBAM's opening brief explains, "[i]f it is not unconscionable to force a plaintiff into individual suit in an arbitration, it is unclear why there would be something unconscionable about doing the same outside of arbitration." *Hahn v. JetBlue Airways Corp.*, No. 21-CV-6867 (CBA) (LB), 2022 WL 22908406, *7 (E.D.N.Y. Aug. 25, 2022); (*see* Mem. at 14 (citing *Hahn*)). The class-action waiver is thus not substantively unconscionable under New York law.

Because Plaintiffs' only argument for avoiding enforceability under New York law fails, the Court should enforce the class-action waiver.

**c. Although California law does not apply, the choice-of-law clause and class-action waiver are also enforceable under California law.**

Plaintiffs ask this Court to engage in a conflict-of-laws analysis despite their agreement

that New York law would apply "without regard to conflict of laws principles." (TOU § 12.) But as explained above, New York law precludes considering other states' public policy to determine whether to enforce a choice-of-law clause. *See Ministers*, 26 N.Y.3d at 467; (*supra* section I.a.) The Court should therefore disregard Plaintiffs' arguments about California public policy, (*see* Opp'n at 7–10), and enforce the parties' contractual choice of New York law. If, however, the Court analyzes whether the choice-of-law clause would be enforceable under California law, it still should find the choice-of-law clause enforceable. (*See* Mem. at 30–31.) And if the Court considers whether the class-action waiver itself is enforceable under California's *Discover Bank* test, the Court should hold that it is. (*See id.* at 15–17.)

**1. Even if California law applies, the choice-of-law clause is enforceable.**

Like New York, California law reflects a strong public policy in favor of enforcing choice-of-law provisions. *See Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 466 (1992); (Mem. at 30). Plaintiffs do not dispute the "reasonable basis" for applying New York law here, (Opp'n at 6), so the choice-of-law clause is enforceable under California law unless applying New York law would be contrary to a "fundamental policy" of California. *See Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88 F. Supp. 3d 1156, 1166 (S.D. Cal. 2015) (quoting *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 917 (2001)).

Plaintiffs incorrectly argue that applying the parties' choice of New York law would violate California public policy against certain waivers of class-action procedures, CLRA rights, or jury-trial rights. (*See* Opp'n at 7–10.) Because none of these issues precludes enforcing the choice-of-law clause, the Court should enforce the clause and hold that New York law applies.

**i. The class-action waiver does not violate California public policy.**

First, Plaintiffs argue that the TOU's choice-of-law clause violates California public policy against certain class-action waivers. (*See* Opp'n at 9–12.) But as MLBAM explained in its opening

brief, the class-action waiver is enforceable under the *Discover Bank* test. (*See* Mem. at 15–17.) Plaintiffs try to escape this conclusion by arguing that the Court should consider the amount of damages for each claim individually and arguing that MLBAM's adoption of a class-action waiver is itself a scheme to cheat consumers, (*see* Opp'n at 10–12), but California law rejects these positions, as explained below, (*see infra* section I.c.2). Because the class-action waiver would be enforceable even if California law applied, it is not a fundamental public policy that would prevent enforcement of the choice-of-law clause. *See Tri-Union*, 88 F. Supp. 3d at 1166; (Mem. at 30–31).

**ii. Plaintiffs' CLRA claims do not preclude enforcement of the choice-of-law clause because they are facially deficient.**

Plaintiffs next argue, incorrectly, that alleging a CLRA violation in addition to their other claims precludes enforcing the parties' contractual agreement that New York law governs this dispute. (*See* Opp'n at 8–9.) As explained in MLBAM's opening brief and below, Plaintiffs' CLRA claims do not come close to alleging plausible relief and instead simply parrot the language of the statute. (*See* Mem. at 34–35; *infra* at 23–24.) Plaintiffs added these claims by amendment, with the apparent purpose of trying to defeat enforceability of the choice-of-law clause. (*Compare* Class Action Complaint, ECF No. 1, *with* Amended Class Action Complaint ("Am. Compl.") (adding CLRA claims), ECF No. 12.) Plaintiffs should not be permitted to defeat enforceability of the choice-of-law clause they agreed to by belatedly asserting facially deficient claims. MLBAM is not attempting to "sidestep" the CLRA, as Plaintiffs suggest, (*see* Opp'n at 9)—it is asking the Court to evaluate the CLRA claims' merits, dismiss these claims, and enforce the parties' agreement that New York law governs this dispute.

**iii. If the Court applies California law, the conditional jury-trial waiver does not prevent enforcing of the rest of the TOU.**

Finally, Plaintiffs argue that the TOU's jury-trial waiver prevents the Court from enforcing the choice-of-law clause because civil jury trial rights cannot be waived under California law. (*See*

Opp'n at 7–9.) But the waiver in the TOU here applies only to the "extent permitted by applicable law." (*See* TOU § 11.) As California public policy does not permit pre-dispute jury-trial waivers by California residents, should the Court determine that California, rather than New York, law applies here, the jury-trial waiver would, by its terms, not apply to Plaintiffs or other putative class members who reside in California. The jury waiver is distinguishable from provisions that "irrevocably waive any and all rights to trial by jury," and would not prevent enforcement of the rest of the TOU. *See, e.g.*, *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 451–52 (2020).

Even if the Court applied California law and found the jury-trial waiver provision contrary to California policy, the proper remedy would be to sever that provision as to Plaintiffs—while still enforcing the class-action waiver. The TOU provides that "[i]f any term in" the TOU "is declared . . . for any reason unenforceable by any court, then such term will be deemed severable from the remaining terms and will not affect the validity and enforceability of such remaining terms." (TOU § 13.) California's "strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1477–78 (2009) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 122 (2000)). Courts sever the unenforceable term unless the "agreement is 'permeated' by unconscionability," *id.* (quoting *Armendariz*, 24 Cal. 4th at 122), which Plaintiffs do not show. *See also Sonico v. Charter Commc'ns*, *LLC*, No. 19-CV-01842-BAS-LL, 2021 WL 268637, at *13 (S.D. Cal. Jan. 27, 2021) (severing jury-trial waiver because that was only unenforceable term).

* * *

Because New York law applies without regard to choice-of-law principles, the Court need not even consider the implications of California policy considerations on the enforceability of the TOU's choice-of-law clause. (*See supra* section I.a.) But if it does, the Court should sever the jury-

trial waiver from the TOU as to Plaintiffs and enforce the remainder of the TOU, including the choice-of-law clause selecting New York law. *See Roman*, 172 Cal. App. 4th at 1477–78. And under New York law, the Court should reject Plaintiffs' unconscionability challenge to the class-action waiver for the reasons explained above. (*See supra* section I.b.)

**2. The class-action waiver is enforceable under the *Discover Bank* test.**

If the Court applies California law to determine the enforceability of the class-action waiver notwithstanding the parties' choice of New York law, the Court still should enforce that waiver. As MLBAM's opening brief showed, the TOU's class-action waiver is enforceable under the three-part *Discover Bank* rule. (Mem. at 15–17.) This test examines three factors: (1) whether the agreement is "a consumer contract of adhesion"; (2) whether the agreement occurs "in a setting in which disputes between the contracting parties predictably involve small amounts of damages"; and (3) whether "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Jeong v. Nexo Cap. Inc.*, No. 21-CV-02392-BLF, 2023 WL 2717255, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *Discover Bank*, 36 Cal. 4th at 162–63). As MLBAM explained, whether or not the TOU is treated as a contract of adhesion, factors two and three make clear that the class-action waiver here is not unconscionable under *Discover Bank*. (*See* Mem. at 16–17.) Plaintiffs fail to refute MLBAM's analysis on these factors.

**Factor two: Small amounts of damages.** As MLBAM's opening brief noted and Plaintiffs do not dispute, each Plaintiff seeks at least $8,500 in damages from MLBAM. (Mem. at 16; *see* Am. Compl. at Prayer for Relief ¶¶ 7–8.) In fact, Plaintiffs allege that even more money is at stake because they seek damages for each alleged instance of a statutory violation, plus attorneys' fees.

(*See id.* at Prayer for Relief ¶¶ 7–9.)[3] Thus, even a conservative estimate of the amount in controversy here far exceeds the "well under $1,000" in damages in the case on which Plaintiffs rely to claim minimal damages are at issue. *See Suski v. Marden-Kane., Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at *5 (N.D. Cal. Aug. 31, 2022); (Am. Compl. ¶ 17 n.1 (citing *Suski*, 2022 WL 3974259, at *4–5)).

Plaintiffs cite no case finding a minimum of $8,500 per plaintiff to be such a small amount of damages that a class-action waiver was unenforceable. (*See* Opp'n at 10–11.) They note that the *Olmstead v. Dell, Inc.* case cited by MLBAM did not specifically note how much each plaintiff demanded. (*Id.* at 11 (citing 533 F. Supp. 2d 1012, 1040 (N.D. Cal. 2008)).) But MLBAM cited *Olmstead* for its reasoning rejecting that "$4000 . . . constitute[s] a small amount of damages" under *Discover Bank*. *See* 533 F. Supp. 2d at 1040; (Mem. at 16). Plaintiffs' alleged damages here are more than twice that amount.

Because Plaintiffs can find no case holding that a comparable amount of damages satisfies the second *Discover Bank* factor, they say the Court should ask whether each claim "if brought on [its] own" would involve enough damages to make the waiver enforceable. (*See* Opp'n at 11.) But this is not how courts evaluate the amount of damages under *Discover Bank*. Instead, courts consider the full amount each plaintiff seeks to recover. In *Jeong*, the court refused to "isolate [one] portion" of a claim for purposes of *Discover Bank* because "the concerns underlying the *Discover Bank* test do not support [the] proposal to isolate certain claims." 2023 WL 2717255, at *5. The court noted that "[t]he policy" justifying the existence of the class action "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo

---

[3] MLBAM does not concede that this is the proper way to calculate damages, but Plaintiffs cannot simultaneously demand a separate statutory damages award for each video they allegedly watched and argue that their claims are worth so little money that *Discover Bank* factor two applies.

action prosecuting his or her rights." *Id.* (quoting *Discover Bank*, 36 Cal. 4th at 156–57). So courts should "analyz[e] the total amount of damages an individual may recover in the prosecution of his action, not the amount of damages that individual may seek in relation to a single claim." *Id.* (holding that $1,600 in liquidated damages did not satisfy *Discover Bank* factor two because plaintiff also sought other categories of damages); *see also, e.g.*, *Dalie v. Pulte Home Corp.*, No. CV S-08-337 LKK/GGH, 2009 WL 10691187, at *7 (E.D. Cal. Apr. 29, 2009) (enforcing class-action waiver when plaintiffs sought a few hundred dollars in actual damages, plus "treble damages for their first cause of action and punitive and exemplary damages"). Like an attorney deciding whether to file a lawsuit, the Court should consider the entire potential recovery, not whether each claim alone would warrant bringing the case. *See Jeong*, 2023 WL 2717255, at *7.

Because the damages claimed by each Plaintiff here—at minimum $8,500 per Plaintiff, likely more—are not a "small amount[] of damages" under *Discover Bank* factor two, this factor supports enforcing the class-action waiver. (*See* Mem. at 16.) The Court therefore need not consider the third factor. *See Jeong*, 2023 WL 2717255, at *6 (citing *Arguelles-Romero v. Superior Ct.*, 184 Cal. App. 4th 825, 844–45 (2010)) (stopping the analysis after factor two).

**Factor three: Scheme to deliberately cheat consumers.** MLBAM's opening brief noted that Plaintiffs allege no facts suggesting that MLBAM engaged in a "scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 984 (9th Cir. 2007) (cleaned up); (*see* Mem. at 16–17). Plaintiffs cannot point to any facts in the complaint either, so they argue that the class-action waiver "itself is . . . designed to cheat consumers out of small sums of money." (Opp'n at 12 (emphasis omitted).) Plaintiffs cite no case that treats a class-action waiver itself as a scheme to cheat consumers, (*see id.*), and *Discover Bank* itself forecloses this circular argument. Cases

applying factor three address schemes to cheat customers ***separate from*** the class-action waiver itself. *See, e.g.*, *Discover Bank*, 36 Cal. 4th at 154 (charging late fees for payments received on due date but after undisclosed cutoff time); *Shroyer*, 498 F.3d at 984 (falsely stating that services would be improved only if customers agreed to contract extensions). Because Plaintiffs do not allege any separate scheme by MLBAM, this factor favors enforcing the class-action waiver. (*See* Mem. at 16.)

Thus, even under California law, which does not apply for the reasons already explained (*supra* section I.a), the Court should find the class-action waiver enforceable. (Mem. at 15–17.)

* * *

In sum, no matter how the Court slices it, the TOU's class-waiver provision applies here. First, it applies under a straightforward application of the TOU's terms and New York law. (*Supra* section I.a–b.) Second, even if the Court applies California law to determine the enforceability of the choice-of-law clause, it should enforce the choice-of-law clause and find the class-action waiver enforceable under New York law. (*See supra* section I.c.1.) Finally, even if the Court concludes that California law controls whether the class-action waiver is enforceable, the Court should find the waiver enforceable under *Discover Bank*. (*See supra* section I.c.2.) Whether New York or California law applies, the class-action waiver is enforceable.

**d. Because the class-action waiver is enforceable, it is undisputed that the Court should strike Plaintiffs' class allegations now.**

MLBAM's motion to strike class allegations is ripe because it raises a question of contract interpretation distinct from class certification. (*See* Mem. at 17–20.) Plaintiffs do not argue that MLBAM's motion is premature or make any other argument for delaying enforcement of the class-action waiver to another stage of the case. (*See generally* Opp'n.) Therefore, the Court should strike Plaintiffs' class allegations now under Rule 12(f).

## II. The Court should dismiss Plaintiffs' VPPA claims because Plaintiffs fail to state a claim and lack standing.

### a. Plaintiffs fail to allege disclosures of *their* information.

Plaintiffs' complaint falls short of Rule 12(b)(6) and Rule 12(b)(1) standards because it does not include factual allegations that Plaintiffs' information in particular was disclosed. (*See* Mem. at 20–24.) Plaintiffs do not point to a single factual allegation that any specific disclosure occurred. Instead, Plaintiffs rely on conclusory allegations and distinguishable case law that does not support standing under Rule 12(b)(1) or show that they state a claim under Rule 12(b)(6).

***First***, Plaintiffs attempt to cast their conclusory allegations as the factual ones required to satisfy pleading standards under Rule 12(b)(6) and support standing under Rule 12(b)(1). Plaintiffs point to their identical allegations that "[e]ach time Plaintiff [] requested or obtained specific video materials or services from the Website," the Meta Pixel "simultaneously disclosed Plaintiff['s] FID and the specific video materials or services . . . requested or obtained." (Opp'n at 16 (alterations in original) (emphasis omitted) (quoting Am. Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126).) But these allegations merely echo the statute. *Compare* (Am. Compl. ¶¶ 46, 56, 66, 76, 86, 96, 106, 116, 126), *with* 18 U.S.C. § 2710(a)(3) (defining "personally identifiable information" as "identif[ying] a person as having ***requested or obtained specific video materials or services***" (emphasis added)). These boilerplate recitations of "the elements of a claim" do not suffice under Rule 12(b)(6). *See Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 451 (E.D.N.Y. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Likewise, allegations that are "wholly conclusory and unsupported by any facts [are] insufficient to support standing" under Rule 12(b)(1). *Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 3 (2d Cir. 2016).

Plaintiffs then point to their general allegation about how the Meta Pixel—the website tool they claim is responsible for the purported disclosure of users' data—allegedly functions. (*See*

Opp'n at 16 (citing Am. Compl. ¶ 36).) But this allegation supports only a request for an advisory opinion based "upon a hypothetical state of facts" about the Meta Pixel, which the Court cannot provide. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (cleaned up); (*see also* Mem. at 23–24). As MLBAM explained, Plaintiffs' allegations are akin to claiming that a Blockbuster officer manager is capable of sending an individual's rental history to the New York Times, without any allegations that any manager actually did so. (*See* Mem. at 23.) Plaintiffs say their allegations instead "are analogous to Blockbuster, hypothetically, pulling an individual's rental history and sending it to the New York times *as a matter of course* from which it does not deviate." (*See* Opp'n at 17.) But nowhere do Plaintiffs allege that MLBAM has an across-the-board business practice that resulted in the transmission of Plaintiffs' information, and Plaintiffs themselves acknowledge that their allegations are "hypothetical[]." (*See id.*)

Plaintiffs also fail to engage with MLBAM's on-point authority. (*See id.* at 16–17.) They ignore *Beagle v. Amazon.com, Inc.*, where the court reasoned, just like MLBAM argues here, that a VPPA complaint must contain factual allegations showing "that a disclosure had affirmatively taken place," not just allegations consistent with "the mere possibility that information could be disclosed." No. C24-03136JLR, 2024 WL 4028290, at *3 (W.D. Wash. Sept. 3, 2024) (cleaned up). Like in *Beagle*, Plaintiffs lack factual allegations showing that MLBAM affirmatively disclosed their data. Their allegations, which are consistent only with the "mere possibility" of a disclosure, are insufficient. *See id.*; (*see also* Mem. at 21–24).

***Second***, the cases Plaintiffs do cite are distinguishable. None of the cases on which Plaintiffs rely addresses the argument MLBAM raises here: that Plaintiffs fail to plausibly allege any disclosures of their data occurred ***at all***. Instead, these cases address failures to allege the titles of specific videos. For example, in *Fan v. NBA Properties, Inc.*, the court rejected the defendant's

argument that a VPPA plaintiff must "disclose the title of the specific videos that he purchased." No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024). The court in *Martinez v. D2C, LLC*, rejected the same argument. No. 23-21394, 2023 WL 6587308, at *3 (S.D. Fla. Oct. 10, 2023). And the court in *Ambrose v. Boston Globe Media Partners, LLC*, similarly found that plaintiff adequately alleged "information about the videos [he] accessed." No. 21-10810-RGS, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022). By contrast, Plaintiffs' complaint here lacks not just the names of any videos they watched, but ***any*** factual allegations supporting a disclosure of their individual information.

Instead of squarely addressing MLBAM's argument, Plaintiffs cite cases analyzing an issue MLBAM does not raise: whether a VPPA plaintiff must plead additional harm beyond the "intangible" harm resulting from the alleged "disclosure of legally protected information" to have standing. (*See* Opp'n at 17 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016), and citing *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340–41 (11th Cir. 2017)).) The issue here, by contrast, is that Plaintiffs have not adequately alleged the "disclosure of personal information" itself, making these cases inapposite. *See Perry*, 854 F.3d at 1341 (finding standing but affirming dismissal under Rule 12(b)(6) for failure to plead key VPPA element).

Whether for lack of standing or failure to state a claim, the absence of any factual allegations showing disclosure of Plaintiffs' information means they cannot sustain a VPPA claim.

**b. Plaintiffs fail to allege that their social-media profiles are publicly visible.**

Plaintiffs' VPPA claims also fail under Rule 12(b)(6) because they have not alleged that their Facebook profiles are publicly visible. Without this allegation, Plaintiffs do not plausibly plead that purported disclosures of their FIDs would reveal PII, as required to state a VPPA claim. (*See* Mem. at 24–27.)

Plaintiffs do not contest that they fail to allege that their Facebook profiles are publicly visible. (*See* Opp'n at 17–18.) Instead, Plaintiffs point to their allegations that "a person can be personally identified by their Facebook account" and that "an FID can be used to identify and view the associated Facebook profile." (*Id.* (quoting Am. Compl. ¶¶ 26, 28 (emphasis omitted)).) These allegations describe what a generic Facebook profile contains—not whether ***Plaintiffs' own*** Facebook profiles are publicly visible such that their FIDs could be used to find their PII as courts have required to state a claim. (*See* Mem. at 24–25.) Plaintiffs also identically allege that "each Plaintiff's Facebook profile is associated with [Plaintiff's] real (legal) name and email address." (Am. Compl. ¶¶ 45, 55, 65, 75, 85, 95, 105, 115, 125; *see* Opp'n at 17–18.) But nowhere do they allege that their names or email addresses are ***publicly visible***, as they must to state a VPPA claim. (*See* Mem. at 24–25.)

Plaintiffs also rely on case law already acknowledged and addressed in MLBAM's opening brief. (*See* Opp'n at 18; Mem. at 24–27.) As MLBAM explained, courts are split over whether an FID alone constitutes PII or whether VPPA plaintiffs also must plead factual allegations supporting that the Facebook profiles corresponding with those FIDs can be used to identify them. (*See* Mem. at 24–27.) MLBAM's opening brief showed why the Court should follow the better-reasoned decisions finding that a VPPA plaintiff must plead facts supporting that they, personally, would be identified by any supposed transmissions of their FIDs to state a claim. (*See id.* at 25–26 (citing *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 858 (C.D. Cal. 2024); *Smith v. Trinity Broad. of Tex., Inc.*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024)).)

Because Plaintiffs undisputedly have not alleged that their Facebook profiles are public, their VPPA claims fail.

**c. Plaintiffs fail to plausibly allege that they are consumers.**

Plaintiffs' VPPA claims separately fail because they lack factual allegations to show that they qualify as "consumer[s]" for VPPA purposes under Rule 12(b)(6). 18 U.S.C. § 2710(a)(1); (*see also* Mem. at 27–29). Plaintiffs do not dispute that they alleged creating free accounts on MLB.com rather than subscribing to an online newsletter, like the plaintiff in *Salazar*, or to any other good or service. (*See* Opp'n at 20 (citing *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 552 (2d Cir. 2024).) Nor do Plaintiffs dispute that, to state a VPPA claim, a plaintiff must allege obtaining a recurrent benefit from the defendant. (*See generally* Opp'n at 19–20.) Plaintiffs nevertheless argue that their alleged registrations with MLB.com, without more, qualify them as consumers. (*See id.*) They do not.

Plaintiffs focus on what they supposedly ***provided*** to MLBAM—their names and email addresses, (*see id.* at 20)—but fail to address MLBAM's core argument about what they ***received*** from MLBAM in exchange. As MLBAM explained in its opening brief, a signup with MLB.com is fundamentally different from a subscription to receive a newsletter or other good or service. (*See* Mem. at 28.) Contrary to Plaintiffs' contention, (*see* Opp'n at 20), the *Salazar* court expressly declined to hold that a "video-watcher who does not sign up for [an] online newsletter" qualifies as a consumer. *Salazar*, 118 F.4th at 552 n.14. As other courts have held, a signup with a free website that offers no "future and recurrent benefit," and instead offers publicly available digital content, does not qualify plaintiffs as "consumers." *See Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669–70 (S.D.N.Y. 2015) (dismissing VPPA claim on this basis); (*see also* Mem. at 27–29 (discussing similar cases)).

Plaintiffs nowhere claim that they provided their information in exchange for a qualifying "good or service." Although they mention in a footnote that an "MLB account" is required to access the "Free Game of the Day on ***MLB.TV***," MLBAM's streaming service, (*see* Opp'n at 19

n.2 (emphasis added)),[4] Plaintiffs do not allege that they ever accessed the Free Game of the Day or MLB.tv at all. Nor do they allege that they signed up for an account on MLB.com to access this or any other offering on ***MLB.tv***. (*See generally* Am. Compl. ¶ 1.) Nor do Plaintiffs argue that this fact, which is not connected to any allegations in their complaint, qualifies them as "consumers" who obtained a future and recurrent benefit from MLBAM. (*See* Opp'n at 18–20.) And "an argument made only in a footnote" is "considered waived." *City of Syracuse v. Onondoga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006). Because Plaintiffs have not pointed to any allegations supporting that they received a qualifying benefit when they registered on MLB.com, their VPPA claims fail.

## III. Plaintiffs' California claims should be dismissed because New York law applies and they are not plausibly pleaded.

Plaintiffs do not dispute that their California claims should be dismissed if the choice-of-law clause in the TOU is enforceable. (Opp'n at 20–21.) Because this provision is enforceable, (*supra* section I.b), Plaintiffs' California claims fail, and the Court should dismiss them.

Even if the Court were to apply California law, each of Plaintiffs' California claims would also fail as a matter of law under Rule 12(b)(6).

**CLRA.** Plaintiffs' CLRA claims fail for four reasons: (1) their threadbare pleading parrots the statute's language without supporting facts; (2) they are not "consumers" because they do not allege the "purchase or lease" of "any goods or services," *see* Cal. Civ. Code § 1761(d); (3) they allege no recoverable damages; and (4) they allege no actionable misrepresentation. (Mem. at 34–35.)

Plaintiffs do not deny that their CLRA claims mimic the statutory language. (*See* Opp'n at

[4] Plaintiffs note that MLB.tv is a paid streaming service (*see* Opp'n at 19), but they do not allege signing up for it, (*see* Am. Compl. ¶¶ 1, 130 (proposing class for all MLB.com "subscribe[rs]")). *See also* MLB.tv Homepage, https://www.mlb.com/live-stream-games/subscribe (last visited March 25, 2025); (Mem. at 5 n.2 (describing why judicial notice of website is proper).)

24–25.) Nor do they refute that the disclosures of online-viewing information they challenge in no way fit the elements of the CLRA, like the element of "passing off goods or services as those of another," which none of their factual allegations supports that MLBAM did. (*See* Am. Compl. ¶ 195 (quoting Cal. Civ. Code § 1770(a)(1)).) Instead, they argue that parroting statutory language is sufficient to state a CLRA claim, citing a case discussing California ***state court*** pleading standards. (Opp'n at 24 (citing *Klein v. Chevron, U.S.A., Inc.,* 202 Cal. App. 4th 1342, 1342–43 (2012)).) But ***federal court*** pleading standards apply here and require Plaintiffs to plead more than the "threadbare recitals of a cause of action's elements" that their CLRA claims contain. *See Iqbal*, 556 U.S. at 663 (citation omitted).

Plaintiffs also try to defend their CLRA claims by focusing on their vague allegations that they "paid more in" unidentified subscription fees than they would have if they knew about MLBAM's alleged unfair business practice of supposedly disclosing their PII. (Opp'n at 25.) But these allegations lack the factual support required to plausibly plead that Plaintiffs made a "purchase or lease" from MLBAM or incurred economic damages. Plaintiffs never even identify what paid subscription they allegedly made, let alone any facts about those purported payments that would make this allegation plausible. In fact, in dozens of complaint paragraphs describing the individual Plaintiffs, none of them allege making any payment whatsoever. (Am. Compl. ¶¶ 40–129.) By contrast, in the cases on which Plaintiffs rely, the plaintiffs pleaded specific facts supporting the payments allegedly made and the resulting economic damages. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 327–28 (2011) (plaintiffs alleged purchasing specific mislabeled products from a lockset manufacturer); *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1101 (9th Cir. 2013) (plaintiff alleged that purchased "merchandise" was "marked down" from a "fictitious 'original' price"); *Klein v. Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1348 (2012) (plaintiffs

alleged paying a premium for a lower quality motor fuel). Unlike in these cases, Plaintiffs' CLRA claims wholly lack supporting detail and must be dismissed.

**§ 1799.3 and UCL.** Plaintiffs similarly rely on their single allegation about "subscription fees" to support their § 1799.3 and UCL claims. (Opp'n at 21, 24.) For the reasons just explained, this bare allegation unsupported by factual content does not suffice to plausibly plead the purchase or rental of videos required by § 1799.3, or the economic loss required to state a UCL claim. (*See* Mem. at 33–34.) Contrary to Plaintiffs' assertion, MLBAM does not argue that these claims fail because Plaintiffs did not "state the specific dollar amount expended on their subscriptions," (Opp'n at 21), but rather because their vague "subscription fees" allegation is wholly unsupported, (*id*. at 21, 24). Nor do Plaintiffs address, and so have forfeited, any objection to MLBAM's argument that Plaintiffs both cannot state a § 1799.3 claim and lack standing because they plead no facts supporting alleged disclosures related to them personally. (*See* Mem. at 21–24); *see also United States ex rel. Fallon v. Bell Transit Corp.*, No. 16-CV-06994-PJH, 2021 WL 3665898, at *3 (N.D. Cal. Aug. 18, 2021) (failing to respond waives any opposition).

**CIPA.** Plaintiffs' CIPA claims fail as a matter of law for two reasons: (1) the browsing-related data Plaintiffs say MLBAM ***disclosed*** to Meta are not the protected "contents" of a "communication" under CIPA; and (2) Plaintiffs therefore cannot show that Meta ***received*** any "contents" of a "communication" under CIPA. (*See* Mem. at 32–33.) Plaintiffs acknowledge that "record information" generally does not qualify as "contents" of a "communication" for CIPA purposes. (Opp'n at 22–23 (cleaned up).) And for good reason: browsing-history data are generally not held to be "message content" like "the words of a text message." (Mem. at 32 (quoting *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021)).)

Plaintiffs nevertheless try to distinguish the data they say MLBAM disclosed from such

unprotected browsing-related information by citing a string of distinguishable cases brought under the Federal Wiretap Act. (Opp'n at 23.) But the broad and descriptive information shared in those cases went well beyond the mere video titles allegedly disclosed in URLs here. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (evidence on motion for preliminary injunction showed that URLs shared were highly "descriptive" and revealed detailed information, including about users' health conditions); *In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 131 (3d Cir. 2015) (information allegedly disclosed included "every communication request by [plaintiffs'] browser[s] . . . including all search terms the user ha[d] entered"); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816ML02693JLSKES, 2017 WL 11420284, at *6 (C.D. Cal. July 25, 2017) (information allegedly disclosed "extend[ed] beyond metadata to samples of the actual content displayed on a consumer's screen" (internal quotations and citation omitted)).

This Court should find that Plaintiffs cannot state a CIPA claim based on the alleged disclosure of video-viewing information here. Their CIPA claims should be dismissed.

**CONCLUSION**

Based on a binding, unambiguous class-action waiver in a TOU that Plaintiffs agreed to, the Court should strike Plaintiffs' class allegations under Rule 12(f). The Court should also dismiss Plaintiffs' complaint for failure to state a claim under Rule 12(b)(6) and for lack of standing under Rule 12(b)(1).

Dated: March 27, 2025

Respectfully submitted,

By: *S/ Alan E. Littmann*
Alan E. Littmann (*pro hac vice*)
Andrew Rima (*pro hac vice*)
Logan A. Steiner (*pro hac vice*)

Samuel E. Schoenburg (*pro hac vice*)
Emily Morgan (*pro hac vice*)
Alice Preminger (*pro hac vice*)
Oren Kriegel (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
Email: alittmann@goldmanismail.com
Email: arima@goldmanismail.com
Email: lsteiner@goldmainsmail.com
Email: sschoenburg@goldmanismail.com
Email: emorgan@goldmanismail.com
Email: apreminger@goldmanismail.com
Email: okriegel@goldmanismail.com

*Attorneys for Defendant*
*Major League Baseball Advanced Media, L.P.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 27, 2025, a true and correct copy of the above and foregoing document was electronically filed with the Court. Pursuant to Local Rule 5.2, the Court's Procedures for Electronic Filing, this constitutes service on all parties of record in the above-captioned matter by ECF.

*S/ Alan E. Littmann*
Alan E. Littmann